1  **MᴄGᴜɪʀᴇWᴏᴏᴅs LLP**
   Matthew C. Kane (SBN 171829)
2        Email:  mkane@mcguirewoods.com
   Bethany A. Pelliconi (SBN 182920)
3        Email:  bpelliconi@mcguirewoods.com
   Sylvia J. Kim (SBN 258363)
4        Email:  skim@mcguirewoods.com
   1800 Century Park East, 8ᵗʰ Floor
5  Los Angeles, California 90067
   Telephone: (310) 315-8200
6  Facsimile: (310) 315-8210

7  Attorneys for Defendants
   MERRILL LYNCH & CO., INC. and
8  MERRILL, LYNCH, PIERCE, FENNER & SMITH, INC.

9              **UNITED STATES DISTRICT COURT**

10           **SOUTHERN DISTRICT OF CALIFORNIA**

11 | TREVOR CALLAN, TIMOTHY CALLAN | CASE NO. 09-CV-0566 BEN (WMc) |
   and RYAN CALLAN, individually and on
12 behalf of all others similarly situated,    **MERRILL LYNCH DEFENDANTS'
                                               MOTION FOR JUDGMENT ON THE
13              Plaintiffs,                     PLEADINGS OR, IN THE
                                               ALTERNATIVE, FOR SUMMARY
14         vs.                                 JUDGMENT OR PARTIAL SUMMARY
                                               JUDGMENT:**
15 MERRILL LYNCH & CO., INC., ET AL.,
                                               **(1)    NOTICE OF MOTION**
16              Defendants.
                                               **(2)    REQUEST FOR
17                                                      JUDICIAL NOTICE**

18                                             **(3)    MEMORANDUM OF
                                                      POINTS AND AUTHORITIES**
19
                                               ***FILED UNDER SEPARATE COVERS:***
20
                                               **(4)    DECLARATIONS OF:**
21                                                      • **MATTHEW C. KANE**
                                                        • **DIANE WALLER**
22                                                      • **BRIAN BURKE**

23                                             **(5)    [PROPOSED] ORDER**

24                                             **(6)    [PROPOSED] JUDGMENT**

25
                                               **Date:**        June 28, 2010
26                                             **Time:**        10:30 a.m.
                                               **Courtroom:**   3
27                                             **Judge:**       Hon. Roger T. Benitez

28

**MERRILL LYNCH DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS OR, IN THE
ALTERNATIVE, SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ iii

NOTICE OF MOTION ................................................................................................... viii

REQUEST FOR JUDICIAL NOTICE ................................................................................. x

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................ 1

I.      INTRODUCTION ..................................................................................................... 1

II.     SUMMARY OF RELEVANT FACTS ..................................................................... 2

        A.      Plaintiffs And Their Purported "Forfeiture" Claims Under The Plans ............ 2

        B.      Cliff-Vesting Requirements For Awards Under The Plans ................................ 3

        C.      Plaintiffs' Ages And Years Of Service With Merrill Lynch .............................. 3

        D.      Plaintiffs Had No Vested And Unpaid Awards At The Time They Resigned ......... 4

        E.      Plaintiffs' Purported "Stock Drop" & ERISA Vesting Violation Claims ............ 4

        F.      The Court's Order Granting The Independent Director Defendants'
                Motion To Dismiss And Finding That The FACAAP Is Not An ERISA Plan ........ 5

        G.      The Growth Plan ............................................................................................... 6

        H.      The WealthBuilder Plan .................................................................................... 6

        I.      The Settlement Of The ERISA Action Approved By The SDNY Court .............. 7

III.    ARGUMENT ............................................................................................................ 9

        A.      Applicable Legal Standards ............................................................................. 9

        B.      All Of Plaintiffs' Claims Are Barred By The ERISA Action Judgment ............ 11

        C.      The First Cause Of Action For Recovery Of Unpaid Wages Is Barred
                Because Plaintiffs' Unvested Awards Under The Plans Are Not "Wages" .......... 13

        D.      The Second Cause Of Action For Violation Of The UCL Is Without Merit .......... 17

        E.      The Third Cause Of Action For Conversion Fails As A Matter Of Law ............ 18

        F.      The Fourth Cause Of Action For Breach Of Fiduciary Duty Is Barred ............ 19

11415088.2                                        i                          09-CV-0566 BEN (WMc)

**MERRILL LYNCH DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS OR, IN THE
ALTERNATIVE, SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT**

1

G.     The Fifth Cause Of Action For ERISA Violations Fails As A Matter Of Law .......20

2
          1.     The FACAAP Is Not An ERISA Plan, As The Court Previously Ruled .....20

3
          2.     The Growth Plan Also Is Not An ERISA Retirement Plan .........................20

4
          3.     The WealthBuilder Plan Is A "Top Hat" Plan Which Is
                 Exempt From ERISA's Vesting Provisions ..................................................22

5

IV.     CONCLUSION ....................................................................................................................25

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MERRILL LYNCH DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS OR, IN THE
ALTERNATIVE, SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT**

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**FEDERAL CASES**

4
*Balistreri v. Pacifica Police Dept.*
901 F.2d 696 (9th Cir. 1990) ................................................................................. 9

5

6
*Beckman v. Umpqua Bank*
2007 WL 2418686 (E.D. Cal. 2007) ..................................................................... 14

7
*Bell Atl. Corp. v. Twombly*
550 U.S. 544 (2007) ............................................................................................... 9

8

9
*Branch v. Tunnell*
14 F.3d 449 (9th Cir. 1994) ................................................................................. 10

10
*Celotex Corp. v. Catrett*
477 U.S. 317 (1986) ....................................................................................... 10, 11

11

12
*Cho v. The Republic of Korea*
66 Fed. Appx. 124 (9th Cir. 2003) ...................................................................... 18

13

14
*City of Monroe Employees Ret. Sys. v. Bridgestone Corp.*
399 F.3d 651 (6th Cir. 2005) ............................................................................... 10

15
*Cogan v. Phoenix Life Ins. Co.*
310 F.3d 238 (1st Cir. 2002) ............................................................................... 23

16

17
*Collins & Aikman Prod. Co. v. Bldg. Systems Co.*
58 F.3d 16 (2d Cir. 1995) .................................................................................... 12

18

19
*Demery v. Extebank Deferred Compensation Plan (B)*
216 F.3d 283 (2d Cir. 2000) ............................................................... 5, 6, 22, 23

20

21
*Donovan v. Dilingham*
688 F.2d 1367 (11th Cir. 1982) .......................................................................... 20

22
*Duggan v. Hobbs*
99 F.3d 307 (9th Cir. 1996) ................................................................................ 22

23

24
*Fajardo v. County of Los Angeles*
179 F.3d 698 (9th Cir. 1999) ................................................................................ 9

25
*Fields v. Thompson Printing Co.*
363 F.3d 259 (3d Cir. 2004) ............................................................................... 22

26

27
*Gilliam v. Nevada Power Co.*
488 F.3d 1189 (9th Cir. 2007) ............................................................................ 22

28

**MERRILL LYNCH DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS OR, IN THE ALTERNATIVE, SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT**

*Green v. Party City Corp.*
    No. CV-0109681, 2002 U.S. Dist. LEXIS 7750 (C.D. Cal. Apr. 9, 2002) ........................... 19

*Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*
    896 F.2d 1542 (9th Cir. 1990) ........................................................................................ 9

*Heliotrope General, Inc. v. Ford Motor Co.*
    189 F.3d 971 (9th Cir. 1999) ........................................................................................ 10

*In re Johns Manville Corp.*
    340 B.R. 49 (S.D.N.Y. 2006) ........................................................................................ 12

*In re Segovia*
    404 B.R. 896 (9th Cir. 2009) ........................................................................................ 20

*In re Silicon Graphics Inc. Securities Litigation*
    183 F.3d 970 (9th Cir. 1999) ........................................................................................ 10

*In re Spiegel Inc.*
    2006 WL 2577825 (Bkrtcy. S.D.N.Y. 2006) .................................................................. 12

*In Re: IT Group, Inc.*
    305 B.R. 402 (D. Del. 2004) ........................................................................................ 23

*Knievel v. ESPN*
    393 F.3d 1068 (9th Cir. 2005) ...................................................................................... 10

*Lee v. City of Los Angeles*
    250 F.3d 668 (9th Cir. 2001) ..................................................................................... 9, 10

*Mills v. Ramona Tire, Inc.*
    No. 07-CV-0052, 2007 WL 2775127 (S.D. Cal. 2007) .................................................. 10

*O'Toole v. Northrop Grumman Corp.*
    499 F.3d 1218 (10th Cir. 2007) .................................................................................... 10

*Oatway v. American Int'l Group*
    325 F.3d 184 (3d Cir. 2003) ........................................................................................ 20

*Pane v. RCA Corp.*
    868 F.2d 631 (3d Cir. 1989) ........................................................................................ 22

*Parrino v. FHP, Inc.*
    146 F.3d 699 (9th Cir. 1998) ........................................................................................ 10

*Pulido v. Coca-Cola Enterprises, Inc.*
    No. EDCV06-406VAP(OPX), 2006 U.S. Dist. LEXIS 43765 (C.D. Cal. May 25, 2006) ..... 19

*Radobenko v. Automated Equip. Corp.*
    520 F.2d 540 (9th Cir. 1975) ................................................................................... 10, 11

**MERRILL LYNCH DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS OR, IN THE
ALTERNATIVE, SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT**

*Richards v. Princeton Ins. Co.*
     178 F.Supp.2d 386 (S.D.N.Y. 2001) .................................................................... 12

*Roderick v. Mazzetti & Assocs.*
     No. C 04-2436, 2004 WL 2554453 (N.D. Cal. Nov. 9, 2004) ................................ 20

*Schaffer v. Clinton*
     240 F.3d 878 (10th Cir. 2001) ............................................................................. 10

*Scott v. Gulf Oil Corp.*
     754 F.2d 1499 (9th Cir. 1985) .............................................................................. 20

*Stevens v. Mavent, Inc.*
     2008 WL 2824956 (C.D. Cal. 2008) ..................................................................... 14

*Thomas v. Home Depot USA Inc.*
     527 F.Supp.2d 1003 (N.D. Cal. 2007) .................................................................. 19

*Travelers Indem. Co. v. Bailey*
     129 S.Ct. 2195 (2009) ..................................................................................... 12, 13

*Turtur v. Rothschild Registry Int'l, Inc.*
     26 F.3d 304 (2d Cir. 1994) ................................................................................... 12

**CALIFORNIA CASES**

*Buckland v. Threshold Enterprises, Ltd.*
     155 Cal.App.4th 798 (2007) .................................................................................. 17

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*
     20 Cal.4th 163 (1999) ........................................................................................... 17

*Clark v. Superior Court*
     174 Cal.App.4th 82 (2009) .................................................................................... 18

*Feitelberg v. Credit Suisse First Boston, LLC*
     134 Cal.App.4th 997 (2005) .................................................................................. 18

*Hunter v. Sparling*
     87 Cal.App.2d 711 (1948) ..................................................................................... 14

*Kasky v. Nike, Inc.*
     27 Cal.4th 939 (2002) ........................................................................................... 17

*Korea Supply Co. v. Lockheed Martin Corp.*
     29 Cal.4th 1134 (2003) .................................................................................... 17, 18

*Kraus v. Trinity Management Services, Inc.*
     23 Cal.4th 116 (2000) ........................................................................................... 18

**MERRILL LYNCH DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS OR, IN THE
ALTERNATIVE, SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT**

*Lucian v. All States Trucking Co.*
116 Cal.App.3d 972 (1981) ........................................................... 11, 13, 14

*Madrid v. Perot*
130 Cal.App.4th 440 (2005) .......................................................... 18

*Neisendorf v. Levi Strauss & Co.*
143 Cal.App.4th 509 (2006) ........................................... 14, 15, 16, 17

*Oakdale Village Group v. Fong*
43 Cal.App.4th 539 (1996) ............................................................ 18

*Prachasaisoradej v. Ralphs Grocery Co., Inc.*
42 Cal.4th 217 (2007) ..................................................... 13, 15, 16, 17

*Schachter v. Citigroup, Inc.*
47 Cal.4th 610 (2009) ................................................... 15, 16, 17

*Steinhebel v. Los Angeles Times Commc'ns*
126 Cal.App.4th 696 (2005) .......................................................... 17

*Stevenson Real Estate Services, Inc. v. CB Richard Ellis Real Estate Servs., Inc*
138 Cal.App.4th 1215 (2006) ........................................................ 17

**OTHER STATE CASES**

*Cologne Reinsurance Co. of Am. v. Southern Underwriters, Inc.*
630 N.Y.S.2d 548 (1995) ............................................................... 12

*Mount Vernon Fire. Ins. Co. v. Creative Housing Ltd.*
645 N.Y.S.2d 433 (1996) ............................................................... 12

*New Hampshire Ins. Co. v. Jefferson Ins. Co. of New York*
624 N.Y.S.2d 392 (1995) ............................................................... 12

**FEDERAL STATUTES**

29 U.S.C. § 1002(2) ...................................................................... 20

29 U.S.C. § 1051(2) ...................................................................... 22

29 U.S.C. § 1053(a) ............................................................. 1, 5, 20

29 U.S.C. § 1054(g)(1) .................................................................. 23

29 U.S.C. § 1081(a)(3) .................................................................. 22

29 U.S.C. § 1101(a)(1) .................................................................. 22

29 U.S.C. § 1104(a) ....................................................................... 1

**MERRILL LYNCH DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS OR, IN THE ALTERNATIVE, SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT**

1

**CALIFORNIA STATUTES**

*Cal. Bus. & Prof. Code* § 16600 ................................................................ 1, 17

*Cal. Bus. & Prof. Code* § 17200 *et seq.* ...................................................... 1

*Cal. Civil Code* § 1542 ............................................................................... 8

*Cal. Lab. Code* § 200 ................................................................................. 13

*Cal. Lab. Code* § 201 ................................................................................. 13

*Cal. Lab. Code* § 202 ................................................................................. 13

*Cal. Lab. Code* § 204 ................................................................................. 13

*Cal. Lab. Code* § 221 ................................................................................. 13

*Cal. Lab. Code* § 222 ................................................................................. 13

**OTHER AUTHORITIES**

20 C.F.R. § 2510.3-2(c) ............................................................................... 21

Fed. R. Civ. P. 12 ................................................................................. 10, 23

Fed. R. Civ. P. 12(b)(6) ............................................................................ 9, 23

Fed. R. Civ. P. 12(c) .............................................................................. 9, 11

Fed. R. Civ. P. 12(d) ................................................................................. 10

Fed. R. Civ. P. 56 ................................................................................. 10, 11

Fed. R. Civ. P. 56(c) ................................................................................. 10

Fed. R. Civ. P. 56(e) ................................................................................. 10

Fed. R. Evid. 201 ...................................................................................... 10

**MERRILL LYNCH DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS OR, IN THE ALTERNATIVE, SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT**

## NOTICE OF MOTION

**TO PLAINTIFFS AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on June 28, 2010 at 10:30 a.m. or as soon thereafter as the matter may be heard, in Courtroom 3 of the above-captioned Court, located at 880 Front Street, Suite 4290, San Diego, California, Defendants  MERRILL LYNCH & CO., INC. and MERRILL, LYNCH, PIERCE, FENNER & SMITH, INC. ("Defendants") will and hereby do move the Court for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, or, in the alternative, Summary Judgment or Partial Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, on the following grounds:

1.      All of Plaintiffs' claims are barred because they were settled and released by an August 24, 2009 Order and Final Judgment entered by the United States District Court for the Southern District of New York, in *In Re Merrill Lynch & Co., Inc. Securities, Derivative & ERISA Litigation*, Master File No. 07-cv-9633 (JSR)(DFE), Case No. 07-cv-10268 (JSR)(DFE).

2.      Plaintiffs' purported First Cause of Action for Recovery of Unpaid Wages under the California Labor Code is barred because at the time Plaintiffs resigned their employment, they had no vested awards that had not been paid under the terms of the incentive compensation plans at issue in the Complaint.

3.      Plaintiff's purported Second Cause of Action for Violation of Business and Professions Code section 17200 is barred because at the time Plaintiffs resigned their employment, they had no vested awards that had not been paid under the terms of the incentive compensation plans at issue in the Complaint, and because the Complaint contains no allegation which could give rise to the right to restitution or injunctive relief.

4.      Plaintiff's purported Third Cause of Action for Conversion is barred because at the time Plaintiffs resigned their employment, they had no vested awards that had not been paid under the terms of the incentive compensation plans at issue in the Complaint and because California law does not recognize a conversion claim based on allegedly unpaid wages.

**MERRILL LYNCH DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS OR, IN THE ALTERNATIVE, SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT**

5.      Plaintiff's purported Fourth Cause of Action for Breach of Fiduciary Duty is barred because Plaintiffs have not alleged and cannot prove facts which would establish that Defendants breached a fiduciary duty which was owed to Plaintiffs under common law, and Plaintiffs have not alleged and cannot prove facts which could establish that they suffered damages proximately caused by any such breach.

6.      Plaintiffs' purported Fifth Cause of Action for ERISA violations fails to state a claim upon which relief can be granted because none of the incentive compensation plans at issue in the Complaint were subject to the alleged ERISA requirements, and Plaintiffs have not alleged and cannot prove facts which would establish that Defendants breached a fiduciary duty which was owed to Plaintiffs under ERISA, and Plaintiffs have not alleged and cannot prove facts which could establish that they suffered damages proximately caused by any such breach.

This Motion is based on this Notice, the attached Request for Judicial Notice and Memorandum of Points and Authorities, the Declarations of Matthew C. Kane, Diane L. Waller and Brian Burke filed under separate covers, the Court's file and records in this action, all matters which may be judicially noticed pursuant to Rule 201 of the Federal Rules of Evidence, and such other evidence and arguments as may be made or presented at or before the hearing on this Motion.

DATED:  May 28, 2010              **McGuireWoods LLP**


By:  _____/s/ Matthew C. Kane_____
          Matthew C. Kane
          Bethany A. Pelliconi
          Sylvia J. Kim
       Attorneys for Defendants
       MERRILL LYNCH & CO., INC. and
       MERRILL, LYNCH, PIERCE, FENNER &
       SMITH, INC.

**MERRILL LYNCH DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS OR, IN THE ALTERNATIVE, SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT**

## <u>REQUEST FOR JUDICIAL NOTICE</u>

**TO THE HONORABLE ROGER T. BENITEZ AND TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**REQUEST IS HEREBY MADE** by Defendants, pursuant to Rule 201 of the Federal Rules of Evidence, that the Court take judicial notice of the following documents in connection with this Motion:

1.      Complaint filed in this action on March 19, 2009 (Dkt. #1), a true and correct copy of which is annexed as Exhibit A to the concurrently filed Declaration of Matthew C. Kane.

2.      Order and Final Judgment in *In Re Merrill Lynch & Co., Inc. Securities, Derivative & ERISA Litigation*, Master File No. 07-cv-9633 (JSR)(DFE), Case No. 07-cv-10268 (JSR)(DFE), entered on August 24, 2009 by the United States District Court for the Southern District of New York (Master File Docket Entry No. 253-2), a true and correct copy of which is annexed as Exhibit B to the concurrently filed Declaration of Matthew C. Kane.

3.      Consolidated Supplemental Complaint filed in *In Re Merrill Lynch & Co., Inc. Securities, Derivative & ERISA Litigation*, S.D.N.Y. Master File No. 07-cv-9633 (JSR)(DFE) (Docket Entry No. 109), Case No. 07-cv-10268 (JSR)(DFE) (Docket Entry No. 64), a true and correct copy of which is annexed as Exhibit C to the concurrently filed Declaration of Matthew C. Kane.

4.      Order Granting in Part and Denying in Part Independent Directors' Motion to Dismiss Complaint entered in this action on January 22, 2010 (Dkt. #79), a true and correct copy of which is annexed as Exhibit D to the concurrently filed Declaration of Matthew C. Kane.

5.       Declaration of Jennifer M. Keough filed in *In Re Merrill Lynch & Co., Inc. Securities, Derivative & ERISA Litigation*, Master File No. 07-cv-9633 (JSR)(DFE) (Docket Entry No. 257, Exh. #1), Case No. 07-cv-10268 (JSR)(DFE), a true and correct copy of which is annexed as Exhibit A to the concurrently filed Declaration of Brian Burke.

6.       Merrill Lynch Financial Advisor Capital Accumulation Award Plan alleged in the Complaint, a true and correct copy of which is annexed as Exhibit A to the concurrently filed Declaration of Diane Waller.

7.       Merrill Lynch Growth Award Plan For Financial Advisors alleged in the Complaint, a true and correct copy of which is annexed as Exhibit B to the concurrently filed Declaration of Diane Waller.

8.       Merrill Lynch Wealthbuilder Account Plan alleged in the Complaint, a true and correct copy of which is annexed as Exhibit C to the attached Declaration of Diane Waller.

9.       Uniform Application for Securities Industry Registration Or Transfer Form ("Form U-4") for Plaintiff Trevor Callan filed with the National Association of Securities Dealers, a true and correct redacted copy of which is annexed as Exhibit D to the concurrently filed Declaration of Diane Waller.

10.      Uniform Application for Securities Industry Registration Or Transfer Form ("Form U-4") for Plaintiff Timothy Callan filed with the National Association of Securities Dealers, a true and correct redacted copy of which is annexed as Exhibit E to the concurrently filed Declaration of Diane Waller.

11.      Uniform Application for Securities Industry Registration Or Transfer Form ("Form U-4") for Plaintiff Ryan Callan filed with the National Association of Securities Dealers, a true

**MERRILL LYNCH DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS OR, IN THE ALTERNATIVE, SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT**

1   and correct redacted copy of which is annexed as Exhibit F to the concurrently filed Declaration of

2   Diane Waller.

3

4       12.     Retirement Accumulation Plan Allocation Summary for Plaintiff Trevor Callan, a

5   true and correct copy of which is annexed as Exhibit G to the concurrently filed Declaration of

6   Diane Waller.

7

8       13.     Retirement Accumulation Plan Allocation Summary for Plaintiff Timothy Callan, a

9   true and correct copy of which is annexed as Exhibit H to the concurrently filed Declaration of

10  Diane Waller.

11

12      14.     Retirement Accumulation Plan Allocation Summary for Plaintiff Ryan Callan, a

13  true and correct copy of which is annexed as Exhibit I to the concurrently filed Declaration of

14  Diane Waller.

15

16

    DATED:  May 28, 2010                    McGuireWoods LLP

17

18

                                 By:  _____/s/ Matthew C. Kane_____

19                                          Matthew C. Kane
                                            Bethany A. Pelliconi
20                                          Sylvia J. Kim
                                     Attorneys for Defendants
21                                   MERRILL LYNCH & CO., INC. and
                                     MERRILL, LYNCH, PIERCE, FENNER &
22                                   SMITH, INC.

23

24

25

26

27

28

MERRILL LYNCH DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS OR, IN THE
ALTERNATIVE, SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION.

Defendants Merrill Lynch & Co., Inc. ("MLC") and Merrill Lynch, Pierce, Fenner & Smith, Inc. ("Merrill Lynch" or "MLPFS") bring this Motion for Judgment on the Pleadings or, In the Alternative, for Summary Judgment or Partial Summary Judgment ("Motion") against Plaintiffs Trevor Callan, Timothy Callan and Ryan Callan ("Plaintiffs").  Plaintiffs were employed by Merrill Lynch as Financial Advisors ("FA's").  All of their claims in this action are based on Plaintiffs' participation in three Merrill Lynch incentive compensation plans for FA's (the "Plans"):

1.    The **Financial Advisor Capital Accumulation Award Plan** (the "FACAAP")[1];

2.    The **Growth Award Plan For Financial Advisors** (the "Growth Plan"); and

3.    The **WealthBuilder Account Plan** (the "WealthBuilder Plan").

Plaintiffs assert that Defendants unlawfully forfeited their unvested awards under the Plans, and that they suffered "stock drop" losses in the value of those unvested awards.  On this basis, their Complaint purports to allege causes of action for: (1) Recovery of Unpaid Wages under the California Labor Code ("CLC"); (2) Violation of *Cal. Bus. & Prof. Code* § 17200 *et seq.* (the "UCL") based on an alleged predicate violation of *Cal. Bus. & Prof. Code* § 16600; (3) Conversion; (4) Breach of Fiduciary Duty; and (5) Violation of the Employee Retirement Security Act ("ERISA"), 29 U.S.C. §§ 1053(a) and 1104(a).  As we discuss in detail below, each and every one of these claims is barred for the following reasons:

1.    **All of Plaintiffs' claims were settled and released by an August 24, 2009 Order and Final Judgment entered by the United States District Court for the Southern District of New York** (the "SDNY Court") in *In Re Merrill Lynch & Co., Inc. Securities, Derivative & ERISA Litigation*, Master File No. 07-cv-9633 (JSR)(DFE), Case No. 07-cv-10268 (JSR)(DFE) (the "ERISA Action").

2.    **Plaintiffs had no vested awards under the Plans that have not been paid as of the time they resigned their employment with Merrill Lynch.** Thus, Plaintiffs cannot establish that they were subjected to any unlawful forfeiture of wages under the California Labor Code as alleged in their First

---

[1] This short-hand name is commonly pronounced "F-Cap".

**MERRILL LYNCH DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS OR, IN THE ALTERNATIVE, SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT**

Cause of Action, that they were subjected to a violation of the UCL as alleged in the Second Cause of Action, or that Defendants "converted" any of their "property" as alleged in the Third Cause of Action.

3. **California law does not recognize a "conversion" claim based on a Labor Code violation.**  Therefore, Plaintiffs' Third Cause of Action is barred on this basis as well.

4. **Plaintiffs have not alleged facts constituting a breach of fiduciary duty by Defendants or that they suffered any resulting damages.**  Therefore, as the Court held in its January 22, 2010 Order with respect to the FACAAP and the now-dismissed individual co-defendants, (Kane Decl., Exh. D [Dkt. #79]), the Fourth and Fifth Causes of Action for Breach of Fiduciary Duty and Violation of ERISA, respectively, are barred.

5. **None of the Plans are subject to ERISA's minimum vesting requirements.**  As the Court also held in its January 22nd Order, *the FACAAP is not an ERISA benefit plan*.  Likewise, *the Growth Plan also is not and ERISA benefit plan*, and *the WealthBuilder Plan is a "top hat" plan under ERISA* which is exempt from such requirements.  Therefore, the Fifth Cause of Action for Violation of ERISA is barred on this basis too.

Accordingly, Defendants are entitled to judgment in their favor as a matter of law on Plaintiffs' Complaint and each and every purported cause of action alleged therein.

## II.   SUMMARY OF RELEVANT FACTS

### A.   Plaintiffs And Their Purported "Forfeiture" Claims Under The Plans.

Plaintiffs, who are former Merrill Lynch FA's, were eligible to participate in some or all of the Plans – the FACAAP, the Growth Plan, and/or the WealthBuilder Plan.  Kane Decl., Exh. A at ¶¶ 6-9.  They bring this action on behalf of themselves individually, and as a putative class action seeking to represent the following classes:

"A.   The 'California Class' consists of all individuals who were employed by Merrill Lynch in the State of California and who, within the applicable statute of limitations, allegedly forfeited awards under the Merrill Lynch FACAAP, Growth Award, or WealthBuilder plans as a result of becoming employed by a competitor of Merrill Lynch."

"B.   The 'Nationwide Class' consists of all individuals who were employed by Merrill Lynch anywhere in the United States who, within the applicable statute of limitations, received awards under the Merrill Lynch FACAAP, Growth Award, or WealthBuilder plans."  *Id.*, ¶¶ 9.A, 9.B.

Plaintiffs' First, Second, and Third Causes of Action for Recovery of Unpaid Wages under

**MERRILL LYNCH DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS OR, IN THE ALTERNATIVE, SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT**

the CLC, violation of the UCL, and Conversion, respectively, are based on an *ambiguous insinuation* that they "forfeited" awards under the Plans on the basis of provisions in the Plans which allegedly prevented them from competing with Merrill Lynch. *Id.*, at ¶ 8. Specifically, they allege that they ***resigned their employment in January 2007***, that Merrill Lynch "rejected" their demands for awards under the Plans on grounds that they had been forfeited, and that each Plan had a clause that provided for forfeiture of awards if they were to leave their employment to work for a competitor. *Id.*, at ¶ 7. ***Notably, Plaintiffs have not actually alleged that they had awards "forfeited" under the Plans <u>because of</u> their working for a competitor of Merrill Lynch.*** Their artful pleading in this respect is deliberately designed to obscure the fact that ***they had no vested awards under any of the Plans*** which had not been paid as of the time they resigned.

**B.   Cliff-Vesting Requirements For Awards Under The Plans.**

Under the **FACAAP**, awards made to FA's after 2002 vest pursuant to a "cliff-vesting" schedule on December 31st of the **eighth year** following the award year, and all *unvested* awards are forfeited upon the termination of employment if the termination occurs prior to age 65 or prior to completion of at least 20 years of service under the "Rule of 65." Waller Decl., Exh. A at §§ 8, 9(c)(ii).

Under the **Growth Plan**, awards made to FA's vest pursuant to a "cliff-vesting" schedule four full years after they have been granted, and all *unvested* awards are forfeited upon the termination of employment if the termination occurs prior to age 65 or prior to completion of at least 20 years of service under the "Rule of 65." *Id.*, Exh. B at pp. 3-6.

Under the **WealthBuilder Plan**, awards made to FA's vest only if they (i) reach age 55 and have at least 10 years of service with Merrill Lynch, or (ii) reach age 65 with no length of service requirement, or (iii) have completed 20 years of service. *Id.*, Exh. C at Art. VI-VIII.

**C.   Plaintiffs' Ages And Years Of Service With Merrill Lynch.**

All three Plaintiffs resigned their employment with Merrill Lynch on **January 12, 2007**. At that time, they were all ***under the age of 36*** and none of them had been employed by Merrill Lynch for more than 12 years. Waller Decl., ¶¶ 7-11, Exhs. D-F. Therefore, *none* of the Plaintiffs qualified for vesting under the WealthBuilder Plan, or under the alternative vesting provisions of

**MERRILL LYNCH DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS OR, IN THE ALTERNATIVE, SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT**

1  the FACAAP and Growth Plan based on their ages and years of service with Merrill Lynch.

2  **D.** **Plaintiffs Had No Vested And Unpaid Awards At The Time They Resigned.**

3  Under the express provisions of each of the Plans, ***all*** of Plaintiffs' outstanding awards

4  were ***unvested*** at the time they resigned.  As such, Plaintiffs did not "forfeit" any *vested* awards

5  under the Plans when they resigned.  Rather, any *vested* awards were in fact paid in accordance

6  with the Plans.  Waller Decl., ¶¶ 7-11.

7  In this regard, only Plaintiff **Trevor Callan** had vested awards under the FACAAP and the

8  Growth Plan as of December 31, 2006, and he was paid out for both of those awards in January

9  2007, shortly before he resigned.  *Id.,* ¶ 8.  He had no other *vested* awards at the time he resigned

10  his employment.  *Id.*

11  Plaintiff **Timothy Callan** had no *vested* awards under any of the Plans when he resigned.

12  His first award under the FACAAP was made in 2001 and, under its eight-year cliff-vesting

13  schedule, it would not have vested until December 31, 2009 – almost three years after he resigned.

14  *Id.*, ¶ 9.  His first award under the Growth Plan was in 2003, so it would not have vested until four

15  full years later in 2007, after his January 12, 2007 resignation.  *Id.*

16  Plaintiff **Ryan Callan** also had no *vested* awards under any of the Plans when he resigned.

17  The first year he received any awards under the FACAAP and Growth Plans was in 2004 and,

18  under their respective eight-year and four-year cliff-vesting schedules, they would not have vested

19  until 2012 and 2008, respectively, well after he resigned in January 2007.  *Id.*, ¶ 10.

20  Thus, at the time Plaintiffs resigned their employment in January 2007, they had no vested

21  and unpaid awards under any of the Plans.  *Id.,* ¶¶ 7-11.  Accordingly, no "forfeiture" of any

22  vested awards occurred, making whether Plaintiffs had resigned to work for a Merrill Lynch

23  competitor wholly irrelevant, notwithstanding that it forms the *insinuated* basis for their purported

24  First through Third Causes of Action.

25  **E.** **Plaintiffs' Purported "Stock Drop" & ERISA Vesting Violation Claims.**

26  In support of their Fourth Cause of Action for Breach of Fiduciary Duty, which is brought

27  as a common law claim and relates *solely* to the *FACAAP*, Plaintiffs allege that Merrill Lynch's

28  "aggressive expansion" into the subprime mortgage market, failure to manage risk, and failure to

**MERRILL LYNCH DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS OR, IN THE ALTERNATIVE, SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT**

1  disclose the full extent of its exposure led to the artificial inflation and "precipitous decline" of

2  Merrill Lynch's stock.   Kane Decl., Exh. A. at ¶ 31.   They further allege that Defendants had a

3  "fiduciary duty under the FACAAP to make adjustments to the FACAAP to preserve the benefit

4  of the Plan" and "compensate for the decline in the price of Merrill Lynch's common stock".  *Id.*,

5  at ¶ 32.   They also allege that as a result of not making any such adjustments, they have been

6  damaged in an unspecified amount.  *Id.*, at ¶ 33.

7      Plaintiffs' purported Fifth Cause of Action for ERISA violations has two aspects two it.

8  *First,* with respect to *all of the Plans*, Plaintiffs allege that the Plans violate the ***minimum vesting***

9  ***standards*** set forth in 29 U.S.C. § 1053(a).  *Id.*, at ¶ 37.  *Second*, with respect to *only* the *FACAAP*,

10  Plaintiffs allege that Defendants breached their fiduciary duty under ERISA based on the same

11  subprime mortgage market expansion allegations made in support of their common law breach of

12  fiduciary duty claim.  *Id.*., at ¶¶ 38-42.

13      **F.    The Court's Order Granting The Independent Director Defendants' Motion**

14          **To Dismiss And Finding That The FACAAP Is Not An ERISA Plan.**

15      On January 22, 2010, this Court granted, in part, a Motion to Dismiss Plaintiffs' Fourth

16  and Fifth Causes of Action for Breach of Fiduciary Duty and Violations of ERISA, respectively,

17  as against the now-dismissed "Independent Director Defendants."[2]  *See* Kane Decl., Exh. D (Dkt.

18  #79) at 1:18-24.   The Court's Order correctly concluded that the Plaintiffs' Fourth and Fifth

19  Causes of Action failed to state a claim upon which relief could be granted to the extent they are

20  based on the FACAAP, because it "does not qualify as an 'employee pension benefit plan' under

21  ERISA."  *Id.*, at 5:26-6:6.  As the Court reasoned:

22      "By its express terms, the FACAAP does not have a retirement purpose or provide
       a systematic deferral of compensation.  Rather, it is clear the FACAAP is intended
23      merely as a bonus program to award top performing employees and provide
       financial incentive for employees to remain with Merrill Lynch and improve their
24      performance there.  There is nothing in the FACAAP that would allow a reasonable

25

26  _____

      [2] Those Defendants were Carol T. Christ, Armando M. Codina, Virgis W. Colbert, Jill K.
27  Conway, Alberto Cribiore, John D. Finnegan, Aulana L. Peters, Joseph W. Prueher, Ann N.
    Reese, and Charles O. Rossotti.

28

**MERRILL LYNCH DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS OR, IN THE
ALTERNATIVE, SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT**

1  person to calculate or determine the benefits of the plan or procedure for receiving
2  benefits, as those matters are left to the sole discretion of Merrill Lynch.
   Additionally, no employee is guaranteed awards under the FACAAP; he or she is
3  given awards only according to the company's assessment of his or her
4  contribution of the financial well-being of the company.   Accordingly, the
   FACAAP does not qualify as an 'employee pension benefit plan' under ERISA."
5  *Id.*, at 5:26-6:6.

6      The Court also held that Plaintiffs' Complaint failed to state a claim for breach of fiduciary

7  duty as against the Independent Director Defendants, because fiduciaries are "not required to

8  insure against losses, only to act with care, prudence, and diligence under the circumstances" and

9  because no claim for breach of fiduciary duty is established merely by pleading that a company

10  took a risk and suffered a loss.  *Id.,* at 9:3-8.[3]

11      **G.**    **The Growth Plan.**

12      The Growth Plan contains terms which are virtually identical to those in the FACAAP,

13  showing that it too is nothing more than a bonus program to award top performing employees and

14  provide financial incentive for employees to remain with Merrill Lynch and improve their

15  performance there.  Waller Decl., Exh. B at §§ 1, 3.1(b).  There is nothing in the Growth Plan that

16  would allow a reasonable person to calculate or determine the benefits of the plan or the procedure

17  for receiving benefits, as those matters are left to the sole discretion of Merrill Lynch.  *Id.*

18  Additionally, no employee is guaranteed awards under the Growth Plan; he or she is given awards

19  only according to the company's assessment of his or her contribution of the financial well-being

20  of the company.  *Id.*

21      **H.**    **The WealthBuilder Plan.**

22      The WealthBuilder Plan is a "top hat" plan which was created for the express purpose "of

23  providing deferred compensation for the members of a select group of management or highly

24

---

25      [3] The Court denied the Independent Director Defendants' Motion to Dismiss the Fifth

26  Cause of Action, in part, and without prejudice, because their Motion addressed only the FACAAP and did not address the Plaintiffs' allegations that the other two plans – the Growth and

27  WealthBuilder Plans – violated ERISA's minimum vesting standards.  *Id.*, at 9:27-10:3.  This

28  Motion brought by the Merrill Lynch Defendants now addresses that issue as to those plans.

**MERRILL LYNCH DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS OR, IN THE ALTERNATIVE, SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT**

1  compensated employees, within the meaning of Title 1 of ERISA, who remain in the employ of

2  the Company until retirement or completion of a substantial period of service as specified in the"

3  WealthBuilder Plan. *Id.,* Exh. C, p. 1 at Art. 1. Eligibility to participate in the WealthBuilder Plan

4  is limited to top-producing FA's who have a title of at least Vice President. *Id*, p. 4 at § 3.1. Since

5  January 1, 2005, less than 15% of Merrill Lynch's total workforce has been eligible to participate

6  in the WealthBuilder Plan each calendar year, and the average compensation of the participants in

7  the plan has been more than double that of all Merrill Lynch employees. *Id.*, ¶ 6.

8  **I.      The Settlement Of The ERISA Action Approved By The SDNY Court.**

9          In addition to the FACAAP, Growth Plan, and WealthBuilder Plans at issue in this action,

10  Plaintiffs also participated in certain Merrill Lynch retirement plans, including the **Merrill Lynch**

11  **& Co., Inc. Retirement Accumulation Plan** (the "RAP"), and their RAP accounts included

12  investments in **Merrill Lynch stock** during the time period of **September 30, 2006 to December,**

13  **31, 2008**. Waller Decl., Exhs. D-F.

14          On August 24, 2009, the SDNY Court entered an Order and Final Judgment (the

15  "Judgment") in the ERISA Action approving a Stipulation And Agreement of Settlement (the

16  "Settlement Stipulation"). Kane Decl., Exh. B. The Settlement Stipulation approved by the

17  Judgment defined the settlement "**Class**" as follows:

18          "a non-opt out class consisting of (a) ***all current and former participants and***
19          ***beneficiaries of any of the Plans*** whose individual Plan account(s) included
            ***investments in Merrill Lynch stock*** at any time ***during the Class Period*** . . . "
20          Kane Decl., Exh. B, Exh. 1, p. 5 at § 1.3 (emphasis added).

21          The Settlement Stipulation also defined the "**Plans**" (as used in the "Class" definition) as

22  follows: "the Merrill Lynch & Co., Inc. 401(k) Savings and Investment Plan; the **Merrill Lynch**

23  **& Co., Inc. Retirement Accumulation Plan**; and the Merrill Lynch & Co., Inc. Employee Stock

24  Ownership Plan, together with their Predecessors and Successors-in-Interest, and any trust created

25  under such plans." *Id.,* p. 9 at § 1.33 (emphasis added).

26          The Settlement Stipulation further defined the **Class Period** as **September 30, 2006 to**

27  **December 31, 2008**, inclusive. *Id.,* p. 5 at § 1.5.

28

**MERRILL LYNCH DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS OR, IN THE
ALTERNATIVE, SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT**

Under Section 1.41 of the Settlement Stipulation, the "**Settled Claims**" under the release approved by the Judgment are *broadly defined* to include:

> "*[A]ny and all claims*, debts, demands, rights or causes of action, suits, matters, and issues or liabilities *whatsoever* (including, but not limited to, any claims for damages, interest, attorneys' fees, expert or consulting fees, and *any other costs, expenses or liability whatsoever*), whether based on *federal, state, local, statutory or common law or any other law, rule or regulation*, whether fixed or contingent, accrued or unaccrued, liquidated or unliquidated, at law or in equity, matured or unmatured, whether *class or individual in nature*, including both known claims and *Unknown Claims* (as defined herein), against any of the *Released Parties* (i) that *have been asserted* in the *ERISA Action*, or (ii) that *could have been asserted in any forum* by any *Class Member* or their successors and assigns which *arise out of* or are based upon the *allegations*, transactions, facts, matters or occurrences, representations or omissions out of which the claims asserted in the *ERISA Action* arise. . . . " *Id.,* p. 10 at § 1.41 (emphasis added and in original).

Under Section 1.49 of the Settlement Stipulation, the "**Unknown Claims**" released by the Judgment likewise are *broadly defined* to include an express waiver by each Class Member of "any and all provisions, rights and benefits conferred by any law of any state of the United States, or principle of common law, or otherwise, which is similar, comparable, or equivalent to California Civil Code § 1542 . . ." and further provides that ". . . Class Members by operation of law shall be deemed to have acknowledged, that the inclusion of 'Unknown Claims' in the definition of Settled Claims . . . was separately bargained for and was a key element of the Settlement." *Id.,* p. 13 at § 1.49.

Under Section 10.11 of the Settlement Stipulation, its construction and interpretation are governed by the internal laws of the State of New York without regard to conflicts of laws, except to the extent that federal law governs. *Id.,* p. 26 at § 10.11.

The claims asserted in the ERISA Action – like those asserted here – arose out of Merrill Lynch's compensation arrangements with the Class members and its exposure to collateralized debt obligations (CDOs) and subprime mortgage-backed securities. The ERISA Action plaintiffs alleged that Merrill Lynch "withheld information about the true extent of its net exposure to CDO securities and subprime mortgages [and] . . . made false and misleading statements about its exposure . . . thereby *artificially inflating the value of shares of Merrill Lynch Stock* . . . in the Plans", and that the ERISA Action defendants breached their fiduciary duty when they "*allowed*

**MERRILL LYNCH DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS OR, IN THE ALTERNATIVE, SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT**

1 | *the imprudent investment* of the Plans' assets *in Merrill Lynch common stock*" knowing that

2 | "such investment was unduly risky". Kane Decl., Exh. C at ¶¶ 5-6.

3 | As members of the settlement Class in the ERISA Action, Plaintiffs received notice of the

4 | settlement.  Burke Decl., ¶¶ 3-5 and Exh. A (Keough Decl.) attached thereto.

5 | **III.    ARGUMENT**

6 | **A.    Applicable Legal Standards.**

7 | Fed. R. Civ. P. 12(c) provides, "After the pleadings are closed – but early enough not to

8 | delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  The

9 | standard applied by the Court in deciding a motion for judgment on the pleadings is virtually

10 | identical to the standard for dismissal for failure to state a claim upon which relief can be granted

11 | pursuant to Fed. R. Civ. P. 12(b)(6).  *Fajardo v. County of Los Angeles*, 179 F.3d 698, 699 (9th

12 | Cir. 1999).  Thus, judgment on the pleadings is appropriate when, even if all material facts in the

13 | pleading under attack are true, the moving party is entitled to judgment as a matter of law.  *Hal

14 | Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1990).

15 | Like a Rule 12(b)(6) motion, a Rule 12(c) motion challenges the legal sufficiency of an

16 | opposing party's pleadings.  "When a federal court reviews the sufficiency of a complaint, before

17 | the reception of any evidence either by affidavit or admissions, its task is necessarily a limited

18 | one." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990).  Dismissal is proper

19 | where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts

20 | alleged under a cognizable legal theory." *Id.*  The facts alleged in a complaint "must be enough to

21 | raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554

22 | (2007).  "While a complaint . . . does not need detailed factual allegations . . . a plaintiff's

23 | obligation to provide the 'grounds' of his 'entitlement to relief requires more than labels and

24 | conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at

25 | 555.  To survive this motion, plaintiff's allegations must be plausible on their face. *Id.* at 570.

26 | In ruling on a motion under Rule 12(c) or Rule 12(b)(6), the Court may consider

27 | documents which are not attached to the Complaint if the authenticity of the documents is not

28 | contested and if the complaint necessarily relies on facts set forth in the documents. *See Lee v.*

1   *City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001); *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th

2   Cir. 2005); *In re Silicon Graphics Inc. Securities Litigation*, 183 F.3d 970, 986 (9th Cir. 1999);

3   *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994); *Mills v. Ramona Tire, Inc.*, No. 07-CV-0052,

4   2007 WL 2775127, * 3 (S.D. Cal. 2007).   In addition, the Court may take judicial notice of

5   "matters of public record" under Fed. R. Evid. 201.   *See Heliotrope General, Inc. v. Ford Motor*

6   *Co.*, 189 F.3d 971, 981 n. 18 (9th Cir. 1999).   Judicial notice may be taken under Rule 201 as to

7   any records which are capable of immediate and accurate verification through reliable sources.

8   *See O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218 (10th Cir. 2007) (allowing judicial

9   notice of plaintiff's earnings history as published on defendant's website); *Schaffer v. Clinton*, 240

10  F.3d 878, 885 n.8 (10th Cir. 2001) (allowing judicial notice of information found in a political

11  reference almanac); *City of Monroe Employees Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 655,

12  n. 1 (6th Cir. 2005) (allowing  judicial notice of a term defined on the NASD website).

13         Consideration of such extrinsic evidence does not convert a Rule 12 motion into a motion

14  for summary judgment under Rule 56 where the extrinsic evidence contains facts necessarily

15  relied upon in the complaint and the authenticity of the evidence is not contested.   *Lee, supra*, 150

16  F.3d at 688; *Parrino v. FHP, Inc.*, 146 F.3d 699, 705-06 (9th Cir. 1998).   However, in considering

17  extrinsic evidence on a motion for judgment on the pleadings, the Court *may* treat the motion as

18  one for summary judgment under Rule 56.   Fed. R. Civ. P. 12(d).   Summary judgment is

19  appropriate if the pleadings and affidavits show "there is no genuine issue as to any material fact

20  and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).   The

21  party seeking summary judgment bears the burden of demonstrating the absence of a genuine issue

22  of material fact requiring judgment as a matter of law.   *Celotex Corp. v. Catrett*, 477 U.S. 317,

23  323-25 (1986).   A fact is material if it is essential to the proper disposition of the claim.

24  *Radobenko v. Automated Equip. Corp.*, 520 F.2d 540 (9th Cir. 1975).   If the moving party carries

25  its initial burden, the non-moving party must then set forth "special facts" outside the pleadings

26  and admissible into evidence which would convince a rational trier of fact to find for the

27  nonmovant. Fed. R. Civ. P. 56(e).   If the non-moving party fails to make a sufficient showing on

28  an essential element of its case with respect to which it has the burden of proof, the moving party

**MERRILL LYNCH DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS OR, IN THE
ALTERNATIVE, SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT**

1    is entitled to summary judgment.  *Celotex Corp*., 477 U.S. at 325.  The mere existence of a factual

2    dispute will not automatically necessitate denial of the motion; rather, only factual disputes that

3    are material can preclude entry of summary judgment.  *Radobenko*, 520 F.2d at 543-44.

4        All of the extrinsic evidence offered in support of this Rule 12(c) motion may be

5    considered by the Court without converting it into a Rule 56 motion, because the Complaint

6    necessarily relies on the facts contained in that evidence.  Specifically, because the Complaint

7    alleges Plaintiffs' forfeiture of awards under the Plans, the governing documents for the Plans and

8    evidence related to the vesting of and payments made for each Plaintiff's awards, including

9    Plaintiffs' ages and dates of employment, is "necessarily relied upon" in the Complaint.

10   Notwithstanding, Defendants prophylactically seek, in the alternative, summary judgment under

11   Rule 56 if the Court determines that it can only consider the extrinsic evidence in that context.

12       **B.       All Of Plaintiffs' Claims Are Barred By The ERISA Action Judgment.**

13       Plaintiffs participated in the RAP retirement plan, and their RAP accounts included

14   investments in Merrill Lynch stock between September 30, 2006 and December, 31 2008.  Waller

15   Decl., Exhs. G-I.  Accordingly, Plaintiffs are members of the "Class" and are "Class Members" as

16   defined in the Settlement Stipulation approved by the Judgment in the ERISA Action.  Kane

17   Decl., Exh. B, Exh. 1, p. 5 at § 1.3, p. 9 at § 1.33.  Moreover, all of the Plaintiffs' claims being

18   asserted in this action "arise out of or are based upon the allegations, transactions, facts, matters or

19   occurrences, representations or omissions" asserted in the ERISA Action, including without

20   limitation Merrill Lynch's dealings with its employees (including FA's) in providing them with

21   compensation.  Indeed, certain of the Plaintiffs' claims in this action arise from the *exact same*

22   alleged misrepresentations about the *exact same* investment portfolios made in the *exact same*

23   SEC filings and public disclosures, allegedly resulting in the *exact same* decline in the value of

24   Merrill Lynch stock as alleged in the ERISA Action.  *Id.*, Exh. C, ¶¶ 5-6.  Thus, all of the

25   purported claims Plaintiffs are asserting against the Defendants in this action are claims that could

26   have been – and indeed some of them have been – asserted in the ERISA Action prior to the final

27   approval of the Settlement Stipulation by the SDNY Court.  *Id.*, Exh. B, Exh. 1, p. 8 at § 1.24, p.

28   10 at § 1.41, p. 13 at § 1.49.

**MERRILL LYNCH DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS OR, IN THE ALTERNATIVE, SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT**

Under both New York and federal law which apply to the Settlement Stipulation and the Judgment, ***the release of the "Settled Claims" in the ERISA Action bars all of the claims being asserted in this action***. Indeed, "[i]n many areas of law . . . the use of ***'arising out of'*** language in a contract is considered ***unambiguous*** and viewed as reasonably supporting ***only a broad reading***." *In re Spiegel Inc*., 2006 WL 2577825, * 10 (Bkrtcy. S.D.N.Y. 2006) (emphasis added). *See, e.g., Cologne Reinsurance Co. of Am. v. Southern Underwriters, Inc.*, 630 N.Y.S.2d 548, 549 (1995) (arbitration agreement – "arising out of" is considered "broadly worded" to encompass both contract and tort claims); *Collins & Aikman Prod. Co. v. Bldg. Systems Co.,* 58 F.3d 16, 20 (2d Cir. 1995) (arbitration agreement – "arising out of" is "the paradigm of a broad clause"); *Mount Vernon Fire. Ins. Co. v. Creative Housing Ltd*., 645 N.Y.S.2d 433 (1996) (insurance – "arising out of" is unambiguous and is to be applied broadly in determining scope of provision); *New Hampshire Ins. Co. v. Jefferson Ins. Co. of New York*, 624 N.Y.S.2d 392, 395 (1995) (insurance – the words "arising out of" are deemed to be "broad, general, comprehensive terms ordinarily understood to mean originating from, incident to, or having connection with"); *Richards v. Princeton Ins. Co.*, 178 F.Supp.2d 386, 392-93 (S.D.N.Y. 2001) (insurance – "[t]he term 'arising out of' is to be interpreted in a broad and comprehensive sense"); *Turtur v. Rothschild Registry Int'l, Inc.,* 26 F.3d 304, 309-10 (2d Cir. 1994) (stock subscription agreement – "arising out of" was "sufficiently broad to cover" both tort and contract claims).

The scope of a release in a judicially-approved class action settlement agreement is viewed through the same prism. For example, in *In re Johns Manville Corp*., 340 B.R. 49, 60 (S.D.N.Y. 2006), the district court concluded: "The Court's repeated use of the term 'arising out of' and 'related to' were not gratuitous or superfluous; they were meant to provide the broadest [third party plan release] protection possible to facilitate global finality for Travelers as a necessary condition for it to make a significant contribution to the Manville estate." (Emphasis added). On appeal from this ruling, the U.S. Supreme Court affirmed the district court's ruling. *Travelers Indem. Co. v. Bailey*, 129 S.Ct. 2195, 2203 (2009). In doing so, the high court reaffirmed that ***"arising out of" language in judicially-approved class action settlements must be construed broadly***. *Id.* In *Travelers*, the Supreme Court was called upon to construe language in an order similar to that in

the ERISA Action Judgment enjoining the pursuit of "Policy Claims," which covered "not only 'claims,' but even 'allegations' relating to the insurance coverage." *Id.* (emphasis added).  The Supreme Court held that "[a]lthough it would be possible (albeit quite a stretch) to suggest that a 'claim' only relates to Travelers' insurance coverage if it seeks recovery based upon Travelers' specific contractual obligation to Manville, ***'allegations' is not even remotely amenable to such a narrow construction and clearly reaches factual assertions that relate in a more comprehensive way*** to Travelers' dealings with Manville." *Id.* (emphasis added).  "[W]here the plain terms of a court order unambiguously apply, as they do here, they are entitled to their effect." *Id.* at 2204.

The Settlement Stipulation approved by the Judgment in the ERISA Action is expressly intended "to be a ***final*** and ***complete*** resolution of ***all disputes asserted*** or which ***could be asserted*** by the *Class Members* against the *Released Parties* with respect to the *Settled Claims*."  Kane Decl., Exh. B., Exh. 1, p. 25 at § 10.3 (emphasis added and in original).  With that intention, and under the foregoing authorities, ***all*** of Plaintiffs' purported claims asserted in this action fall squarely within the "Settled Claims" settled and released by the Settlement Stipulation. Accordingly, on this basis alone, Defendants are entitled to judgment in their favor on Plaintiffs' entire Complaint.  As we discuss next, in the event the Court disagrees, each of Plaintiffs' claims still fail as a matter of law and Defendants are still entitled to judgment in their favor.

C.   **The First Cause Of Action For Recovery Of Unpaid Wages Is Barred Because Plaintiffs' Unvested Awards Under The Plans Are Not "Wages".**

Plaintiffs' First Cause of Action is based on Defendants' purported failure to pay wages under *Cal. Labor Code* §§ 201, 202, 204, 221, and 222.  Kane Decl., Exh. A at ¶ 22.  The term "wages," as used in the California Labor Code, "includes all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculation." *Cal. Lab. Code* § 200.  As the California Supreme Court recently put it, the obligation to pay wages is *a matter of contract*, defined as: "the amount the employer has offered or promised to pay, or has paid pursuant to such an offer or promise, as compensation for the employee's labor." *Prachasaisoradej v. Ralphs Grocery Co., Inc.*, 42 Cal.4th 217, 228 (2007).  Of course, *no contractual promise is breached if*

**MERRILL LYNCH DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS OR, IN THE ALTERNATIVE, SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT**

1  the employer's promise to pay wages is *contingent upon future events which have not been*

2  *satisfied.*  *Neisendorf v. Levi Strauss & Co.*, 143 Cal.App.4th 509, 522 (2006).

3       Accordingly, California laws prohibiting the forfeiture of "wages" are *not applicable* in the

4  context of a bonus or profit-sharing plan *until and unless* "**all conditions agreed to in advance for**

5  **earning those wages have been satisfied**."  *Id.* (emphasis added).  As the *Neisendorf* court held:

6  > "California courts have consistently characterized bonus and profit sharing plans as
> constituting an *offer* of the stated benefits in exchange for the service of an

7  > employee, and upon the employee's *completion of the required services in
> accordance with the terms of the plan*, a binding contract is formed under which the

8  > employer is obligated to deliver the promised benefits." *Id.* (emphasis added and in

9  > original).

10      ***The specific terms of the incentive compensation plan at issue are controlling*** in

11  determining whether an employee is entitled to payments under the plan as "wages."  *See*

12  *Neisendorf, supra,* 143 Cal.App.4th at 522 ("[E]ligibility for bonus payments is properly

13  determined by the bonus plans' specific terms and general contract principles."); *Beckman v.*

14  *Umpqua Bank*, 2007 WL 2418686, *2 (E.D. Cal. 2007) (employee's eligibility for a bonus

15  payment is "properly determined by the specific terms of the bonus plan and general contract

16  principles"); *Lucian v. All States Trucking Co.*, 116 Cal.App.3d 972, 976 (1981) ("[A] specific

17  bonus plan normally becomes binding as a unilateral contract when the employee begins

18  performance. . . . It does not follow, however, that the employee thereupon becomes entitled to

19  bonus payment where . . . the bonus did not become payable until a certain date and the employee

20  voluntarily left his position before that date."); *Hunter v. Sparling*, 87 Cal.App.2d 711, 724 (1948)

21  (holding that employee who was fired before the bonus payment date was not entitled to receive a

22  bonus payment where the bonus plan required him to be employed on that date); *Stevens v.*

23  *Mavent, Inc.*, 2008 WL 2824956, *5 (C.D. Cal. 2008) (holding that performance bonuses are not

24  properly considered "wages" as defined in the Labor Code because the terms and conditions by

25  which the bonuses would be earned were not met).

26       In *Neisendorf*, the California Court of Appeal held that the plaintiff could not establish a

27  claim for lost wages under the Labor Code based on forfeited bonus payments on facts similar to

28  those alleged here.  The plaintiff was permitted to participate in the employer's Annual Incentive

**MERRILL LYNCH DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS OR, IN THE
ALTERNATIVE, SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT**

1  Plan ("AIP"), which provided that a participant must be an active employee of the company on the

2  payment date in order to receive an AIP payment. 143 Cal.App.4th at 521.  The AIP further stated:

3  "If an employee is involuntarily discharged (e.g. poor performance or misconduct) prior to the AIP

4  payment date, that employee will have no right to AIP."  *Id.*  The plaintiff's employment was

5  terminated for unsatisfactory performance prior to the payment date for the 2002 AIP bonus

6  payment, and, accordingly, the employer refused to pay the bonus.  The plaintiff claimed, as do

7  the Plaintiffs in this action, that the employer had committed an unlawful forfeiture of wages

8  under the Labor Code by refusing to pay the bonus.  *Id.* at 522.

9  The Court of Appeal disagreed, holding that the plaintiff's Labor Code claims were barred,

10  because it is ***only after all agreed-to conditions are fulfilled*** that a promised bonus can be

11  considered "wages" under California law.  *Id.* at 524.  Because the plaintiff was no longer

12  employed on the bonus payment date, the promised bonus could not constitute earned "wages" and

13  the refusal to pay them did not violate the California Labor Code.  *Id.*

14  Likewise, in *Prachasaisoradej, supra,* the California Supreme Court held that the

15  employer's incentive compensation plan did not violate statutory wage protection policies because

16  the ***conditions precedent to receipt of incentive compensation under the terms of the employer's***

17  ***plan were not fulfilled***.  As in *Neisendorf*, the court first held that the employees' expectations

18  with respect to these payments ***derived exclusively from the terms of the plan itself***.  42 Cal.4th at

19  229.  Under the terms of the employer's plan at issue, an employee's entitlement to incentive

20  compensation payments arose only under a formula that compared the store's actual plan-defined

21  profit, if any, for a specified period, with target figures previously set by the company.  Therefore,

22  entitlement depended on (1) whether the store's overall operations for the period had been

23  profitable, as the plan defined profitability, and (2) how any such profit compared to goals or

24  targets previously set for the store.  *Id.*  ***Only after these two conditions were fulfilled did the***

25  ***incentive compensation payments become earned "wages"*** that the individual employees were

26  entitled to receive.  *Id.* at 237.  Accordingly, the court reversed the decision of the Court of

27  Appeal, which had reversed a judgment of dismissal in favor of the Defendant.  *Id.*

28  More recently, late last year the California Supreme Court decided *Schachter v. Citigroup,*

15

**MERRILL LYNCH DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS OR, IN THE ALTERNATIVE, SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT**

1   *Inc.*, 47 Cal.4th 610, 621-22 (2009), which affirmed an order granting summary judgment to the

2   employer in a wage payment suit.   Consistent with the *Neisendorf* and *Prachasaisoradej*

3   decisions, the court held that an employee who voluntarily terminates his employment **before his**

4   **restricted stock grants are fully vested** under the terms of the employer's incentive compensation

5   plan **is not entitled to those unvested shares as wages under the Labor Code**. *Id.*  In *Schachter*,

6   the plaintiff was employed as a stock broker by Smith Barney.   At the time of his voluntary

7   termination, Schachter had accumulated several shares of unvested stock under the plan, which he

8   forfeited as a result of his failure to satisfy the plan's two-year vesting period prior to his

9   resignation. *Id.*  Shachter sued Citibank (which had acquired Smith Barney), alleging that his

10  shares of unvested stock constituted a "wage" that was "earned but unpaid," and therefore

11  unlawfully forfeited in violation of the California Labor Code. *Id.*

12       Citing to *Neisendorf*, the California Supreme Court stated, "[o]nly when an employee

13  **satisfies the condition(s) precedent to receiving incentive compensation**, which often includes

14  **remaining employed for a particular period of time**, can that employee be said to have **earned** the

15  incentive compensation (thereby necessitating payment upon resignation or termination)." *Id.*

16  (emphasis added).   Accordingly, in rejecting Schachter's argument, the California Supreme Court

17  noted as follows:

18       ". . . Schachter's bargained-for 'wages' have been paid in full. . . . The only thing
19       that has not been 'paid' is **something Schacter never 'earned'** – **fully vested**
         [company] stock.   Schachter therefore has **no claim** under [section] 201 or [section]
20       202. * * * Here, **Schachter's actions** [resigning his employment] – not the
         company's – **resulted in the loss of Schachter's contingent incentive**
21       **compensation**.   As such, Schachter is not entitled to 'gather the fruit' because he
         **failed to perform the condition necessary** to do so – in this case, **remain employed**
22       **with the company until two years had passed** from the date he received the
         unrestricted stock.   We conclude that the Plan's forfeiture provision does not run
23       afoul of section 201 or 202 because **no earned wages remain unpaid upon**
         **termination for cause or resignation**." *Id.* at 622-623 (emphasis added).
24

25       Here, Plaintiffs have not alleged that they were denied any awards which had *vested* under

26  any of the Plans.   Moreover, Plaintiffs could not allege or establish that they were denied payment

27  of any *vested* awards because they were paid for all of their awards under the Plans that had *vested*

28  as of the time they resigned their employment at Merrill Lynch.  Waller Decl., ¶¶ 7-11. As in

**MERRILL LYNCH DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS OR, IN THE**
**ALTERNATIVE, SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT**

1  *Schachter* and *Neisendorf*, **no earned wages related to incentive compensation remained unpaid**

2  **upon Plaintiffs' termination**.   Therefore, Defendants are entitled to judgment in their favor on

3  Plaintiffs' First Cause of Action for Recovery of Unpaid Wages under the California Labor Code.

4        **D.**      <u>The Second Cause Of Action For Violation Of The UCL Is Without Merit</u>.

5       A claim for violation of the UCL is a derivative one which must be based on an alleged

6  violation of some other statute or law, or "unfair" business competition which violates antitrust

7  laws, or the policy or spirit of such laws.   *See Prachasaisoradej*, *supra,* 42 Cal.4th at 244;

8  *Steinhebel v. Los Angeles Times Commc'ns*, 126 Cal.App.4th 696, 712 (2005); *Cel-Tech*

9  *Communications, Inc. v. Los Angeles Cellular Telephone Co*., 20 Cal.4th 163, 187 (1999) ("*Cel-*

10  *Tech*"); *Stevenson Real Estate Services, Inc. v. CB Richard Ellis Real Estate Servs., Inc.*, 138

11  Cal.App.4th 1215, 1225 (2006).

12       Plaintiffs' UCL claim contains no allegation which could establish a violation of any

13  statute or law under these standards.  This claim is based on an allegation that Defendants violated

14  the UCL because the Plans contain allegedly unlawful forfeiture provisions that prohibited them

15  from working for competitors in violation of *Cal. Bus. & Prof. Code* § 16600.  Kane Decl., Exh.

16  A, ¶¶ 21-22.  However, as discussed above, Plaintiffs did not forfeit any awards under the Plans

17  based on their purported work for any Merrill Lynch competitor.  The only awards which were

18  "forfeited" were those which were **unvested** under the express terms of the Plans at the time

19  Plaintiffs resigned their employment.  Thus, Plaintiffs have not alleged – and cannot allege or

20  prove – any facts which could support their UCL claim as alleged in the Second Cause of Action.

21       Further, a UCL claim cannot be maintained in the absence of factual allegations sufficient

22  to establish entitlement to *restitution* or *injunctive relief*; damages are not recoverable under the

23  UCL.  *See Buckland v. Threshold Enterprises, Ltd.*, 155 Cal.App.4th 798, 812 (2007); *see also*

24  *Korea Supply Co. v. Lockheed Martin Corp*., 29 Cal.4th 1134, 110-51 (2003) (dismissing

25  plaintiff's UCL claims on grounds that such non-restitutionary relief is not available under the

26  UCL); *Kasky v. Nike, Inc.*, 27 Cal.4th 939, 950 (2002) (holding that the UCL provides only for

27  restitution and injunctive relief); *Cel-Tech*, 20 Cal.4th at 179 ("Plaintiffs may not receive

28  damages" under the UCL).  Indeed, restitution is the only monetary relief available to private

**MERRILL LYNCH DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS OR, IN THE
ALTERNATIVE, SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT**

1  plaintiffs under the UCL. *Clark v. Superior Court*, 174 Cal.App.4th 82, 90 (2009). In the context

2  of the UCL, "restitution" is only available where a defendant receives money in which the plaintiff

3  had an ownership interest, and where the money was taken from the plaintiff through an unfair

4  business practice. *See Korea Supply*, 29 Cal.4th at 1144-1145; *Kraus v. Trinity Management*

5  *Services, Inc.*, 23 Cal.4th 116, 126-127 (2000); *Madrid v. Perot*, 130 Cal.App.4th 440, 453 (2005);

6  *Feitelberg v. Credit Suisse First Boston*, *LLC*, 134 Cal.App.4th 997, 1012-1013 (2005).

7       Here, Plaintiffs have not alleged any facts which could establish a right to restitution or

8  injunctive relief. Indeed, they have not alleged that Defendants received any money in which

9  Plaintiffs had an ownership interest. On the contrary, as set forth above, Plaintiffs received

10  compensation for all *vested* awards as of the time they resigned their employment, and they only

11  "forfeited" awards which were *unvested* as of that time. Waller Decl., ¶¶ 7-11. Thus, because

12  Plaintiffs had no ownership interest in any *vested* awards under the Plans, they have no right to

13  restitution. For the same reason, Plaintiffs cannot establish any basis for injunctive relief.

14       Accordingly, in addition to the fact that Plaintiffs have not alleged a violation of any law or

15  statute to support their UCL claim, they have not alleged any basis for restitution or injunctive

16  relief. Therefore, Defendants are entitled to judgment in their favor on Plaintiffs' Second Cause of

17  Action for Violation of the UCL.

18       **E.     The Third Cause Of Action For Conversion Fails As A Matter Of Law.**

19       The elements of a claim for conversion are: (1) the plaintiff's ownership or right to

20  possession of the property; (2) the defendant's conversion by wrongful act inconsistent with the

21  property rights of the plaintiff; and (3) damages. *See, e.g., Cho v. The Republic of Korea*, 66 Fed.

22  Appx. 124, 126 (9th Cir. 2003); *Oakdale Village Group v. Fong*, 43 Cal.App.4th 539, 543-544

23  (1996). Here, Plaintiffs' Third Cause of Action for Conversion is based on an allegation that

24  Merrill Lynch "illegally converted the property of Plaintiffs" by refusing to pay their awards under

25  the Plans. Kane Decl., Exh. A at ¶ 26. However, as discussed above, Plaintiffs cannot establish

26  the requisite "ownership" or "right" to the awards because, at the time they resigned, all *vested*

27  awards under the Plans had already been paid to them and all other awards were *unvested* under

28  the terms of the Plans. Waller Decl., ¶¶ 7-11. Accordingly, their conversion claim is barred.

**MERRILL LYNCH DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS OR, IN THE
ALTERNATIVE, SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT**

1    Further, to the extent that Plaintiffs' conversion claim is based on the alleged forfeiture of

2  earned wages as alleged in their First Cause of Action for Recovery of Unpaid Wages, it is still

3  barred.  Under California law, there is no cause of action for conversion based on Labor Code

4  violations.  *See Thomas v. Home Depot USA Inc.*, 527 F.Supp.2d 1003, 1009-1010 (N.D. Cal.

5  2007); *Wal-Mart Stores, Inc. Wage and Hour Litigation*, 505 F.Supp.2d 609 (N.D. Cal. 2007);

6  *Pulido v. Coca-Cola Enterprises, Inc.*, No. EDCV06-406VAP(OPX), 2006 U.S. Dist. LEXIS

7  43765 (C.D. Cal. May 25, 2006); *Green v. Party City Corp.*, No. CV-0109681, 2002 U.S. Dist.

8  LEXIS 7750 (C.D. Cal. Apr. 9, 2002).

9    Accordingly, Defendants are entitled to judgment in their favor on Plaintiff's Third Cause

10  of Action for Conversion.

11    **F.     The Fourth Cause Of Action For Breach Of Fiduciary Duty Is Barred.**

12    Plaintiffs' Fourth Cause of Action is based on allegations that Defendants breached their

13  fiduciary duties under the FACAAP by not making adjustments to counteract the "unusual and

14  extraordinary events" that "materially affected the value of Merrill Lynch's common stock."  Kane

15  Decl., Exh. A at ¶¶ 30-31.  As alleged, this claim is based on an alleged breach of fiduciary duty

16  arising under the common law, which is barred as a matter of law.

17    As this Court ruled in its January 22, 2010 Order granting in part the Independent Director

18  Defendants' Motion to Dismiss, fiduciaries are "not required to insure against losses, only to act

19  with care, prudence, and diligence under the circumstances," and no claim for breach of fiduciary

20  duty is established merely by alleging that a company took a risk and suffered a loss.  *Id.,* Exh. D

21  (Dkt. #79) at 9:3-8.  In so ruling, this Court held that:

22      By its plain language, [the FACAAP plan document] merely provides the
        Independent Directors with authority to make adjustments to the number of shares
23      and method of calculating the awards.  [It] does not impose any fiduciary duty on
        the Independent Directors, mandating that they takes such actions when "unusual or
24      extraordinary" events occur.  *Id.* at 7:18-8:5.

25

26    These findings compel the conclusion that the Fourth Cause of Action likewise fails to

27  state a claim for common law breach of fiduciary duty against the Merrill Lynch Defendants as

28  well.  Simply put, it is axiomatic that, if the Independent Director Defendants owed no fiduciary

**MERRILL LYNCH DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS OR, IN THE
ALTERNATIVE, SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT**

duty to Plaintiffs to take the actions alleged in the Complaint, the Merrill Lynch Defendants likewise owed no such fiduciary duty to them as well.  Therefore, Defendants are entitled to judgment in their favor on Plaintiff's Fourth Cause of Action for Breach of Fiduciary Duty.

**G.** **The Fifth Cause Of Action For ERISA Violations Fails As A Matter Of Law.**

**1.** **The FACAAP Is Not An ERISA Plan, As The Court Previously Ruled.**

As this Court has already properly concluded, the FACAAP does not qualify as an "employee pension benefit plan" under ERISA.  Kane Decl., Exh. D (Dkt. #79) at 5:26-6:6. Accordingly, to the extent Plaintiffs' Fifth Cause of Action for Violation of ERISA is based on the FACAAP violating ERISA's minimum vesting standards and breach of fiduciary duties owed under ERISA, Defendants are entitled to judgment in their favor on that claim.

The remaining aspects of the allegations of Plaintiffs' purported Fifth Cause of Action are limited solely to whether the Growth Plan and the WealthBuilder Plan "violate the minimum vesting standards set forth in 29 U.S.C. § 1053(a)."  Kane Decl., Exh. A at ¶ 37.  As we discuss next, the Growth Plan is not an ERISA employee pension benefit plan which would be subject to those standards, and the WealthBuilder Plan is an ERISA "top hat" plan which is exempt from those standards.

**2.** **The Growth Plan Also Is Not An ERISA Retirement Plan.**

Like the FACAAP, the Growth Plan is not a retirement plan under ERISA.  A plan is covered by ERISA only if it provides *retirement income* or results in a *deferral of income* by employees for periods extending to the termination of covered employment or beyond.  *See* 29 U.S.C. § 1002(2); *Roderick v. Mazzetti & Assocs.*, No. C 04-2436, 2004 WL 2554453, * 8 (N.D. Cal. Nov. 9, 2004).  Courts have uniformly concluded that a pension plan is established under ERISA only if "a reasonable person could ascertain the intended benefits, beneficiary, source of financing, and procedures for receiving benefits."  *See, e.g., Scott v. Gulf Oil Corp.*, 754 F.2d 1499, 1504 (9th Cir. 1985); *Donovan v. Dilingham*, 688 F.2d 1367, 1363 (11th Cir. 1982).

In contrast, bonus plans and other plans which are merely intended to incentivize performance rather than to provide retirement income are not subject to ERISA's requirements. *See, e.g., Oatway v. American Int'l Group*, 325 F.3d 184, 188-189 (3d Cir. 2003); *In re Segovia*,

**MERRILL LYNCH DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS OR, IN THE ALTERNATIVE, SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT**

404 B.R. 896, 922 (9th Cir. 2009).  Indeed, the regulations promulgated by the Department of Labor specifically exclude from the definition of an employee pension benefit plan those that involve "payments made by an employer to some or all of its employees as bonuses for work performed."  20 C.F.R. § 2510.3-2(c).

Here, the Growth Plan does not provide for retirement income or deferred compensation as defined by ERISA.  Rather, like the FACAAP – which this Court has already held is *not* an ERISA retirement plan – the stated purpose of the Growth Plan is to ***incentivize performance*** rather than provide retirement income:

> "The Plan, established under the Financial Advisor Compensation Program as in effect from time to time is intended to be unfunded and ***maintained primarily for the purpose of providing long-term incentive compensation***, subject to certain conditions, to a select group of financial advisors, who remain in the employ of the Company until completion of the period of service specified in this Plan."  Waller Decl., Exh. B at § 1 (emphasis added).

In keeping with its stated purpose to ***incentivize performance***, the Growth Plan provides that the criteria for awards "will be established periodically by the Advisory Division" and "may vary from Performance Period to Performance Period and according to the type of performance." *Id.,* at § 3.1(b).  Awards under the Growth Plan are *not guaranteed* and *cannot be quantified*, as they are generally "stated as an amount equal to a percentage of achievement against established goals during a Performance Period."  *Id.*

Thus, by its express terms, the Growth Plan provides for performance-based incentive compensation and ***does not have a retirement purpose*** or provide for a "systematic deferral of income."  In its January 22, 2010 Order, this Court concluded, based on similar provisions, that the FACAAP Plan was not subject to ERISA as well, reasoning as follows:

> By its express terms, the FACAAP does not have a retirement purpose or provide a systematic deferral of compensation.  Rather, it is clear the FACAAP is intended merely as a bonus program to award top performing employees and provide financial incentive for employees to remain with Merrill Lynch and improve their performance there.  There is nothing in the FACAAP that would allow a reasonable person to calculate or determine the benefits of the plan or procedure for receiving benefits, as those matters are left to the sole discretion of Merrill Lynch.  Additionally, no employee is guaranteed awards under the FACAAP; he or she is given awards only according to the company's assessment of his or her contribution of the financial well-being of the company.  Accordingly, the

**MERRILL LYNCH DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS OR, IN THE ALTERNATIVE, SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT**

FACAAP does not qualify as an "employee pension benefit plan" under ERISA. Kane Decl., Exh. D (Dkt. #79) at 5:26-6:6.

Here, the Court should likewise conclude that the Growth Plan is not an employee pension benefit plan under ERISA because, like the FACAAP, it does not have a retirement purpose or provide for a "systematic deferral of income."[4]  Therefore, to the extent Plaintiffs' Fifth Cause of Action for Violation of ERISA is based on the Growth Plan violating ERISA's minimum vesting standards, Defendants are entitled to judgment in their favor on that claim.

### 3. The WealthBuilder Plan Is A "Top Hat" Plan Which Is Exempt From ERISA's Vesting Provisions.

Pursuant to 29 U.S.C. § 1101(a)(1), ERISA covers an employee benefit plan "other than" one which falls into the following category:

> "[A] plan which is unfunded and is maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees . . ." 29 U.S.C. § 1101(a)(1).

This section sets forth a statutory exemption for plans which are commonly referred to as "top hat" plans, which are not subject to the fiduciary, vesting, funding, and participation provisions of ERISA.  *See* 29 U.S.C. §§ 1101(a)(1), 1081(a)(3), 1051(2); *Gilliam v. Nevada Power Co*., 488 F.3d 1189, 1192-1193 (9th Cir. 2007); *Duggan v. Hobbs*, 99 F.3d 307, 310 (9th Cir. 1996); *Fields v. Thompson Printing Co*., 363 F.3d 259, 274 (3d Cir. 2004); *Pane v. RCA Corp*., 868 F.2d 631, 637 (3d Cir. 1989); *Demery v. Extebank Deferred Compensation Plan (B)*, 216 F.3d 283, 288 (2d Cir. 2000).  Top hat plans are exempt from the ERISA provisions applicable to employee benefit plans because they only apply to highly paid executives, who have a strong bargaining position relative to their employers.  *See Fields*, 363 F.3d at 274.  Where, as here, the plain language of a top hat plan shows that the plan is ***unfunded*** and maintained

---

[4]  Although the Growth Plan contains a provision for post-retirement payments, that provision does not transform the Plan into an ERISA Plan.  As the Court properly noted in its January 22, 2010 Order, ***where post-retirement payments are incidental to the goal of supplementing current compensation, such payments do not constitute a "deferral of income" which could subject the plan to ERISA***.  Kane Decl., Exh. D (Dkt. #79) at 6:7-17.

**MERRILL LYNCH DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS OR, IN THE ALTERNATIVE, SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT**

primarily for the purpose of providing **deferred compensation** for a **select group of management or highly-compensated employees**, a motion under Rule 12 should be granted as to claims which are not applicable to a top hat plan. *See, e.g., In Re: IT Group, Inc.,* 305 B.R. 402, 410 (D. Del. 2004) (granting motion to dismiss and finding that because plan documents track ERISA language limiting participants to select group of management or highly compensated employees, the "plain language of the Deferred Compensation Plan leaves little room for the . . . Plaintiffs to prevail"); *Cogan v. Phoenix Life Ins. Co.*, 310 F.3d 238, 242 (1st Cir. 2002) (granting Rule 12(b)(6) motion to dismiss ERISA claims based on plain language of the plan, which recited the statutory definition for a top hat plan).

In *Cogan, supra*, the First Circuit affirmed an order that granted a Rule 12 motion to dismiss on facts similar to those present in this case. 310 F.3d at 242. The plaintiffs in *Cogan* were sales representatives who participated in a deferred compensation plan which the plaintiffs alleged violated ERISA's anti-cutback provision, 29 U.S.C. § 1054(g)(1). *Id.* at 241. The Court of Appeals first noted that the district court had properly reviewed the plan documents under Rule 12 because they were "integral to" or "relied upon" in the complaint. *Id.* The court then held that the motion to dismiss the ERISA claim had been properly granted based solely on the plain language of the plan document, noting as follows:

> "The anti-cutback provision does not apply here, however, as the Plan is unquestionably a 'top hat' employee benefit plan. ERISA describes such a plan as 'unfunded' and 'maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees.' The Plan itself echoes this statutory definition, stating that 'this Plan is an unfunded plan for a select group of highly compensated Participants.' Thus, plaintiffs cannot dispute . . . that the Plan is a top hat plan within the meaning of ERISA. Top hat plans are expressly exempted from ERISA's anti-cutback provision." *Id.* at 242 (internal citations omitted).

Here, the WealthBuilder Plan is a top hat plan which is exempt from the vesting, funding, fiduciary, and participation provisions of ERISA under the foregoing standards. The Plan, at Article 1, recites ERISA's top hat plan requirements:

**MERRILL LYNCH DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS OR, IN THE ALTERNATIVE, SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT**

The Plan, established under the WealthBuilder Program as in effect from time to time, is intended to be ***unfunded*** and maintained primarily for the purpose of providing ***deferred compensation*** for the ***members of a select group of management or highly compensated employees***, within the meaning of Title 1 of ERISA, ***who remain in the employ of the company until retirement or completion of a substantial period of service as specified in this Plan***.  Waller Decl., Exh. C, p. 1 at Art. 1 (emphasis added).

The WealthBuilder Plan also expressly provides that participation is limited to a particular select group of management or highly compensated employees:

### 3.1 Participation

(a)  **General Rule**.  An eligible employee will be a Participant in any year only if he or she (i) has more than $250,000 of Eligible Compensation in both the Qualification Year and the year in which the award is made, (ii) has attained at least the title of Vice President or holds a Advisory Division Management position with the Company (a "Advisory Manager"),

(b)  **Newly Employed Individuals**.  Subject to the approval of the Administrator in his or her sole discretion, an Eligible Employee who is newly employed by the Company can be a Participant if his or her Eligible Compensation is greater than $250,000, [and he or she is either employed as a Advisory Division Manager or is to be nominated for at least the title of Vice President at the first opportunity following the individual's commencement of employment with the Company.]  *Id.*, at § 3.1(a), (b).

Indeed, since January 1, 2005, less than 15% of Merrill Lynch's total workforce has been eligible to participate in the WealthBuilder Plan each calendar year, and the average compensation of the participants in the plan has been more than double that of all Merrill Lynch employees. Waller Decl., ¶ 6.

Thus, as a matter of law, the WealthBuilder Plan is a top hat plan under Title 1 of ERISA because it is *unfunded*, and it exists "primarily to provide benefits to a select group of management or highly compensated employees."  The Plan is therefore exempt from the fiduciary, vesting, funding, and participation provisions of ERISA.  Accordingly, to the extent Plaintiffs' Fifth Cause of Action for Violation of ERISA is based on the WealthBuilder Plan violating ERISA's minimum vesting standards, Defendants are entitled to judgment in their favor.

///

///

**MERRILL LYNCH DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS OR, IN THE ALTERNATIVE, SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT**

1  IV.     **CONCLUSION**

2          For all the foregoing reasons, Defendants respectfully request that this Motion be granted

3  and that judgment be entered in their favor on Plaintiffs' Complaint and each and every purported

4  cause of action alleged therein.

5

6  DATED:  May 28, 2010                     **MCGUIREWOODS LLP**

7

8                                           By:  _____/s/ Matthew C. Kane_____

9                                                Matthew C. Kane
                                                 Bethany A. Pelliconi

10                                               Sylvia J. Kim
                                            Attorneys for Defendants

11                                          MERRILL LYNCH & CO., INC. and
                                            MERRILL, LYNCH, PIERCE, FENNER &

12                                          SMITH, INC.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MERRILL LYNCH DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS OR, IN THE
ALTERNATIVE, SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT**