# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

----------------------------------------

IN RE MERRILL LYNCH & CO., INC.        :    Master File No.
SECURITIES, DERIVATIVE AND ERISA       :    07-cv-9633 (JSR)(DFE)
LITIGATION                             :
                                       :
                                       :
                                       :
This Document Relates To:              :
ERISA Action, 07-cv-10268 (JSR)(DFE)   :
                                       :
                                       :

----------------------------------------

```
┌─────────────────────────────────┐
│ USDC SDNY                        │
│ DOCUMENT                         │
│ ELECTRONICALLY FILED             │
│ DOC #:                           │
│ DATE FILED:  8-24-09             │
└─────────────────────────────────┘
```

### ORDER AND FINAL JUDGMENT

This is a case brought under the Employment Retirement Income Security Act of 1974,

as amended, 29 U.S.C. § 1001 *et seq.* ("ERISA"), claiming breach of fiduciary duty. Named

Plaintiffs Carl Esposito, Barbara Boland, Alan Maltzman, and Mary Gidaro filed a Consolidated

Supplemental Complaint For Violations of the Employee Retirement Income Security Act (the

"Complaint") (Dkt. No. 64) on September 23, 2008. The Stipulation and Agreement of

Settlement ERISA Action, dated February 27, 2009 ("Settlement Stipulation"), a copy of which

is attached hereto as Exhibit 1, was submitted to the Court on February 27, 2009. Before the

Court are: (1) Plaintiffs' Motion For Final Approval of Class Action Settlement and Plan of

Allocation ("Final Approval Motion"); and (2) Plaintiffs' Motion for Award of Attorneys' Fees,

Expenses, and Case Contribution Awards ("Fee Motion").[1]

---

[1] All capitalized terms used in this Order and Final Judgment and not defined herein shall have
the meanings assigned to them in the Settlement Stipulation.

1

On March 17, 2009, the Court entered its Order Preliminarily Approving Settlement, Preliminarily Certifying Settlement Class, Approving Notice Plan, and Setting Fairness Hearing Date ("Preliminary Approval Order"). ("Dkt. No. 91). The Court has received the declaration attesting to the mailing of the Notice and publication of the Publication Notice in accordance with the Preliminary Approval Order. *See* Declaration of Jennifer M. Keough re: Notice Dissemination and Publication ("Keough Decl."), attached as Exhibit A to the Joint Declaration of Lynn L. Sarko and Marc I. Machiz in Support of Motion for Final Approval of Class Action Settlement and Plan of Allocation and Motion for Award of Attorneys' Fees, Expenses, and Case Contribution Awards ("Joint Decl."). A hearing was held on July 27, 2009 to: (i) determine whether to grant the Final Approval Motion; (ii) determine whether to grant the Fee Motion; and (iii) rule upon such other matters as the Court might deem appropriate.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED AS FOLLOWS:

1.   The Court has jurisdiction over the subject matter of this action, all members of the Class, and all Settling Defendants pursuant to 29 U.S.C. § 1132(e).

2.   In accordance with Federal Rule of Civil Procedure 23 and the requirements of due process, the Class has been given proper and adequate notice of the Settlement, the Fairness Hearing, and the Plan of Allocation, such notice having been carried out in accordance with the Preliminary Approval Order. The Notice, Publication Notice and notice methodology implemented pursuant to the Settlement Stipulation and the Court's Preliminary Approval Order (a) were appropriate and reasonable and constituted due, adequate, and sufficient notice to all persons entitled to notice; and (b) met all applicable requirements of the Federal Rules of Civil Procedure and any other applicable law.

EXHIBIT B

3.   The Settlement was negotiated at arm's-length by experienced counsel who were fully informed of the facts and circumstances of the action and of the strengths and weaknesses of their respective positions.  The Settlement was reached after the Parties had fully briefed motions to dismiss and engaged in extensive negotiations.  The parties exchanged information during the settlement negotiations, and have engaged in confirmatory discovery.  Co-Lead Counsel and Defendants' Counsel are therefore well positioned to evaluate the benefits of the Settlement, taking into account the expense, risk, and uncertainty of protracted litigation over numerous questions of fact and law.

4.   The Court finds that the requirements of the United States Constitution, the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Southern District of New York, and any other applicable laws have been met as to the "Class" defined below, in that:

        a.   The Class is cohesive and well defined;

        b.   The members of the Class are ascertainable from records kept with respect to the Plans, and the members of the Class are so numerous that their joinder before the Court would be impracticable;

        c.   Based on allegations in the Complaint, the Court preliminarily finds that there are one or more questions of fact and/or law common to the Class;

        d.   Based on allegations in the Complaint that the Defendants engaged in misconduct affecting members of the Class in a uniform manner, the Court finds that the claims of the Named Plaintiffs are typical of the claims of the Class;

EXHIBIT B

    e.   The Named Plaintiffs will fairly and adequately protect the interests of the Class in that: (i) the interests of Named Plaintiffs and the nature of their alleged claims are consistent with those of the members of the Class; (ii) there appear to be no conflicts between or among Named Plaintiffs and the Class; and (iii) Named Plaintiffs and the members of the Class are represented by qualified, reputable counsel who are experienced in preparing and prosecuting large, complicated ERISA class actions;

    f.   The prosecution of separate actions by individual members of the Class would create a risk of (i) inconsistent or varying adjudications as to individual Class members that would establish incompatible standards of conduct for the parties opposing the claims asserted in the ERISA Action or (ii) adjudications as to individual Class members that would, as a practical matter, be dispositive of the interests of the other Class members not parties to the adjudications, or substantially impair or impede the ability of those persons to protect their interests; and

    g.   Based on allegations in the Complaint that Defendants have acted or refused to act on grounds generally applicable to the Class, final injunctive, declaratory, or other equitable relief is appropriate with respect to the Class as a whole.

5.   Based on the findings set out in paragraph 4 above, the Court certifies the following class (the "Class") for settlement purposes under Fed. R. Civ. P. 23(b)(1) and (2):

> (a) All current and former participants and beneficiaries of any of the Plans whose individual Plan account(s) included investments in Merrill Lynch stock at any time between September 30, 2006 and December 31, 2008, inclusive <u>and</u> (b) as to each Person within the scope of

subsection (a) of this Paragraph, his, her or its beneficiaries, alternate payees (including spouses of deceased Persons who were participants of one or more of the Plans), Representatives and Successors-In-Interest, provided, however, that the Class shall not include any Defendant or any of their Immediate Family, beneficiaries, alternate payees (including spouses of deceased Persons who were Plan participants), Representatives or Successors-In-Interest, except for spouses and immediate family members who themselves are or were participants in any of the Plans, who shall be considered members of the Class with respect to their own Plan accounts.

6.  The Court confirms the appointment of Named Plaintiffs as class representatives for the Class, and Keller Rohrback L.L.P. and Cohen Milstein Sellers & Toll PLLC as Co-Lead Counsel for the Class.

7.  The Settlement warrants final approval pursuant to Federal Rule of Civil Procedure 23(e)(1)(A) and (C) because it is fair, adequate, and reasonable to the Class and others whom it affects based upon (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the Class to the Settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining a class action through the trial; (7) the ability of the Defendants to withstand a greater judgment; (8) the range of reasonableness of the Settlement Fund in light of the best possible recovery; and (9) the range of reasonableness of the Settlement Fund to a possible recovery in light of all the attendant risks of litigation.

8.  The Settlement was intended by the parties thereto to be a contemporaneous exchange of value, and in fact constitutes such a contemporaneous exchange.

9.  The Final Approval Motion is GRANTED, and the Settlement hereby is APPROVED as fair, reasonable, adequate to members of the Class, and in the public interest. The settling parties are directed to consummate the Settlement in accordance with the terms of the Settlement Stipulation.

EXHIBIT B

10. The Plan of Allocation, a copy of which is attached hereto as Exhibit 2, is hereby APPROVED as fair, adequate, and reasonable. Upon or after the Effective Date of the Settlement, the Custodian shall, at the direction of Co-Lead Counsel, disburse the Net Settlement Fund to the Plans for distribution by the Plans' trustee(s) in accordance with the Plan of Allocation, subject to any amounts withheld by the Custodian for the payment of taxes and related expenses as authorized in the Settlement Stipulation, and attorneys fees and expenses and case contribution awards to Named Plaintiffs as authorized by this Order. The Court finds payments and distributions made in accordance with such Plan of Allocation to be "restorative payments" as defined in IRS Revenue Ruling 2002-45. Any modification or change in the Plan of Allocation that may hereafter be approved shall in no way disturb or affect this Judgment and shall be considered separate from this Judgment.

11. A case contribution award of $ _5,000._ payable from the Gross Settlement Fund is awarded to each Named Plaintiff. Such award may be distributed to each Named Plaintiff by the Custodian upon the Effective Date of the Settlement.

12. Co-Lead Counsel are hereby awarded attorneys' fees of $ _18,750,000._ and expenses of $ _372,312.99_ . Such award may be distributed to Co-Lead Counsel by the Custodian _only after all other payments and distributions_ ~~upon the Effective Date of the Settlement~~ _of any kind have been made._

13. The Court retains jurisdiction over this action and the Parties, the Plans, and members of the Class for all matters relating to this action, including (without limitation) the administration, interpretation, effectuation or enforcement of the Settlement Stipulation and this Order and Final Judgment, and including any application for fees and expenses incurred in connection with administering and distributing the Settlement proceeds to members of the Class.

6

14. Without further order of the Court, the Parties may agree in writing to reasonable extensions of time to carry out any of the provisions of the Settlement Stipulation.

15. Named Plaintiffs and all members of the Class, on behalf of themselves, and the Class, and their personal representatives, heirs, executors, administrators, trustees, successors, and assigns, with respect to each and every Settled Claim, fully, finally and forever release, relinquish and discharge, and are forever enjoined from prosecuting, any Settled Claim against any of the Released Parties, provided that, no Released Party shall seek any remedy for violation of the foregoing injunction by any Class Member other than a Named Plaintiff until at least thirty (30) days after having provided such Class Member with written notice of such injunction and demand to desist from any conduct in violation thereof.

16. The Defendants fully, finally, and forever release, relinquish, and discharge, and are forever enjoined from prosecuting, the Settled Defendants' Claims against Named Plaintiffs, all members of the Class, and their respective counsel.

17. All counts asserted in the ERISA Action are DISMISSED WITH PREJUDICE, without further order of the Court, pursuant to the terms of the Settlement Stipulation.

18. In the event that the Settlement is terminated in accordance with the terms of the Settlement Stipulation, this Judgment shall be null and void and shall be vacated nunc pro tunc, and paragraph 8.5 of the Settlement Stipulation shall govern the rights of the Parties thereto.

SO ORDERED this 21ˢᵗ day of _August_ , 2009.

_____

HONORABLE JED S. RAKOFF
UNITED STATES DISTRICT JUDGE

7

# EXHIBIT 1

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------x
:
IN RE MERRILL LYNCH & CO., INC.        :     Master File No.
SECURITIES, DERIVATIVE & ERISA         :     07-cv-9633 (JSR)(DFE)
LITIGATION                             :
:
:
:
This Document Relates To:              :
ERISA Action, 07-cv-10268 (JSR)(DFE)   :
:
------------------------------------------------x

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #:
> DATE FILED: 3-18-09

## STIPULATION AND AGREEMENT OF SETTLEMENT
### ERISA ACTION

This Stipulation and Agreement of Settlement – ERISA Action (the "*Stipulation*") is

submitted in the above-captioned *In re Merrill Lynch & Co., Inc. Securities, Derivative and ERISA*

*Litigation*, Master File No. 07-cv-9633 (JSR)(DFE), Case No. 07-cv-10268 (JSR)(DFE)

(hereinafter, the "*ERISA Action*"), pursuant to Rule 23 of the Federal Rules of Civil Procedure.

Subject to the approval of the United States District Court for the Southern District of New York

(the "*Court*"), this *Stipulation* is entered into among named plaintiffs Carl Esposito, Barbara

Boland, Alan Maltzman, and Mary Gidaro (together, "*Named Plaintiffs*") on behalf of themselves

and the *Class* (as defined in Paragraph 1.3), on the one hand, and Merrill Lynch & Co., Inc.

("*Merrill Lynch*"), on the other.

A separate consolidated class action brought under the federal securities laws coordinated

in the above-captioned *In re Merrill Lynch & Co., Inc. Securities, Derivative and ERISA Litigation*,

Master File No. 07-cv-9633 (JSR)(DFE), identified as *In re Merrill Lynch & Co., Inc. Securities*

*Action*, 07-cv-9633 (JSR)(DFE) (the "*Securities Action*"), is also pending in this *Court*. The

*Securities Action* is being settled contemporaneously herewith pursuant to a separate stipulation of settlement. It is a condition to the *Settlement* (as defined in Paragraph 1.43) that the *ERISA Action* and the *Securities Action* be settled contemporaneously and that the *Settlement* and the settlement of the *Securities Action* be approved by the *Court*.

WHEREAS:

A.     Beginning on November 9, 2007, several putative class actions were filed in the *Court* against *Merrill Lynch* and various other defendants alleging violations of the Employee Retirement Income Security Act ("ERISA"). On March 12, 2008, the *Court* consolidated these actions into the *ERISA Action*, and appointed Keller Rohrback, L.L.P., and Cohen, Milstein, Sellers & Toll, PLLC[1] as interim co-lead counsel (*"Co-Lead Counsel"*) to manage the prosecution of the *ERISA Action* on behalf of the putative class.

B.     *Named Plaintiffs* filed a Consolidated Amended Complaint for Violations of the Employee Retirement Income Security Act on May 21, 2008, and a Consolidated Supplemental Complaint for Violations of the Employee Retirement Income Security Act (the *"Complaint"*) on September 23, 2008. The *Complaint* asserts, on behalf of all persons, other than *Defendants*, who were participants in or beneficiaries of the Merrill Lynch & Co., Inc. 401(k) Savings and Investment Plan, the Merrill Lynch & Co., Inc. Retirement Accumulation Plan, or the Merrill Lynch & Co., Inc. Employee Stock Ownership Plan at any time between September 25, 2006 to the present, and whose accounts included investments in *Merrill Lynch* stock, claims under Sections 502(a)(2) and 502(a)(3) of ERISA, including claims for breaches of the fiduciary duties of prudence and loyalty, failure to monitor and co-fiduciary liability.

C.     *Defendants* deny any wrongdoing whatsoever, and this *Stipulation* shall in no event

---

[1] Known at the time of appointment as Cohen, Milstein, Hausfeld & Toll P.L.L.C.

EXHIBIT B (EXHIBIT 1)

be construed or deemed to be evidence of or an admission or concession, on the part of any *Defendant* with respect to any claim of any fault or liability or wrongdoing or damage whatsoever, or any infirmity in the defenses that the *Defendants* have asserted or would assert.

D.    The parties to this *Stipulation* recognize that the *ERISA Action* has been filed by the *Named Plaintiffs* and defended by the *Defendants* in good faith, that the *ERISA Action* is being voluntarily settled upon advice of counsel, and that the terms of the *Settlement* are fair, reasonable and adequate. This *Stipulation* shall not be construed or deemed to be a concession by *Named Plaintiffs* or any *Class Member* of any infirmity in the claims asserted in the *ERISA Action* or any other action, or deemed to be evidence of any such infirmity.

E.    *Co-Lead Counsel* have conducted investigations relating to the claims and the underlying events and transactions alleged in the *ERISA Action*. *Co-Lead Counsel* have analyzed the evidence adduced in connection with the *ERISA Action,* including during confirmatory discovery, and have researched the applicable law with respect to the claims of the *Named Plaintiffs* and the *Class* against the *Defendants* and the potential defenses thereto.

F.    *Named Plaintiffs* in the *ERISA Action,* through *Co-Lead Counsel,* conducted personal and telephonic discussions and arm's-length negotiations with *Defendants'* counsel with respect to a compromise and settlement of the *ERISA Action.* These discussions and negotiations resulted in the execution of a Settlement Term Sheet on January 7, 2009 (the *"Term Sheet"*), which set forth the principal terms of the settlement of the *ERISA Action*, subject to confirmatory discovery to assess the adequacy and reasonableness of such settlement.

G.    *Merrill Lynch* considers that, in order for it to achieve an end to litigation, it is a necessary condition to the settlement of the *ERISA Action* that the *Court* contemporaneously approve the separate settlement reached with respect to the *Securities Action.*

3

H.    Based upon their investigation as well as informal and confirmatory discovery, *Named Plaintiffs* and *Co-Lead Counsel* have concluded that the terms and conditions of this *Stipulation,* which include the terms contained in the *Term Sheet* together with supplementary terms and conditions set forth herein, are fair, reasonable and adequate to *Named Plaintiffs* and the *Class,* and are in their best interests, and *Named Plaintiffs* have agreed to settle the claims raised in the *ERISA Action* pursuant to the terms and provisions of this *Stipulation,* after considering (a) the substantial benefits that the members of the *Class* will receive from settlement of the *ERISA Action,* (b) the attendant risks of litigation, and (c) the desirability of permitting the *Settlement* to be consummated as provided by the terms of this *Stipulation.*

NOW THEREFORE, without any admission or concession on the part of *Named Plaintiffs* of any lack of merit of the *ERISA Action* whatsoever, and without any admission or concession of any liability or wrongdoing or lack of merit in the defenses whatsoever by *Defendants,* it is hereby STIPULATED AND AGREED, by and between the parties to this *Stipulation,* through their respective counsel, subject to approval of the *Court* pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, in consideration of the benefits flowing to the parties hereto from the *Settlement* herein set forth, that all *Settled Claims* (as defined herein), as against the *Released Parties* (as defined herein), and all *Settled Defendants' Claims* (as defined herein) shall be compromised, settled, released and dismissed with prejudice, upon and subject to the following terms and conditions:

1.    Definitions.

As used in this *Stipulation,* italicized and capitalized terms and phrases not otherwise defined herein have the meanings provided below:

4

1.1    *"Agreement Execution Date"* means the date on which this *Stipulation* is fully executed, as provided in Paragraph 10.19 below.

1.2    *"Alternative Judgment"* has the meaning set forth in Paragraph 8.1.5.

1.3    *"Class"* means, for the purposes of this *Settlement* only, a non-opt-out class consisting of (a) all current and former participants and beneficiaries of any of the *Plans* whose individual *Plan* account(s) included investments in *Merrill Lynch* stock at any time during the *Class Period* and (b) as to each *Person* within the scope of subsection (a) of this Paragraph 1.3, his, her or its beneficiaries, alternate payees (including spouses of deceased *Persons* who were participants of one or more of the Plans), *Representatives* and *Successors-In-Interest*, provided, however, that the *Class* shall not include any *Defendant* or any of their *Immediate Family*, beneficiaries, alternate payees (including spouses of deceased *Persons* who were *Plan* participants), *Representatives* or *Successors-In-Interest*, except for spouses and immediate family members who themselves are or were participants in any of the *Plans*, who shall be considered members of the *Class* with respect to their own *Plan* accounts.

1.4    *"Class Member"* means a member of the *Class*.

1.5    *"Class Notice"* means the forms of notice appended as Exhibits 1 and 2 to the form of *Order for Notice and Hearing*, attached hereto as Exhibit A.

1.6    *"Class Period"* means, for the purposes of this *Settlement* only, the period of time between September 30, 2006 and December 31, 2008, inclusive.

1.7    *"Co-Lead Counsel"* means Keller Rohrback L.L.P. and Cohen Milstein Sellers & Toll, PLLC.

1.8    *"Complaint"* means the Consolidated Supplemental Complaint for Violations of the Employee Retirement Income Security Act in the *ERISA Action*, filed September 23, 2008.

5

1.9    *"Court"* means the United States District Court for the Southern District of New York.

1.10    *"Custodian"* means (a) two or more individuals, one designated in writing by each *Co-Lead Counsel*, who execute an undertaking to be bound by the provisions of this *Stipulation* pertaining to the duties of the *Custodian*, or (b) a federally-insured financial institution proposed by *Co-Lead Counsel* and acceptable to *Defendants' Counsel*. Either *Co-Lead Counsel* may change its designation at any time (and shall do so in the event the designee ceases to be a member of, partner in, or employee of, said *Co-Lead Counsel*) by executing a written instrument reflecting such change and delivering it to the other *Co-Lead Counsel*, with notice of such change provided to *Defendants' Counsel*.

1.11    *"Defendants"* means (a) *Merrill Lynch* and (b) all persons named as defendants in the *Complaint*, whether named personally or fictitiously, who execute and deliver the *Individual Defendants Letter Agreement*.

1.12    *"Defendants' Counsel"* means the law firm of Skadden, Arps, Slate, Meagher & Flom LLP, and *Individual Defendants' Counsel*.

1.13    *"Derivative Actions"* means all actions consolidated into docket number 07-cv-9696 by order of the *Court* dated March 12, 2008.

1.14    *"Effective Date"* means the date, established pursuant to Paragraph 8.1, on which all of the conditions to settlement set forth in Paragraph 8.1 of this *Stipulation* have been fully satisfied or waived.

1.15    *"Fairness Hearing"* means the hearing to be held by the *Court* to determine, among other things, whether to grant final approval to the *Settlement*, as contemplated by the form of *Order for Notice and Hearing* attached hereto as Exhibit A.

6

EXHIBIT B (EXHIBIT 1)

1.16   "*Final*" or "*Finality*," with respect to any *Judgment* or *Alternative Judgment* (both as defined herein) or any other order or judgment of a court of competent jurisdiction, means: (a) if no appeal is filed, the expiration date of the time provided by the corresponding rules of the applicable court or legislation for filing or noticing of any appeal therefrom; or (b) if there is an appeal therefrom, the date of (i) final dismissal of such appeal, or the final dismissal of any proceeding on certiorari or otherwise to review the *Judgment, Alternative Judgment*, judgment or order; or (ii) the date of final affirmance on an appeal thereof, the expiration of the time to file a petition for a writ of certiorari or other form of review, or the denial of a writ of certiorari or other form of review thereof, and, if certiorari or other form of review is granted, the date of final affirmance thereof following review pursuant to that grant. Any proceeding or order, or any appeal or petition for a writ of certiorari or other form of review pertaining solely to (i) any application for attorneys' fees, costs or expenses, and/or (ii) the *Plan of Allocation*, shall not in any way delay or preclude the *Judgment* or *Alternative Judgment* from becoming *Final*.

1.17   "*Gross Settlement Fund*" shall have the meaning set forth in Paragraph 3.2.

1.18   "*Immediate Family*" means parents, grandparents, children and grandchildren.

1.19   "*Independent Fiduciary*" means a *Person* who may, at the election of *Merrill Lynch*, be appointed by the appropriate named fiduciary of the *Plan* or designated by an amendment to the applicable governing *Plan* document, whose fees and expenses (including the cost of counsel and other advisors) shall be paid by *Merrill Lynch* to consider whether to approve and authorize in writing the *Settlement* in accordance with Department of Labor Prohibited Transaction Class Exemption 2003-39.

1.20   "*Individual Defendants*" means all *Defendants* other than *Merrill Lynch*.

7

1.21    *"Individual Defendants' Counsel"* means the law firms of Shearman & Sterling
LLP and Simpson Thacher & Bartlett LLP.

1.22    *"Individual Defendants Letter Agreement" or "Letter Agreement"* means a letter
agreement, in a form satisfactory to *Co-Lead Counsel* and *Individual Defendants' Counsel*, to be
executed within thirty (30) days of the date the *Court* grants preliminary approval to the *Settlement*,
between, on the one hand, *Named Plaintiffs* on behalf of themselves and the *Class*, and on the other,
*Individual Defendants*, through counsel for the foregoing, in which the *Individual Defendants*
agree to be bound by the provisions of Paragraphs 1.49, 2.3, 5.1, 8.5, 9.1, 10.2, 10.3 and 10.14 of
this *Stipulation*; acknowledge that they will be identified as *"Defendants"* (and not by name) in the
*Class Notice*; consent that *Co-Lead Counsel* may identify them by name to any *Class Member*
upon request, provided, however, that prior to disclosure, *Plaintiffs' Counsel* has obtained written
agreement from such *Class Member* to be bound by the terms of confidentiality agreements and
orders that are binding on *Named Plaintiffs* and *Co-Lead Counsel*; and consent that they will not be
included in the *Class* nor will they participate in any recovery pursuant to the *Settlement,* and in
which *Named Plaintiffs*, on behalf of themselves and the *Class*, agree to be bound by Paragraphs
1.49, 2.2, 3.6, 8.5, 9.1, 10.2, 10.3, 10.14 of this *Stipulation*.

1.23    *"Judgment"* shall mean the Judgment contemplated by Paragraph 7.1.  A proposed
form of the *Judgment* is attached hereto as Exhibit B.

1.24    *"Merrill Lynch"* means Merrill Lynch & Co., Inc.

1.25    *"Named Plaintiffs"* means Plaintiffs Carl Esposito, Barbara Boland, Alan Maltzman,
and Mary Gidaro.

1.26    *"Net Settlement Fund"* has the meaning defined in Paragraph 3.3 hereof.

1.27.  "*Notice*" means the "Notice of Proposed Settlement With Defendants, Motions for Attorneys' Fees and Reimbursement of Expenses and Fairness Hearing", which is to be sent to members of the *Class* substantially in the form attached hereto as Exhibit 1 to Exhibit A.

1.28  "*Order for Notice and Hearing*" means the order preliminarily approving the *Settlement* and directing notice thereof to the *Class* substantially in the form attached hereto as Exhibit A.

1.29  "*Parties*" means the *Plaintiffs* and the *Defendants*.

1.30  "*Person*" means an individual, partnership, corporation, governmental entity or any other form of entity or organization.

1.31  "*Plaintiffs*" means *Named Plaintiffs* and each member of the *Class*.

1.32  "*Plaintiffs' Counsel*" means *Co-Lead Counsel* and any other counsel representing *Plaintiffs* and *Class Members*.

1.33  "*Plans*" shall mean the Merrill Lynch & Co., Inc. 401(k) Savings and Investment Plan; the Merrill Lynch & Co., Inc. Retirement Accumulation Plan; and the Merrill Lynch & Co., Inc. Employee Stock Ownership Plan, together with their *Predecessors* and *Successors-in-Interest*, and any trust created under such plans.

1.34  "*Plan of Allocation*" means a plan of allocation of the *Net Settlement Fund* as proposed by *Co-Lead Counsel* and approved by the *Court*.

1.35  "*Plan of Allocation Implementation Expenses*" means all expenses of implementing the *Plan of Allocation*, including the costs of gathering required data, performing required calculations and establishment of accounts in the *Plans* to receive allocations made with respect to former participants. *Plan of Allocation Implementation Expenses* will be paid by (or reimbursed

from) the *Gross Settlement Fund* to the extent of the first $350,000 thereof, with any excess above such amount paid promptly by *Merill Lynch*.

1.36   *"Predecessor"* means as to any *Person* (the "Subject Person"), another *Person* as to whom the Subject Person is a *Successor in Interest.*

1.37   *"Publication Notice"* means the summary notice of proposed *Settlement* and hearing for publication substantially in the form attached as Exhibit 2 to Exhibit A.

1.38   *"Released Parties"* means any and all of the *Defendants*, every *Person* who, at any time during the *Class Period*, was a director, officer, employee or agent of *Merrill Lynch* or a trustee or fiduciary of any of the *Plans*, together with, for each of the foregoing, any *Predecessors*, *Successors-In-Interest*, present and former *Representatives*, direct or indirect parents and subsidiaries, affiliates, insurers, co-insurers, re-insurers, consultants, administrators, employee benefit plans, investment advisors, investment bankers, underwriters, and any *Person* that controls, is controlled by, or is under common control with any of the foregoing.

1.39   *"Representatives"* means attorneys, agents, directors, officers, and employees.

1.40   *"Securities Action"* means all actions consolidated into docket number 07-cv-9633 by order of the *Court* dated March 12, 2008.

1.41   *"Settled Claims"* means any and all claims, debts, demands, rights or causes of action, suits, matters, and issues or liabilities whatsoever (including, but not limited to, any claims for damages, interest, attorneys' fees, expert or consulting fees, and any other costs, expenses or liability whatsoever), whether based on federal, state, local, statutory or common law or any other law, rule or regulation, whether fixed or contingent, accrued or unaccrued, liquidated or unliquidated, at law or in equity, matured or unmatured, whether class or individual in nature, including both known claims and *Unknown Claims* (as defined herein), against any of the *Released*

10

*Parties* (i) that have been asserted in the *ERISA Action*, or (ii) that could have been asserted in any

forum by any *Class Member* or their successors and assigns which arise out of or are based upon

the allegations, transactions, facts, matters or occurrences, representations or omissions out of

which the claims asserted in the *ERISA Action* arise.  Notwithstanding the foregoing, "*Settled*

*Claims*" does not include any claims, rights or causes of action or liabilities whatsoever (i) related

to the enforcement of the *Settlement*, including, without limitation, any of the terms of this

*Stipulation* or orders or judgments issued by the courts in connection with the *Settlement* or

confidentiality obligations; (ii) asserted in the *Securities Action* and not the subject of the

settlement of the *ERISA Action*; or (iii) under ERISA Section 502(a)(1)(B) for individual or vested

benefits brought by an individual *Plan* participant or beneficiary where such claims are unrelated

to any claim, matter or cause of action that has been asserted in the *ERISA Action* or that could

have been asserted in the *ERISA Action* or arising out of or based upon the allegations, transactions,

facts, matters or occurrences, representations or omissions out of which the claims asserted in the

*ERISA Action* arise.

     1.42   "*Settled Defendants' Claims*" means any and all claims, rights or causes of action or

liabilities whatsoever, whether based on federal, state, local, statutory or common law or any other

law, rule or regulation, including both known claims and *Unknown Claims*, that have been or could

have been asserted in the *ERISA Action* or any forum by the *Defendants* or any of them or the

successors and assigns of any of them against any of the *Named Plaintiffs*, any *Class Member* or

their attorneys, which arise out of or relate in any way to the institution, prosecution, or settlement

of the *ERISA Action*.  *Settled Defendants' Claims* does not include all claims, rights or causes of

action or liabilities whatsoever related to the enforcement of the *Settlement*, including, without

11

limitation, any of the terms of this *Stipulation* or orders or judgments issued by the courts in connection with the *Settlement* or confidentiality obligations.

    1.43   *"Settlement"* means the settlement of the *ERISA Action* contemplated by this *Stipulation.*

    1.44   *"Settlement Amount"* means $75,000,000.

    1.45   *"Settlement Fund"* has the meaning set forth in Paragraph 3.1.

    1.46   *"Stipulation"* means this Stipulation and Agreement of Settlement – ERISA Action.

    1.47   *"Successor-In-Interest"* means a *Person*'s estate, legal representatives, heirs, successors or assigns, including successors or assigns that result from corporate mergers or other structural changes.

    1.48   *"Taxes"* means (i) any and all applicable taxes, duties and similar charges imposed by a government authority (including any estimated taxes, interest or penalties) arising in any jurisdiction, if any, (A) with respect to the income or gains earned by or in respect of the *Gross Settlement Fund,* including, without limitation, any taxes that may be imposed upon *Defendants* or their counsel with respect to any income or gains earned by or in respect of the *Gross Settlement Fund* for any period during which it does not qualify as a Qualified Settlement Fund for federal or state income tax purposes; or (B) by way of withholding as required by applicable law on any distribution by the *Custodian* of any portion of the *Gross Settlement Fund* to any persons entitled thereto pursuant to this *Stipulation;* and (ii) any and all expenses, liabilities and costs incurred in connection with the taxation of the *Gross Settlement Fund* (including without limitation, expenses of tax attorneys and accountants). For the purposes of clause (i)(A) of this paragraph, taxes imposed on *Defendants* shall include amounts equivalent to taxes that would be payable by *Defendants* but for the existence of relief from taxes by virtue of loss carryforwards or other tax

attributes, determined by *Defendants*, acting reasonably, and accepted by the *Custodian,* acting reasonably.

    1.49 *"Unknown Claims"* means any and all *Settled Claims* which any of the *Named Plaintiffs* or *Class Members* does not know or suspect to exist in his, her or its favor as of the *Effective Date* and any *Settled Defendants' Claims* which any *Defendant* does not know or suspect to exist in his, her or its favor as of the *Effective Date*, which if known by him, her or it might have affected his, her or its decision(s) with respect to the *Settlement*. With respect to any and all *Settled Claims* and *Settled Defendants' Claims*, the parties hereto, and the *Individual Defendants* in their *Letter Agreement,* stipulate and agree that upon the *Effective Date*, the *Named Plaintiffs* and the *Defendants* shall expressly waive, and each *Class Member* shall be deemed to have waived, and by operation of the *Judgment* shall have expressly waived, any and all provisions, rights and benefits conferred by any law of any state of the United States, or principle of common law or otherwise, which is similar, comparable, or equivalent to California Civil Code § 1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

*Named Plaintiffs* and *Defendants* (in the case of *Individual Defendants* by the execution of their *Letter Agreement)* acknowledge, and *Class Members* by operation of law shall be deemed to have acknowledged, that the inclusion of *"Unknown Claims"* in the definition of *Settled Claims* and *Settled Defendants' Claims* was separately bargained for and was a key element of the Settlement.

  2. **SCOPE AND EFFECT OF SETTLEMENT**

    2.1   The obligations incurred pursuant to this *Stipulation* shall be in full and final disposition of the *ERISA Action* as part of the *Settlement* and any and all *Settled Claims* as against all *Released Parties* and any and all *Settled Defendants' Claims*.

EXHIBIT B (EXHIBIT 1)

2.2     Upon the *Effective Date* of the *Settlement*, *Named Plaintiffs* and all *Class Members* on behalf of themselves, their personal representatives, heirs, executors, administrators, trustees, successors and assigns, with respect to each and every *Settled Claim*, release and forever discharge, and are forever enjoined from prosecuting, any *Settled Claim* against any of the *Released Parties*, and shall not institute, continue, maintain or assert, either directly or indirectly, whether in the United States or elsewhere, on their own behalf or on behalf of any class or any other person or any of the *Plans*, any action, suit, cause of action, claim or demand against any *Released Party* or any other *Person* who may claim any form of contribution or indemnity from any *Released Party* in respect of any *Settled Claim* or any matter related thereto, at any time on or after the *Effective Date*. With respect to the injunction provided for in this Paragraph 2.2, no *Released Party* shall seek any remedy for violation thereof by any *Class Member* other than a *Named Plaintiff* until at least thirty (30) days after providing such *Class Member* with written notice of such injunction and demand to desist from any conduct in violation thereof.

2.3     Upon the *Effective Date* of the *Settlement*, *Merrill Lynch*, on behalf of itself, its trustees, successors and assigns, releases and forever discharges each and every one of the *Settled Defendants' Claims* against *Named Plaintiffs*, all *Class Members* and their respective counsel. Likewise, *Individual Defendants* in their *Letter Agreement* have agreed to release the *Settled Defendants Claims*, as a condition of the *Settlement*.

2.4     Amounts paid under the *Settlement* shall not constitute an offset or credit with respect to amounts to be paid in settlement of the *Securities Action*, nor shall amounts paid in settlement of the *Securities Action* constitute an offset or credit with respect to amounts payable in the *Settlement*.

14

3.  **SETTLEMENT CONSIDERATION**

3.1  In consideration for the release and discharge provided for in Paragraph 2.2 hereof, on or before the tenth (10th) day following the date the *Stipulation* is fully executed, *Merrill Lynch* shall deliver by wire transfer $75,000,000 into an interest-bearing escrow account established by *Co-Lead Counsel* for the *Settlement Amount* (the "*Settlement Fund*").

3.2  The *Settlement Fund*, together with all interest earned from the date of preliminary approval of the *Settlement*, shall constitute the *Gross Settlement Fund*.

3.3  The *Gross Settlement Fund* shall be used to pay (i) all costs of *Notice, Publication Notice*, and administration costs referred to in Paragraph 4.2 hereof; and (ii) the attorneys' fee and expense award referred to in Paragraph 5.1 hereof, and the *Named Plaintiff* case contribution awards, if any, referred to in Paragraph 5.1 hereof. The balance of the *Gross Settlement Fund* (inclusive of interest earned) after the matters described in clauses (i) and (ii) of this Paragraph, and after the payment of any *Taxes* (as defined herein) shall be the *Net Settlement Fund*.

3.4  At a time following the *Effective Date*, the *Net Settlement Fund* shall be transferred by the *Custodian* to the *Plans*, subject to a plan of allocation (the "*Plan of Allocation*") to be proposed by *Co-Lead Counsel* and approved by the *Court*. All funds held by the *Custodian* shall be deemed to be in the custody of the *Court* held exclusively for the purposes described in Paragraphs 3.3 and 3.4 of this *Stipulation* until such time as the funds shall be distributed to the *Plans* or otherwise disbursed pursuant to this *Stipulation* and/or further order of the *Court*. The *Custodian* shall invest any funds in excess of $250,000 in U.S. Treasury securities, securities issued by United States agencies or fully insured by the FDIC, deposits and certificates of deposit fully insured by the FDIC and backed by the full faith and credit of the U.S. Treasury, and short term debt or commercial paper fully guaranteed by the FDIC under the Temporary Liquidity

15

EXHIBIT B (EXHIBIT 1)

Guaranty Program and backed by the full faith and credit of the U.S. Treasury, and shall collect and reinvest in the *Net Settlement Fund* all earnings accrued thereon. Any funds held by the *Custodian* in an amount of less than $250,000 may be held in a bank account or Certificates of Deposit insured by the Federal Deposit Insurance Corporation ("FDIC") or may be invested as funds in excess of $250,000 are invested. The parties hereto agree that the *Gross Settlement Fund* is intended to be a Qualified Settlement Fund within the meaning of Treasury Regulation § 1.468B-1, and that the *Custodian* as administrator of the Gross Settlement Fund within the meaning of Treasury Regulation § 1.468B-2(k)(3), shall be responsible for filing tax returns and any other tax reporting for or in respect of the *Gross Settlement Fund* and paying from the *Gross Settlement Fund* any *Taxes* owed with respect to the *Gross Settlement Fund*. The parties hereto agree that the *Gross Settlement Fund* shall be treated as a Qualified Settlement Fund from the earliest date possible, and agree to any relation-back election required to treat the *Gross Settlement Fund* as a Qualified Settlement Fund from the earliest date possible. *Merrill Lynch* agrees to provide promptly to the *Custodian* the statement described in Treasury Regulation § 1.468B-3(e).

3.5     All *Taxes* (as defined herein) shall be paid out of the *Gross Settlement Fund*, shall be considered to be a cost of administration of the *Settlement* and shall be timely paid by the *Custodian* without prior order of the *Court*. The *Custodian* shall, to the extent required by law, be obligated to withhold from any distributions to any person entitled thereto pursuant to this *Stipulation* any funds necessary to pay *Taxes* including the establishment of adequate reserves for *Taxes* as well as any amount that may be required to be withheld under Treasury Reg. 1.468B-(1)(2) or otherwise under applicable law in respect of such distributions. *Co-Lead Counsel* shall provide to *Defendants' Counsel* copies of all tax returns filed with respect to the *Gross Settlement Fund* promptly upon the filing thereof, and evidence of the payment of *Taxes* as

16

and when all such payments are made. Further, the *Gross Settlement Fund* shall hold harmless the *Defendants* and their counsel for *Taxes* (including, without limitation, taxes payable by reason of any such indemnification payments).

     3.6   None of the *Defendants*, the *Released Parties* or their respective counsel shall have any responsibility for or liability whatsoever with respect to (i) any act, omission or determination of *Co-Lead Counsel* or the *Custodian*, or any of their respective designees or agents, in connection with the administration of the *Settlement* or otherwise; (ii) the management, investment or distribution of the *Gross Settlement Fund*; (iii) the formulation, design or terms of the *Plan of Allocation*; (iv) the determination, administration, calculation or payment of any claims asserted against the *Gross Settlement Fund*; (v) any losses suffered by, or fluctuations in the value of, the *Gross Settlement Fund*; or (vi) the payment or withholding of any *Taxes*, expenses and/or costs incurred in connection with the taxation of the *Gross Settlement Fund* or the filing of any returns.

    **4.**    **ADMINISTRATION**

    4.1   The *Custodian*, acting solely in its capacity as *Custodian*, shall be subject to the jurisdiction of the *Court*.

    4.2   Following entry of the *Order for Notice and Hearing*, the *Custodian* may pay from the *Gross Settlement Fund*, without further approval from the *Court* or *Defendants*, (a) all reasonable costs and expenses up to the amount of $250,000 associated with identifying and notifying the *Class Members* and effecting mailing of the *Notice* and publication of the *Publication Notice* as ordered by the *Court*, and the administration of the *Settlement*, including without limitation, the actual costs of printing and mailing the *Notice* and publication of the *Publication Notice*, and (b) *Taxes*. Notwithstanding the foregoing, the *Custodian* shall not make

17

any payment pursuant to clause (a) of the immediately preceding sentence that would cause the aggregate payments made under such clause (a) exceed $150,000 without first providing seven days' prior written notice to *Defendants' Counsel* of each such payment; if *Defendants' Counsel* shall object to any such payment, the *Custodian* shall not make the payment without further approval from the *Court*. In the event that the *Settlement* is terminated as provided for herein, the amounts expended pursuant to the first two sentences of this Paragraph 4.2 shall not be returned to the *Persons* who paid the *Settlement Amount*.

4.3    *Merrill Lynch* shall cooperate with *Co-Lead Counsel* to accomplish the *Notice* in accordance with the *Order for Notice and Hearing*. If *Merrill Lynch* is or its designee is the most cost effective provider of notice to the *Class*, the *Custodian* will utilize *Merrill Lynch* or its designee to provide notice unless there is good cause not to do so. If the mailing of *Notice* is to be performed by a third party vendor, *Merrill Lynch* shall cooperate reasonably to provide address information to such vendor in an electronic format accessible by such vendor, to the extent the address information exists in such a format or otherwise can be readily obtained.

4.4    The *Custodian* may rely upon any notice, certificate, instrument, request, paper or other document reasonably believed by it to be genuine and to have been made, sent or signed by an authorized signatory in accordance with this *Stipulation*, and shall not be liable for (and will be indemnified from the *Gross Settlement Fund* and held harmless from and against) any and all claims, actions, damages, costs (including reasonable attorneys' fees) and expenses claimed against or incurred by the *Custodian* for any action taken or omitted by it, consistent with the terms hereof concerning the *Gross Settlement Amount*, in connection with the performance by it of its duties pursuant to the provisions of this *Stipulation* or order of the courts, except for its gross negligence or willful misconduct. If the *Custodian* is uncertain as to its duties hereunder, the

18

*Custodian* may request that *Named Plaintiffs* (and, prior to the *Effective Date, Merrill Lynch*) sign a document which states the action or non-action to be taken by the *Custodian*. In the event the *Settlement* is terminated, as provided for herein, indemnified amounts and expenses incurred by the *Custodian* in connection with this paragraph shall not be returned to the *Persons* who paid the *Settlement Amount*.

    4.5   *Plan of Allocation Implementation Expenses* shall be borne as described in Paragraph 1.35.

### 5.    ATTORNEYS' FEES AND EXPENSES

    5.1   *Co-Lead Counsel* will apply to the *Court* for an award of attorneys' fees not to exceed 27.5% of the *Gross Settlement Fund*, and reimbursement of expenses payable from the *Gross Settlement Fund*, and shall further provide to the *Court*, as part of the motion for approval of the *Settlement*, all necessary information required by the *Court* concerning the total award of attorneys' fees and reimbursement of expenses to be payable from the *Gross Settlement Fund*. Such application shall be made prior to the deadline for objections to the *Settlement* and in accordance with such schedule as the *Court* may establish. *Co-Lead Counsel* may also apply to the *Court* for case contribution awards to *Named Plaintiffs* in an amount not to exceed $5,000 per *Named Plaintiff. Defendants* will take no position with respect to any such applications for attorneys' fees or expenses, or *Named Plaintiffs* case contributions awards. Such amounts as are awarded by the *Court* to *Co-Lead Counsel* from the *Gross Settlement Fund* shall be payable by the *Custodian* immediately upon award, notwithstanding the existence of any timely filed objections thereto, or potential for appeal therefrom, or collateral attack on the *Settlement* or any part thereof, subject to *Plaintiffs' Counsel's* obligations to make appropriate refunds or repayments to the *Gross Settlement Fund* plus accrued interest at the same rate as is earned by the *Gross Settlement Fund*, if

19

and when, as a result of any appeal and/or further proceedings on remand, or successful collateral attack, the fee or cost award is reduced or reversed or for whatever reason the *Settlement* is terminated pursuant to Paragraphs 8.2 or 8.3 hereof; provided that *Plaintiffs' Counsel* other than *Co-Lead Counsel* shall, as a condition to receiving payment, execute an undertaking in a form satisfactory to *Co-Lead Counsel* and *Defendants' Counsel* acknowledging such refund or repayment obligation and providing adequate security therefor. *Defendants* shall have no obligations whatsoever with respect to any attorneys' fees or expenses incurred by *Plaintiffs' Counsel*, which shall be payable solely from the *Gross Settlement Fund*.

### 6.   TERMS OF ORDER FOR NOTICE AND HEARING

6.1     Promptly after this *Stipulation* has been fully executed, *Co-Lead Counsel* shall apply to the *Court* for entry of the *Order for Notice and Hearing*, substantially in the form annexed hereto as Exhibit A, which Order shall, among other provisions, certify the *Class* for settlement purposes only.

6.2     The mailing or publication of the *Notice* and *Publication Notice* shall not occur until the *Order for Notice and Hearing* has been entered by the *Court*.

### 7.   TERMS OF ORDER AND FINAL JUDGMENT

7.1     If the *Settlement* contemplated by this *Stipulation* is approved by the *Court*, *Co-Lead Counsel* and *Defendants' Counsel* shall request that a *Judgment* be entered substantially in the form annexed hereto as Exhibit B.

### 8.   EFFECTIVE DATE OF SETTLEMENT, WAIVER OR TERMINATION

8.1     The "*Effective Date*" of the *Settlement* shall be the date when all the following conditions of settlement shall have occurred:

20

8.1.1    deposit into the *Settlement Fund* of the *Settlement Amount* in accordance
with the provisions of Paragraph 3.1;

8.1.2    execution of the *Individual Defendants Letter Agreement* in a form
acceptable to *Co-Lead Counsel*;

8.1.3    *Co-Lead Counsel's* written confirmation after completion of such
additional confirmatory discovery as may be agreed to by the parties that the confirmatory
discovery was adequate and that the *Settlement* is fair, reasonable and adequate.

8.1.4    final approval by the *Court* of the *Settlement*, following notice to the *Class*
and a hearing, as prescribed by Rule 23 of the Federal Rules of Civil Procedure;

8.1.5    entry by the *Court* of the *Judgment* in all material respects in the form set
forth in Exhibit B, and the *Judgment* becoming *Final,* or, in the event that the *Court* enters a
judgment in a form other than that provided above ("*Alternative Judgment*") and none of the
parties hereto elect to terminate this *Settlement*, the date that such *Alternative Judgment* becomes
*Final*;

8.1.6    approval by the *Court* of the settlement in the *Securities Action*, entry of
judgment, and such judgment becoming *Final*;

8.1.7    If the circumstances described in Paragraph 8.2 or 8.3 occur, the expiration
of the time to exercise the termination rights provided in the applicable Paragraph(s) without the
termination right being exercised.

8.2    *Named Plaintiffs* and *Defendants* shall each have the right to terminate the
*Settlement* and thereby this *Stipulation* by providing written notice of their election to do so to one
another within thirty (30) days of any of the following: (a) the *Court* declining to enter the *Order
for Notice and Hearing* in any material respect; (b) the *Court* refusing to approve this *Settlement* as

21

set forth in this *Stipulation*; (c) the *Court* declining to enter the *Judgment* in any material respect or entering an *Alternative Judgment*; (d) the date upon which the *Judgment* or *Alternative Judgment* is modified or reversed in any material respect by any level of appellate court; or (e) the date upon which the settlement in the *Securities Action* is terminated.

8.3    Notwithstanding anything else in this *Stipulation*, *Merrill Lynch* may, in its sole and unfettered discretion, elect in writing to terminate the *Settlement* and this *Stipulation* on or before the tenth (10th) business day prior to the *Fairness Hearing* if the *Independent Fiduciary* has determined that it does not approve the *Settlement* or that it will not authorize the *Settlement* in writing as contemplated by Department of Labor Prohibited Transaction Class Exemption 2003-39.

8.4    If, prior to the ninety-first (91st) day after the *Effective Date*, a case is commenced by or against *Merrill Lynch* as debtor under Chapters 7 or 11 of Title 11 of the United States Code, then *Named Plaintiffs* shall have the right, exercisable by written notice from *Co-Lead Counsel* to *Defendants' Counsel* within fifteen (15) days after commencement of such case, to terminate the *Settlement*, whereupon the provisions of Paragraph 8.5 shall apply.

8.5    Except as otherwise provided herein, in the event the *Settlement* is terminated, the parties to this Stipulation and all *Released Persons* including *Individual Defendants* as agreed to in their *Letter Agreement* shall be deemed to have reverted to their respective status in the *ERISA Action* as of January 7, 2009, and the parties shall proceed in all respects as if this *Stipulation* and any related orders had not been entered.  Furthermore, within ten (10) business days following any termination of this *Settlement*, the *Custodian* shall return to *Merrill Lynch* the *Settlement Amount* previously paid by *Merrill Lynch* together with any interest or other income earned thereon or in respect thereof, less any *Taxes* paid or due with respect to such income, less any amounts required

to be paid to the *Custodian* pursuant to this *Stipulation*, less any reasonable costs of administration and notice actually incurred and paid or payable from the *Settlement Fund* (as described in Paragraph 3.3 hereof), and less any applicable withholding taxes.

### 9.   NO ADMISSION OF WRONGDOING

9.1   This *Stipulation*, whether or not consummated, and any proceedings taken pursuant to it:

9.1.1   shall not be offered or received against any of the *Defendants* as evidence of or construed as or deemed to be evidence of any presumption, concession, or admission by any of those *Defendants* with respect to the truth of any fact alleged by any of the *Plaintiffs* or the validity of any claim that has been or could have been asserted in the *ERISA Action* or in any litigation, or the deficiency of any defense that has been or could have been asserted in the *ERISA Action* or in any litigation, or of any liability, negligence, fault, or wrongdoing of the *Defendants*;

9.1.2   shall not be offered or received against the *Defendants* as evidence of a presumption, concession or admission of any fault, misrepresentation or omission with respect to any statement or written document approved or made by any of the *Defendants*;

9.1.3   shall not be offered or received against the *Defendants* as evidence of a presumption, concession or admission with respect to any liability, negligence, fault or wrongdoing, or in any way referred to for any other reason as against any of the *Defendants*, in any other civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this *Stipulation*; provided, however, that if this *Stipulation* is approved by the *Court*, the *Released Parties* may refer to it to effectuate the liability protection granted them hereunder;

EXHIBIT B (EXHIBIT 1)

9.1.4    shall not be construed against any of the *Defendants* as an admission or concession that the consideration to be given hereunder represents the amount that could be or would have been recovered after trial; and

9.1.5    shall not be construed as or received in evidence as an admission, concession or presumption against *Named Plaintiffs* or any of the *Class Members* that any of their claims are without merit, or that any defenses asserted by the *Defendants* have any merit, or that damages recoverable under the *ERISA Action* would not have exceeded the *Gross Settlement Fund*.

**10.    MISCELLANEOUS PROVISIONS**

10.1    All of the exhibits attached hereto are hereby incorporated by reference as though fully set forth herein.

10.2    If the *Court* requests or orders *Named Plaintiffs* or *Defendants* to supply non-privileged information in their possession as part of the *Court*'s review of the *Settlement*, the *Named Plaintiffs* and *Merrill Lynch* agree to promptly provide such information to the *Court*. The *Individual Defendants* have agreed to do likewise in their *Letter Agreement*. If *Named Plaintiffs* deem it necessary for the *Defendants* to supply non-privileged information in their possession, and not otherwise available to the *Named Plaintiffs*, in order to respond to any timely filed objection or *Court* request/order, *Merrill Lynch* agrees to promptly provide such non-privileged information that has been reasonably requested. The *Individual Defendants* have agreed to do likewise in their *Letter Agreement*. If *Defendants* deem it necessary for the *Named Plaintiffs* to supply non-privileged information in their possession in order to respond to any objection or any inquiry from the *Independent Fiduciary* or the Department of Labor, the *Named Plaintiffs* agree to promptly provide such non-privileged information that has been reasonably requested.

24

10.3    The parties to this *Stipulation* intend the *Settlement* to be a final and complete resolution of all disputes asserted or which could be asserted by the *Class Members* against the *Released Parties* with respect to the *Settled Claims*. Accordingly, the *Parties* agree not to assert in any forum that the *ERISA Action* was brought by the *Plaintiffs* or defended by *Defendants* in bad faith or without a reasonable basis. The *Parties* hereto agree, and pursuant to a *Letter Agreement* the *Plaintiffs* and the *Individual Defendants* have also agreed, that they shall assert no claims of any violation of Rule 11 of the Federal Rules of Civil Procedure relating to the prosecution, defense, or settlement of the *ERISA Action*. The *Parties* agree that the amount paid and the other terms of the *Settlement* were negotiated at arm's-length in good faith by the *Parties*, and reflect a settlement that was reached voluntarily after consultation with experienced legal counsel.

10.4    This *Stipulation* may not be modified or amended, nor may any of its provisions be waived, except by a writing signed by all *Parties* or their successors-in-interest.

10.5    The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

10.6    The administration and consummation of the *Settlement* as embodied in this *Stipulation* shall be under the authority of the *Court*, and that *Court* shall retain jurisdiction for the purpose of entering orders providing for awards of attorneys' fees and expenses to *Co-Lead Counsel* and enforcing the terms of this *Stipulation*.

10.7    The waiver by one party of any breach of this *Stipulation* by any other party shall not be deemed a waiver of any other prior or subsequent breach of this *Stipulation*.

10.8    This *Stipulation* and its exhibits, and the *Individual Defendant Letter Agreement* constitute the entire agreement concerning the *Settlement* of the *ERISA Action*, and no

25

representations, warranties, or inducements have been made by any party hereto concerning this *Stipulation* or its exhibits other than those contained and memorialized in such documents.

10.9  This *Stipulation* may be executed in one or more counterparts.  All executed counterparts and each of them shall be deemed to be one and the same instrument.

10.10  This *Stipulation* shall be binding upon, and inure to the benefit of, the successors and assigns of the *Parties*.

10.11  The construction and interpretation of this *Stipulation* shall be governed by the internal laws of the State of New York without regard to conflicts of laws, except to the extent that federal law of the United States requires that federal law governs.

10.12  This *Stipulation* shall not be construed more strictly against one party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the *Parties*, it being recognized that it is the result of arm's-length negotiations between the *Parties* and all *Parties* have contributed substantially and materially to the preparation of this *Stipulation*.

10.13  All counsel and any other person executing this *Stipulation* and any of the exhibits hereto, or any related *Settlement* documents, warrant and represent that they have the full authority to do so and that they have the authority to take appropriate action required or permitted to be taken pursuant to the *Stipulation* to effectuate its terms.

10.14  The parties hereto agree to cooperate fully with one another in seeking *Court* approval of the *Order for Notice and Hearing*, the *Stipulation* and the *Settlement* and to promptly agree upon and execute all such other documentation as may be reasonably required to obtain final approval by the *Court* of the *Settlement*.

10.15  Any notice, demand, or other communication under this *Stipulation* (other than the *Class Notice*, or other notice given at the direction of the *Court*) shall be in writing and shall be

26

EXH. B (EXH. 1)

deemed duly given upon receipt if it is addressed to each of the intended recipients as set forth

below and personally delivered, sent by registered or certified mail (postage prepaid), sent by

confirmed facsimile, or delivered by reputable express overnight courier:

      IF TO *NAMED PLAINTIFFS:*

> Lynn Sarko
> Gary Gotto
> Derek Loeser
> Erin Riley
> Keller Rohrback L.L.P.
> 1201 Third Avenue, Suite 3200
> Seattle, WA 98101
> Telephone: (206) 623-1900
> Facsimile: (206) 623-3384

> Marc I. Machiz
> Cohen, Milstein, Sellers & Toll, PLLC
> 255 South 17th Street
> Suite 1307
> Philadelphia, PA 19103
> Telephone: (267) 773-4682
> Facsimile: (267) 773-4690

> Michelle C. Yau
> Cohen Milstein Sellers & Toll PLLC
> 1100 New York Avenue NW
> Suite 500, West Tower
> Washington, D.C. 20005
> Telephone: 202.408.4600
> Facsimile: 202.408.4699

      IF TO *Merrill Lynch:*

> Jay B. Kasner
> Scott D. Musoff
> Skadden, Arps, Meagher & Flom LLP
> Four Times Square
> New York, New York 10036
> Telephone: (212) 735-3000
> Facsimile: (212) 735-2000

EXHIBIT B (EXHIBIT 1)

Case 1:07-cv-09633-JSR-DFE  Document 25-2  Filed 03/12/2009  Page 37 of 44

Any *Party* may change the address at which it is to receive notice by written notice delivered to the other *Parties* in the manner described above.

10.16 This *Stipulation* and the *Individual Defendant Letter Agreement* contain the entire agreement among the *Parties* thereto relating to this *Settlement*, and specifically supersede any settlement terms or settlement agreements relating to the *Defendants* that were previously agreed upon orally or in writing by any of the *Parties*.

10.17 This *Stipulation* may be executed by exchange of faxed or scanned executed signature pages, and any signature thereby transmitted for the purpose of executing this *Stipulation* shall be deemed an original signature for purposes of this *Stipulation*. This *Stipulation* may be executed in two or more counterparts, each of which shall be deemed to be an original, but all of which, taken together, shall constitute one and the same instrument.

10.18 This *Stipulation* binds and inures to the benefit of the *Parties* hereto, their assigns, heirs, administrators, executors, and successors.

10.19 The date on which the final signature is affixed below shall be the *Agreement Execution Date*.

IN WITNESS WHEREOF, the *Parties* have executed this *Stipulation* on the dates set forth below.

EXHIBIT B (EXHIBIT 1)

FOR THE PLAINTIFFS:

By: _____     Dated:  2-27-09
    FOR Lynn Sarko
        Gary Gotto
        Derek Loeser
        Erin Riley
        Keller Rohrback L.L.P.
        1201 Third Avenue, Suite 3200
        Seattle, WA 98101
        Telephone:  (206) 623-1900
        Facsimile:  (206) 623-3384


By: _____     Dated:  February 27, 2009
    Marc I. Machiz
    Michelle C. Yau
    Cohen, Milstein, Sellers & Toll, PLLC
    255 South 17th Street
    Suite 1307
    Philadelphia, PA  19103
    Telephone:  (267) 773-4680
    Facsimile:  (267) 773-4690

    1100 New York Avenue NW
    Suite 500, West Tower
    Washington, D.C. 20005
    Telephone:  202.408.4600
    Facsimile:  202.408.4699

*Co-Lead Counsel for the Plaintiffs*


SO ORDERED:

_____
          U.S.D.J.
3-16-09

29

DEFENDANTS

By: _____          Dated:    *February 27, 2009*

    Jay B. Kasner
    Scott D. Musoff
    Skadden, Arps, Meagher & Flom LLP
    Four Times Square
    New York, New York 10036
    Telephone: (212) 735-3000
    Facsimile: (212) 735-2000

*Attorneys for Merrill Lynch & Co., Inc.*

Acknowledged By:

_____          Dated:    *February 27, 2009*

    Adam S. Hakki
    Shearman & Sterling LLP
    599 Lexington Avenue
    New York, New York 10022
    Telephone: (212) 848-4000
    Facsimile: (212) 848-7179

*Attorneys for Individual Defendants Other than E. Stanley O'Neal*

Acknowledged By:

_____          Dated:    *February 27, 2009*

    Michael J. Chepiga
    Simpson, Thacher & Bartlett LLP
    425 Lexington Ave
    New York, NY 10017-3954
    Phone: 212-455-2519
    Facsimile: 212-455-2502

*Attorneys for E. Stanley O'Neal*

30

# EXHIBIT 2

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------

| | | |
|---|---|---|
| IN RE MERRILL LYNCH & CO., INC. SECURITIES, DERIVATIVE AND ERISA LITIGATION | : : : : : : | Master File No.: 07cv9633 (JSR) (DFE)  **CLASS ACTION** |
| This Document Relates To: ERISA ACTION | : : : : : | Case No.: 07-CV-10268 (JSR) (DFE) |

------------------------------------

**PLAN OF ALLOCATION**

**I.  Definitions.**

Capitalized terms used herein shall have the meanings ascribed to them in the Stipulation and Agreement of Settlement– ERISA Action dated February 27, 2009, or in this Plan of Allocation.

**II.  Amount to Be Distributed.**

The total amount to be distributed to the Class Members (the "Distribution Amount") shall be the Net Settlement Fund as defined in ¶ 3.3 of the Stipulation, minus up to $350,000 of Plan of Allocation Implementation Expenses, as provided for in ¶ 1.35 of the Stipulation.

**III. Calculation of Each Member's Share of the Distribution Amount.**

1

For each Class Member there shall be calculated a Net Loss, which shall be calculated as follows:

1.  Each Class Member's Net Loss shall be equal to A + B – C– D, provided that if A + B – C– D is less than zero for a Class Member, such Class Member's Net Loss will be zero.

> A = eighty-four percent (84%) of the dollar amount of the Class Member's Plan account balance invested in the Merrill Lynch common stock at the beginning of the Class Period.
>
> B = the dollar amount added to the Class Member's Plan account balance invested in Merrill Lynch common stock during the Class Period.
>
> C = the dollar amount credited to the Class Member's Plan account balance resulting from dispositions of Merrill Lynch common stock during the Class Period.
>
> D = the dollar amount of the Class Member's account balance invested in Merrill Lynch common stock Fund immediately after the end of the Class Period.

2.  To the extent data is not available to determine the account balances of Class Members at the beginning or end of the Class Period, the foregoing calculations may be performed using data as of the nearest date after the beginning or end of the Class Period that is available.

3.  There shall be calculated for each Class Member his or her "Preliminary Net Loss Fractional Share" by dividing each Class Member's Net Loss by the aggregate of all Class Members' Net Losses.

EXHIBIT B (EXHIBIT 2)

4.   There shall then be calculated for each Class Member his "Preliminary Dollar Recovery" by multiplying the Class Member's Preliminary Net Loss Fractional Share by the Distribution Amount.

5.   All Class Members whose Preliminary Dollar Recovery is less than the De Minimis Amount shall receive an allocation of zero, and the Preliminary Dollar Recovery otherwise allocable to such Class Members shall be reallocated among the other Class Members proportionately in accordance with their Preliminary Dollar Recoveries (the "Reallocation").  As used herein, the "De Minimis Amount" shall be ten dollars ($10.00) in the case of "Current Members" (as defined in Paragraph IV 1 below), and twenty-five dollars ($25.00) in the case of "Former Members" (as defined in Paragraph IV 2 below).

6.   The Preliminary Dollar Recoveries shall then be recalculated to take into account the Reallocation, and such recalculation shall produce the "Final Dollar Recovery" for each Class Member.  If there is no Reallocation, the Preliminary Fractional Recoveries shall be the Final Dollar Recoveries.  The sum of the Final Dollar Recoveries must equal the Distribution Amount.

7.   The Final Dollar Recoveries shall be allocated among the Plans by allocating to each Plan the Final Dollar Recoveries of the Class Members who are (or were) participants or beneficiaries in that Plan.  As soon as practicable thereafter, the Final Dollar Recoveries allocable to each Plan shall be deposited in that Plan.

3

Case 3:09-cv-00566-BEN-BGS  Document 95-3  Filed 05/28/10  PageID.647  Page 43 of 43
EXH. B (EXH. 2)
Case 1:07-cv-09633-JSR-DFE  Document 253-2  Filed 06/26/2009  Page 44 of 44

8.  All calculations required to implement this Plan of Allocation shall be performed by Merrill Lynch, or by such other person who shall be designated to do so by the Court.

## IV. Distribution of the Allocated Amounts.

1.  Class Members who are current Plan participants ("Current Members").  As soon as practicable after the deposit of the Final Dollar Recoveries into the Plans, there shall be deposited into each Current Member's account his or her Final Dollar Recovery.  The deposited amount shall be allocated among the Current Member's investment options in accordance with the existing investment elections for current contributions into the Plan then in effect and treated thereafter for all purposes under the Plan as assets of the Plan properly credited to that Current Member's account.

2.  Members who are former Plan participants or beneficiaries thereof ("Former Members").  The Plan Administrator for each Plan shall invest each Former Member's Final Dollar Recovery in a suitable short term investment vehicle, the primary purpose of which is the preservation of assets, pending distribution to the former Member.  The deposited amount, plus interest, shall then, as soon as is practical, be distributed to the Former Member in the same manner as a qualified distribution from the Plan pursuant to ERISA and the Internal Revenue Code.

## V.  Continuing Jurisdiction

The Court will retain jurisdiction over this Plan of Allocation to the extent necessary to ensure that it is fully and fairly implemented.

4