# MERRILL LYNCH GROWTH AWARD PLAN
## FOR FINANCIAL ADVISORS

EXHIBIT B

ML000314

# MERRILL LYNCH GROWTH AWARD PLAN
# FOR FINANCIAL ADVISORS

## Table of Contents

ARTICLE I  NAME, PURPOSE, AND EFFECTIVE DATE .................................................. 1

ARTICLE II  DEFINITIONS ............................................................................................... 1

ARTICLE III  ELIGIBILITY ................................................................................................. 3
   3.1 Eligible Employees ................................................................................................. 3

ARTICLE IV  GROWTH AWARDSANNUAL AWARDS ...................................................... 4
   4.1 Amount of Growth Awards ....................................................................................... 4
   4.2 Crediting of Accounts ............................................................................................... 4

ARTICLE V  ADJUSTMENT OF ACCOUNTS .................................................................. 4
   5.1 Annual Adjustment of Accounts ............................................................................... 4
   5.2 Statement of Account ............................................................................................... 4

ARTICLE VI  PAYMENT OF GROWTH AWARD BALANCES .......................................... 4
   6.1 General Rule ........................................................................................................... 4
   6.2 Withholding of Taxes ............................................................................................... 5
   6.3 Domestic Relations Orders ...................................................................................... 5

ARTICLE VII  THE EFFECT OF TERMINATION OF EMPLOYMENTS ........................... 5
   7.1 Death ....................................................................................................................... 5
   7.2 Termination Prior To Vesting Date ........................................................................... 5
   7.3 Retirement Prior to Vesting Date ............................................................................. 6
   7.4 Competition ............................................................................................................. 6
   7.5 Termination for Cause or Misconduct ...................................................................... 7
   7.6 Termination of Employment After a Change in Control ........................................... 7

ARTICLE VIII  STATUS OF AWARDS AND ACCOUNTS ................................................ 10
   8.1 NO TRUST OF FUND CREATED; GENERAL CREDITOR STATUS .................... 10
   8.2 NON-ASSIGNABILITY ........................................................................................... 10
   8.3 Relationship To Other Benefits .............................................................................. 10

ARTICLE IX  BENEFICIARY ............................................................................................ 10
   9.1 Designation of Beneficiary ..................................................................................... 10
   9.2 Change of Beneficiary ............................................................................................ 10
   9.3 Beneficiary Death After Commencement of Payments
   9.4 Payment On Behalf Of Incompetents ..................................................................... 10

**ARTICLE X  AMENDMENT AND TERMINATION** .................................................................. 11
  10.1 Reservation of Rights ................................................................................................ 11

**ARTICLE XI  ADMINISTRATION OF THE PLAN** .................................................................. 11
  11.1 Powers Of The Administrator .................................................................................... 11

**ARTICLE XII  MISCELLANEOUS PROVISIONS** .................................................................. 11
  12.1 Books and Records Controlling ................................................................................ 11
  12.2 Successors and Assigns ........................................................................................... 11
  12.3 Severability ............................................................................................................... 11
  12.4 Litigation .................................................................................................................... 12
  12.5 Headings Are Not Controlling .................................................................................... 12
  12.6 Governing Law .......................................................................................................... 12

EXHIBIT B

# MERRILL LYNCH GROWTH AWARD PLAN
# FOR FINANCIAL ADVISORS

## ARTICLE I

### Name, Purpose, and Effective Date

The name of the Plan is the Merrill Lynch Growth Award Plan.

The Plan, established under the Financial Advisor Compensation Program as in effect from time to time, is intended to be unfunded and maintained primarily for the purpose of providing long-term incentive compensation, subject to certain conditions, to a select group of financial advisors, who remain in the employ of the Company until completion of the period of service specified in this Plan. All decisions concerning who is to be considered eligible to participate in the Plan and who is to receive awards under this Plan are to be made by the Company.

The Plan is effective for the Plan Year commencing January 1, 2002, and each Plan Year thereafter.

## ARTICLE II

### Definitions

Unless otherwise required by the context, each of the following terms shall have the meaning indicated for that term:

*"Account"* means a book reserve established in the name of an eligible employee by MLPF&S, to which the Award or Awards granted to such eligible employee will be credited.

*"Account Balance"* means, as of any date, vested portion of all Growth Award credited to a Participant's Account adjusted in accordance with Section 5.1 to reflect the Growth Rate and any payments made from the Account prior to that date.

*Administrator"* means the Head of Human Resources of ML & Co., or his or her functional successor.

*"Advisory Division Administration"* means the appropriate members of management of the domestic Advisory Division of MLPF&S or its functional successor.

*"Affiliate"* means any corporation partnership, or other organization of which ML & Co. owns or controls, directly or indirectly, not less than 50% of the total combined voting power of all classes of stock or other equity interest.

*"Award Date"* means a date, established by Advisory Division Administration with respect to each Award, as of which such Award will be credited to the Account.

1

"*Award Year*" means the calendar year in which an Award Date falls.

"*Beneficiary*" means any person(s) or entity(ies) designated as such in accordance with Article IX.

"*Code*" means the Internal Revenue Code of 1986, as amended from time to time.

"*Company*" means ML & Co. and all of its Affiliates.

"*Disability*" means a physical or mental impairment of a Participant which counts towards the individual's satisfaction of the waiting period under the ML & Co. Basic Long Term Disability Plan, as amended from time to time, and which thereafter entitles the individual to receive benefits under that plan.

"*Eligible Employee*" means, for a given Plan Year, an Employee who (a) at the end of the performance period is a Global Private Client Employee (regardless of whether you continue to be a Global Private Client Employee at the time of grant, (b) you meet the eligibility criteria determined pursuant to Section 3(b), (c) with respect to such Production Credits, is paid from the Company's domestic based payroll (but is not a U.S. citizen or "green card" holder who is employed outside the United States); and (d) as of the date of grant, your employment with the Company has not terminated for any reason other than, death, Retirement or Rule 65

"*Employee*" means a financial advisor or any other employee group that the Administrator, in his or her sole discretion, determines are employees for purposes of eligibility for Annual Awards under the Plan. An individual who held such position during a Plan Year but who transfers to another position within the Company shall continue to be an Employee with respect to such Plan Year as long as his or her employment with the Company continues. No individual who would otherwise be eligible for an Annual Award but who is not an employee of the Company at the date of grant shall be entitled to an Annual Award under the Plan unless such individual's employment was terminated as a result of death, Retirement or Rule 65.

"*Financial Advisor*" means a domestic financial advisor employee of MLPF&S

"*Fiscal Year*" for a given Plan Year means the annual period used by ML & Co. for financial accounting purposes that ends with or prior to December 31 of that Plan Year.

"*Growth Award*" means an award determined by the Advisory Division Administration for credit to a Participant's Account under the plan.

"*Growth Rate*" means with respect to an individual Financial Advisor, for each Growth Award shall mean the higher of (A) the percentage (which shall not exceed 20%) represented by the increase in such individual Financial Advisor's production credits over the prior Fiscal Year' production credits, as determined by Advisory Division Administration or (B) 2%.

"*ML & Co.*" means Merrill Lynch & Co., Inc.

"*MLPF&S*" means Merrill Lynch, Pierce, Fenner & Smith Incorporated.

"*Participant*" for a given Plan Year means an Eligible Employee who has satisfied the criteria set forth in Article III for receiving a Growth Award.

"*Plan*" means this Merrill Lynch Growth Plan for Selected Financial Advisors.

"*Plan Year*" means a calendar year commencing on January 1, 2002, or on any January 1 thereafter.

"*Retirement.*" You will be deemed to have reached "Retirement" if your employment with the Company terminates other than for cause (i) on or after you have attained your 65th birthday, (ii) when you cease employment on or after your 55th birthday and you have completed at least 10 years of service, including approved leaves of absence of one year or less, or (iii) at any age with the express approval of the Advisory Division Administration, in its sole discretion, upon a recommendation by the management of MLPF&S, in its sole discretion. (Participants should be aware that such recommendations will be considered only in exceptional cases.)

"*Rule of 65*" You will be deemed to be eligible for the Rule of 65 contained in Section if your employment with the Company terminates other than for cause (i) on or after you have completed at least 20 years of service with the Company, including approved leaves of absence of one year or less, and (ii) your combined length of service with the Company and your age equals at least 65, and (iii) you are not eligible for "Retirement" under the Plan.

"*Production Credits*" of an Employee for a given Plan Year means the production credits of such Employee for the applicable Fiscal Year as determined under the Financial Advisor compensation plan applicable to such Employee as in effect from time to time.

"*Vesting Date*" means for any individual Award means a date that is four full years after the Award has been granted.

"*Years of Service*" means the number of "years of service" reflected on the records of the Company for purposes of determining the Participant's rights under the Merrill Lynch & Co., Inc. Retirement Accumulation Plan.

## ARTICLE III

## ELIGIBILITY

**3.1. Eligible Employees.**

(a) **General Rule.** An employee will be eligible to receive award if he or she (i) was employed during the Performance Period, a Financial Advisor (regardless of whether he or she continues to be a Financial Advisor at the time of grant), (ii) he or she met the applicable Growth Award criteria determined by Advisory Division Administration, using the criteria described below, as of the date of grant, his or her employment with the Company has not terminated for any reason other than death, Rule 65 or Retirement.

(b) **Criteria for Awards.** The criteria for Growth Awards will be established periodically by the Advisory Division. The criteria for Awards may vary from Performance Period to Performance Period and according to type of performance, and may be announced prior to, during, or following the applicable Performance Period. An Award will generally be stated as an amount equal to a percentage of achievement against established goals during a Performance Period. A Growth Award may, however, be a fixed dollar amount and the amount

3

of Growth Awards may vary according to such factors as are established periodically by the Advisory Division.

## ARTICLE IV

### Growth Awards

**4.1  Amount of Growth Awards**

Growth Awards under this Plan shall be made for a Plan Year only to Eligible Employees who are Participants for the Plan Year. The amount of each Participant's Growth Award shall be determined in accordance with the criteria in effect for the Performance Period to which the Award relates.

**4.2  Crediting of Accounts**

A Participant's Annual Award for a Plan Year shall be credited to the Participant's Account as soon as practicable (but in no event later than 120 days) after the last day of the applicable Fiscal Year.

## ARTICLE V

### Adjustment of Accounts

**5.1  Adjustment of Annual Awards**

Each Annual Award shall be increased annually to by the higher of the Participant's Growth Rate (not to exceed 20%) or 2%. The adjustment shall be made as soon as practicable (but in no event later than 120 days) after the last day of the applicable Fiscal Year.

**5.2  Statement of Account**

Each Participant for whom an Account is maintained under the Plan will be able to access account balance information via the Merrill Lynch website.

## ARTICLE VI

### Payment of Growth Award Balances

**6.1  General Rule**

Subject to Article VII below, a Participant's individual Growth Awards shall be paid on the Vesting Date for the particular Growth Awards. Payment of unvested Growth Awards shall be made only upon a Participant's death. In the case of Termination due to Retirement, where the Participant is not deemed to be in Competition under Section 7.4: (a) the payments shall vest in two annual installments, the first of which shall be paid after the end of the calendar year in which the Retirement occurs (or if Retirement occurs prior to the grant of an Annual Award, as

soon as practicable after such grant) and the remainder of which shall be paid after the end of the subsequent calendar year(s) (each such installment payment will be calculated based on 50% of the Award) and (b) in case of death, a then the unpaid balance of the Account will be paid to the Beneficiary in a single sum as soon as practicable following the Participant's death. Notwithstanding the foregoing, if the value of any Award as of the first day of the month in which the Retirement occurs is less than $500, such Award will be paid in a lump sum as soon as practicable after Retirement.

A Participant's Account Balance may be further deferred if the Participant meets **all of** the eligibility requirements for any other deferred compensation plan that, in the discretion of the Administrator, may be offered by the Company. In such event a Participant may elect to defer amounts otherwise payable under this Plan under such other plan filling out such forms as the Administrator may determine in the calendar year prior to the calendar year immediately preceding the date on which such amounts would otherwise be payable.

### 6.2 Withholding of Taxes

The Company will deduct or withhold from any amounts to be credited to an Account, or from any payments to be made hereunder, any federal, state, local income or employment taxes as required under applicable laws to be withheld, or require the Participant or the Beneficiary to pay any such amount, or the balance of any such amount.

### 6.3 Domestic Relations Orders.

ML & Co. will pay to, or to the Participant for the benefit of, the Participant's spouse or former spouse, the portion of the Participant's <u>Vested</u> Growth Awards specified in a valid court order entered in a domestic relations proceeding involving the Participant's divorce or legal separation. Such payment will be made net of any amounts the Company may be required to withhold under applicable federal, state or local law. Growth Awards that have not vested are not the property of the Participant and are NOT permitted to be paid. The Company shall be entitled to withhold from the remaining <u>Vested</u> Growth Awards payable to the Participant amounts required under applicable federal, state or local law to be withheld from the Participant in connection with a payment to the Participant's spouse.

## ARTICLE VII

## The Effect of Termination of Employment

### 7.1 Death

Upon the death of a Participant prior to the Vesting Date, then his or her Growth Awards will be deemed to be 100% vested and the Account Balance will be paid to his or her designated beneficiary or estate as soon as practicable.

### 7.2 Termination Prior to the Vesting Date

A Participant's Growth Awards shall cease to vest and shall not be payable to the Participant in the event of the Participant's Termination of employment with the Company for any reason other than his or her death, Rule 65 or Retirement prior to the Vesting Date for the relevant Growth Awards

(a)    **Rule of 65.** If a Participant's employment terminates and he or she qualifies for the Rule of 65, the Growth Awards granted to the Participant will continue to be outstanding and to vest in accordance with their original terms (except that a 2% floor will only be applied for one full year following the date of termination) and provided that the Growth Awards will cease to be eligible for continued vesting and will be eliminated if the Participant you commences employment or become affiliated in any way with a company (including self-employment) determined by the Advisory Division (or its designee) to be a retail brokerage competitor of the Company or an Affiliate.

(b)    **Disability.** If a Participant qualifies for Disability, the Growth Awards granted to the Participant will continue to be outstanding and to vest in accordance with their original terms (except that a 2% floor will only be applied for one full year following the date of termination) and provided that the Growth Awards will cease to be eligible for continued vesting and will be eliminated if the Participant commences employment or become affiliated in any way with a company (including self-employment) determined by the Advisory Division (or its designee) to be a retail brokerage competitor of the Company or an Affiliate.

### 7.3 Retirement Prior to the Vesting Date

If a Participant terminates his or her employment as a result of Retirement, unvested Growth Award(s) will vest and become the Account Balance will become payable in two installments as specified in Section 6.1.

### 7.4 Competition

**Employment by Competitor.** Notwithstanding the foregoing, if, within two years of the date of a Participant's Retirement, or at any time after such two-year period if amounts are still payable as provided in Section 6.1 above, the Participant commences employment or become affiliated in any way with a company determined by the Advisory Division (or its designee) to be a retail brokerage competitor of the Company or an Affiliate, any amount paid under Section 6.1 shall be forfeited by you and returned to the Company and all amounts that have not yet vested under Section 6.1 shall cease to vest and no longer be payable.

(a)    **Procedure.** A Participant's Account Balance will cease to vest and be payable in the event the Advisory Division in its sole discretion, determines that the Participant has been in Competition with the Company at any time during the period ending four years after the Participant's termination as a result of Retirement, Disability or the Rule of 65. The Participant shall have no further interest in his or her Account Balance from the date the Administrator makes such a determination and notifies the Participant at his or her last known address on the books and record of the Company, and no further payments of any award amounts under the Plan will be made to the Participant and his or her Beneficiary.

(b)    **Competition Defined.** For purposes of Section 7.4, "Competition" means the Participant's application for or acceptance of Employment with, or direct or indirect inducement or recruitment of any other employee of the Company to apply for or accept Employment with, any other person or entity determined by the Advisory Division (or its designee) to be a retail brokerage competitor of the Company or an Affiliate. For purposes of this Section 7.4(b), the term "Employment" shall include the performance of services as an employee and as an independent contractor (self-employed or otherwise) or consultant.

6

EXHIBIT B

### 7.5   Termination for Cause or Misconduct

A Participant's Account is subject to forfeiture in the event the Administrator, in his or her sole discretion, determines that the Participant has engaged in any misconduct relating to his or her employment with the Company, including any violation of any law, regulation or Company policy. In the event of any allegation of any such misconduct, any scheduled payment of the Account Balance will not be made unless and until the Administrator, upon consultation with the Director of Compliance of MLPF&S or his or her designee or functional successor, has determined that payment is appropriate under the circumstances.

### 7.6   Termination of Employment After a Change In Control

(a)   **Payment Upon Change in Control.**   Any other provision of this Plan to the contrary notwithstanding, in the event that a Change in Control of ML & Co. occurs and thereafter a Participant's employment is terminated by the Company without Cause or by the Participant for Good Reason, the Participant's entire Account Balance will be paid to the Participant (or to the Participant's Beneficiary in the event of death) in cash in a single sum, as promptly as possible after such termination of employment.

(b)   **Definition of "Change in Control".**   A "Change in Control" means a change in control of ML & Co. of a nature that would be required to be reported in response to Item 6(e) of Schedule 14A of Regulation 14A promulgated under the Securities Exchange Act of 1934, as amended (the "Exchange Act"), whether or not ML & Co. is then subject to such reporting requirement; provided, however, that, without limitation, a Change in Control shall be deemed to have occurred if:

(i)   any individual, partnership, firm, corporation, association, trust, unincorporated organization or other entity, or any syndicate or group deemed to be a person under Section 14(d)(2) of the Exchange Act, other than ML & Co.'s Employee Stock Ownership Plan, is or becomes the "beneficial owner" (as defined in Rule 13d-3 of the General Rules and Regulations under the Exchange Act), directly or indirectly, of securities of ML & Co. representing 30% or more of the combined voting power of ML & Co.'s then outstanding securities entitled to vote in the election of directors of ML & Co.; or

(ii)   during any period of two consecutive years, individuals who at the beginning of such period constituted the Board of Directors of ML & Co. and any new directors, whose election by the Board of Directors or nomination for election by the stockholders of ML & Co. was approved by a vote of at least 3/4 of the directors then still in office who either were directors at the beginning of the period or whose election or nomination for election was previously so approved, cease for any reason to constitute at least a majority thereof; or

(iii)   all or substantially all of the assets of ML & Co. are liquidated or distributed.

(c)   **Agreement Concerning a Change in Control.**   If ML & Co. executes an agreement, the consummation of which would result in the occurrence of the Change in Control as described in Section 8.4(b), then, with respect to a termination of employment, unless such termination is by the Company for Cause, or by the Participant other than for Good Reason, occurring after the execution of such agreement (and, if such agreement expires or is terminated prior to consummation, prior to such expiration or termination of such agreement), a

Change in Control shall be deemed to have occurred as of the date of the execution of such agreement.

(d) **Amendments Subsequent to Change in Control.** In the event of a Change in Control, no changes in the Plan and no adjustments, determinations or other exercises or discretion by the Administrator or ML & Co., that were made subsequent to the Change in Control and that would have the effect of diminishing a Participant's rights or payments under the Plan, or of causing the Participant to recognize income (for federal income tax purposes) with respect to the Participant's Account Balance prior to the actual distribution in cash to a Participant of such Account Balance, shall be effective.

(e) **Cause.** Termination of a Participant's employment by the Company for "Cause" shall mean termination upon:

(i) the Participant's willful and continued failure substantially to perform the Participant's duties with the Company (other than any such failure resulting from the Participant's incapacity due to physical or mental illness or any such actual or anticipated failure resulting from termination by the Participant for Good Reason) after a written demand for substantial performance is delivered to the Participant by National Sales Management, which demand specifically identifies the manner in which National Sales Management believes that the Participant has not substantially performed his or her duties; or

(ii) the willful engaging by the Participant in conduct, which is demonstrably and materially injurious to the Company, monetarily or otherwise.

No act or failure to act by the Participant shall be deemed "willful" unless done, or omitted to be done, by the Participant not in good faith and without reasonable belief that this action or omission was in the best interest of the Company.

Notwithstanding the foregoing, a Participant shall not be deemed to have been terminated for Cause unless and until there shall have been delivered to the Participant a copy of a written finding by National Sales Management (issued after reasonable notice to the Participant and an opportunity for the Participant, together with counsel, to be heard), that, in the good faith opinion of National Sales Management, the Participant was guilty of conduct set forth above in clause (i) or (ii) of the first sentence of this Section 8.4(e) and specifying the particulars thereof in detail.

(f) "Good Reason" shall mean a Participant's termination of his or her employment with the Company if, without the Participant's written consent, any of the following circumstances shall occur:

(i) a meaningful and detrimental alteration in the Participant's position or in the nature or status of the Participant's responsibilities from those in effect immediately prior to the Change in Control;

(ii) a reduction by the Company of the Participant's base salary as in effect just prior to the Change in Control;

(iii) the relocation of the office of the Company where the Participant was employed at the time of the Change in Control (the "CIC Location") to a location more than fifty miles away from the CIC Location (except for required travel on the

Company's business to an extent substantially consistent with the Participant's business travel obligations just prior to the Change in Control); or

(iv) the failure of the Company to continue to provide the Participant with benefits at least as favorable as those enjoyed by the Participant under any of the Company's pension, life insurance, medical, health and accident disability, deferred compensation or savings plans in which the Participant was participating at the time of the Change in Control, the taking of any action by the Company which would directly or indirectly materially reduce any of such benefits or deprive the Participant of any material fringe benefit enjoyed by the Participant at the time of the Change in Control, or the failure by the Company to provide accordance with the Company's normal vacation policy in effect at the time of the Change in Control.

## ARTICLE VIII

## Status of Awards and Accounts

8.1   No Trust or Fund Created; General Creditor Status

Nothing contained herein and no action taken pursuant hereto will be construed to obligate the Administrator to invest any assets of ML & Co. in any Selected Benchmark Return Option, nor to establish a trust or separate fund of any kind or a fiduciary relationship between ML & Co. and a Participant, Participant's Beneficiary or estate, or any other person or entity. The Administrator may, if it so chooses, earmark any assets of ML & Co. to meet its obligations hereunder. Title to and beneficial ownership of any funds represented by the Account will at all times remain in ML & Co.; such funds will continue for all purposes to be a part of the general funds of ML & Co. and may be used for any corporate purpose. No person will, by virtue of the provisions of this Plan, have any interest whatsoever in any specific assets of the Company, including any such funds. TO THE EXTENT THAT ANY PERSON ACQUIRES A RIGHT TO RECEIVE PAYMENTS FROM ML & CO. UNDER THIS PLAN, SUCH RIGHT WILL BE NO GREATER THAN THE RIGHT OF ANY UNSECURED GENERAL CREDITOR OF ML & CO.

8.2   Non-Assignability

The right of a Participant, or of any other person with reference to the Participant, to the Account Balance, or any other benefits hereunder, shall be: (a) subject to forfeiture as explained above, and (b) cannot be assigned, alienated, sold, garnished, transferred, pledged, or encumbered except by a written designation of Beneficiary under this Plan, by written will, or by the laws of descent and distribution.

8. 3   Relationship to Other Benefits

EXHIBIT B

ML000325

No payment under the Plan shall be taken into account in determining any benefits under any pension, retirement, group insurance, or other employee benefit plan of the Company. The Plan shall not preclude the stockholders of ML & Co., the Board of Directors or any committee thereof, or the Company from authorizing or approving other employee benefit plans or forms of incentive compensation, nor shall it limit or prevent the continued operation of other incentive compensation plans or other employee benefit plans of the Company or the participation in any such plans by participants in the Plan.

### ARTICLE IX

### Beneficiary

#### 9.1    Designation of Beneficiary

A Participant may designate, in a writing delivered to the Administrator or his or her designee before the Participant's death, a Beneficiary to receive payments in the event of the Participant's death. The Participant may also designate a contingent Beneficiary to receive payments in accordance with this Plan if the primary Beneficiary does not survive the Participant. The Participant may designate more than one person as the Beneficiary or contingent Beneficiary, in which case (i) no contingent Beneficiary would receive any payment unless all of the primary beneficiaries predeceased the Participant, and (ii) the surviving beneficiaries in any class shall share in any payments in proportion to the percentages of interest assigned to them by the Participant. If the Participant dies without a surviving Beneficiary, the Participant's estate will be considered the Beneficiary.

#### 9.2    Change of Beneficiary

A Participant may change the Beneficiary or contingent Beneficiary (without the consent of any prior Beneficiary) in a writing delivered to the Administrator or his or her designee before the Participant's death. Unless otherwise stated in writing, any change in Beneficiary or contingent Beneficiary designation will automatically revoke prior such designations, as applicable, under this Plan.

#### 9.3    Beneficiary Death After Commencement of Payments

If, after a Participant's death, a Beneficiary entitled to receive, or actually receiving, payments hereunder dies before receiving full payment, the Account Balance to which the Beneficiary was entitled will be paid as soon as practicable in one lump sum to such primary Beneficiary's estate.

#### 9.4    Payment on Behalf of Incompetents

If, in his or her sole discretion, the Administrator finds that any person who is entitled to receive any payment hereunder is a minor or is unable to care for his or her affairs because of disability or incompetence, payment of the Account Balance may be made to anyone found by the Administrator to be the committee or other authorized representative of such person, or to be otherwise entitled to such payment, in the manner and under the conditions that the Administrator determines. Such payment will be a complete discharge of the liabilities of the Company hereunder with respect to the amount so paid.

## ARTICLE X

## Amendment and Termination

### 10.1 Reservation of Rights

ML & Co., through the Administrator, reserves the right to amend or terminate this Plan in whole or in part, at any time for any reason; <u>provided</u>, <u>however</u>, that no such action shall reduce a Participant's Account Balance as of the effective date of that action, or otherwise deprive the Participant or a Beneficiary of any entitlement thereto.

## ARTICLE XI

## Administration of the Plan

### 11.1 Powers Of The Administrator

The Administrator has full power, discretion and authority to interpret, construe, and administer this Plan so as to ensure that it provides deferred compensation to Participants who are members of a select group of management or highly compensated employees within the meaning of Title I of ERISA. The Administrator's interpretations and construction hereof, and actions hereunder, including any determinations regarding the amount or recipient of any payments, will be binding and conclusive on all persons for all purposes. The Administrator will not be liable to any person for any action taken or omitted in connection with the interpretation and administration of this Plan unless attributable to willful misconduct or lack of good faith. The Administrator may designate persons to carry out the specified responsibilities of the Administrator and shall not be liable for any act or omission of a person as designated.

## ARTICLE XII

## Miscellaneous Provisions

### 12.1 Books and Records Controlling

The books and records of the Company will be controlling in the event a question arises hereunder concerning the amount of Production Credits, Eligible Compensation, Annual Awards, Accounts, designations of Beneficiary(ies), or any similar matters.

### 12.2 Successors and Assigns

The provisions of this Plan will be binding upon and inure to the benefit of the Company and its successors and assigns, the Participants and their designated Beneficiary(ies), and their respective heirs, executors, administrators, and legal representatives.

### 12.3 Severability

If any provision of this Plan, or the application thereof, shall for any reason be invalid or unenforceable, such provision shall be limited only to the extent necessary in the circumstances

to make it valid and enforceable. In any event, the remaining provisions of this Plan will continue in full force and effect.

### 12.4 Litigation

The Company shall have the right to contest, at its expense, any ruling or decision, administrative or judicial, on an issue that is related to the Plan and that the Administrator believes to be important to the Participants, and to conduct any such contest or any litigation arising therefrom to a final decision.

### 12.5 Headings Are Not Controlling

The headings contained in this Plan are for convenience only and will not control or affect the meaning or construction of any of the terms or provisions of this Plan.

### 12.8 Governing Law

THE PLAN SHALL BE CONSTRUED AND ITS PROVISIONS ENFORCED AND ADMINISTERED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK APPLICABLE TO CONTRACTS ENTERED INTO AND PERFORMED ENTIRELY IN SUCH STATE, AS TO ALL MATTERS, INCLUDING, BUT NOT LIMITED TO, MATTERS OF VALIDITY, CONSTRUCTION, AND PERFORMANCE.