EXH. A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE MERRILL LYNCH & CO., INC. SECURITIES, DERIVATIVE AND ERISA LITIGATION<br><br>This Document Relates To:<br>ERISA Action, 07-cv-10268 (JSR) (DFE) | Master File No.<br>07-cv-9633 (JSR) (DFE) |

**DECLARATION OF JENNIFER M. KEOUGH**
**RE: NOTICE DISSEMINATION AND PUBLICATION**

JENNIFER M. KEOUGH declares and states as follows:

1. I am Executive Vice President, Operations of The Garden City Group, Inc. ("GCG"). The following statements are based on my personal knowledge and information provided by other GCG employees working under my supervision, and if called on to do so, I could and would testify competently thereto.

2. GCG was retained by the Parties in the above-captioned litigation (the "Litigation") to serve as the Notice Administrator. I submit this Declaration in order to provide the Court and the Parties to the Litigation with information regarding the mailing of the Notice of Proposed Settlement of ERISA Class Action Litigation, Settlement Fairness Hearing, and Motion for Attorneys' Fees and Reimbursement of Expenses and Proposed Named Plaintiffs' Compensation (the "Notice"), as well as the publication of a summarized version of the Notice (the "Publication Notice"), in accordance with the Court's Order Preliminarily Approving

EXHIBIT A

Settlement, Preliminarily Certifying Settlement Class, Approving Notice Plan, and Setting Fairness Hearing Date (the "Order"), filed March 17, 2009.

## DISSEMINATION OF THE NOTICE

3. GCG was responsible for disseminating the Notice to Class Members in this Litigation. Toward that end, on March 30, 2009, GCG received from Plaintiff's Counsel electronic files containing 70,322 records, and were advised that the files contained the information for Class Members as specified in Paragraph 6a of the Order.

4. GCG loaded this data into a database created for the Litigation. GCG reviewed the data and determined four records in the original data were duplicates and four records were incomplete. These records were subsequently removed. Prior to mailing the Notice, mailing addresses of Class Members were updated using the National Change of Address database ("NCOA"). The NCOA resulted in 4,421 address updates.

5. GCG thereafter formatted the Notice, and caused it to be posted for first-class mail, postage pre-paid on April 6, 2009 (the "Notice Date").

6. On the Notice Date, 70,314 copies of the Notice were mailed. A copy of the Notice is attached hereto as Exhibit A.

## UNDELIVERABLES AND SUPPLEMENTAL DATA

7. As of the date of this Declaration, GCG has received 440 Notices returned by the U.S. Postal Service with forwarding address information. Notices returned by the U.S. Postal Service with forwarding address information were promptly remailed to the updated addresses provided. These address changes have been updated in the GCG database and will be maintained throughout the course of the administration process.

8. As of the date of this Declaration, GCG has received 1,858 Notices returned by the U.S. Postal Service without forwarding address information.

9. GCG has received twenty-three requests from Plaintiffs' Counsel to mail additional Notices to Class Members. All requests were handled promptly. Sixteen of these requests for Notice were sent to Class Members included in the initial mailing. Seven requests for Notice were new additions to the data and were promptly added to the database. Inclusive of Plaintiff Counsel's supplemental additions, the Notice has been mailed to 70,321 Class Members.

**PUBLICATION OF THE NOTICE**

10. Pursuant to Paragraph 6c of the Order, GCG caused the Publication Notice to be published once in *The New York Times* on April 6, 2009. A Publication Notice tear sheet and Certification of Publication from *The New York Times* are attached hereto as Exhibit B.

11. Pursuant to Paragraph 6c of the Order, GCG caused the Publication Notice to be electronically published on the Business Wire over the National Circuit on April 6, 2009. A copy of the Business Wire is attached hereto as Exhibit C.

**OBJECTIONS**

12. Pursuant to paragraph 9 of the Order, any Class Member who wishes to object to the approval of the Settlement is required to file a written objection with the Court and serve upon the Parties on or before July 6, 2009. As of the date of this Declaration, GCG has not directly received any objections from Class Members.

I declare under penalty of perjury under the laws of the State of New York that the foregoing is true & correct.

Executed on June 19, 2009 at Seattle, Washington.

[signature]

**Jennifer M. Keough**

# Exhibit A

EXH. A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| IN RE MERRILL LYNCH & CO., INC. SECURITIES, DERIVATIVE AND ERISA LITIGATION | Master File No. 07-cv-9633 (JSR)(DFE) |
| --- | --- |
| This Document Relates To: ERISA ACTION | Case No. 07-cv-10268 (JSR)(DFE) |

**NOTICE OF PROPOSED SETTLEMENT OF ERISA CLASS ACTION LITIGATION, SETTLEMENT FAIRNESS HEARING, AND MOTION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES AND PROPOSED NAMED PLAINTIFFS' COMPENSATION**

**Your legal rights might be affected if you are:**

(a) a current or former participant in or beneficiary of any of the Merrill Lynch & Co., Inc. 401(k) Savings and Investment Plan, the Merrill Lynch & Co., Inc. Retirement Accumulation Plan or the Merrill Lynch & Co., Inc. Employee Stock Ownership Plan (which are referred to herein individually as a "Plan" and collectively as the "Plans"), and your individual Plan account(s) included investments in Merrill Lynch & Co., Inc. ("Merrill Lynch") stock at any time during the period September 30, 2006 through December 31, 2008, inclusive (the "Class Period") or (b) a beneficiary, alternate payee, representative or successor in interest to a person described in clause (a).

**PLEASE READ THIS NOTICE CAREFULLY. A FEDERAL COURT AUTHORIZED THIS NOTICE. THIS IS NOT A SOLICITATION. YOU HAVE NOT BEEN SUED.**

This notice ("Notice") advises you of a proposed settlement (the "Settlement") of a consolidated class action lawsuit brought by plaintiffs Carl Esposito, Barbara Boland, Alan Maltzman, and Mary Gidaro (collectively, the "Named Plaintiffs") on behalf of themselves, the Plans (referred to above), and as representatives of a class described herein (the "Settlement Class") against the Defendants (Merrill Lynch and the other persons named personally or fictitiously as defendants in the lawsuit). The Named Plaintiffs and the Defendants are referred to herein as the "Parties." The litigation is referred to as the "ERISA Action." The United States District Court for the Southern District of New York (the "Court") has preliminarily approved the Settlement and has scheduled a hearing to evaluate the fairness and adequacy of the Settlement at which the Court will consider Named Plaintiffs' motion for final approval of the Settlement and for class certification, motion for approval of a proposed plan of allocation, and motion for an award of attorneys' fees and costs and for case contribution awards to the Named Plaintiffs. That hearing, before the Hon. Jed S. Rakoff, has been scheduled for July 27, 2009, at 4:00 p.m. in Courtroom 14B of the United States District Court for the Southern District of New York, 500 Pearl Street, New York, NY 10007-1312. The terms of the Settlement are contained in a Stipulation and Agreement of Settlement – ERISA Action (the "Settlement Agreement"), a copy of which is available at www.merrilllynchERISAsettlement.com or by contacting Plaintiffs' Co-Lead Counsel identified below. Capitalized terms used in this Notice and not defined herein have the meanings assigned to them in the Settlement Agreement. The Settlement will provide for payments to the Plans and for allocation of those payments to the accounts of, or otherwise for the benefit of, the Settlement Class. The Settlement is summarized below.

Any questions regarding the Settlement should be directed to Plaintiffs' Co-Lead Counsel: Lynn Lincoln Sarko, Keller Rohrback L.L.P., 1201 Third Avenue, Suite 3200, Seattle, WA 98101 or Marc Machiz, Cohen Milstein Sellers & Toll PLLC, 1100 New York Avenue NW, Suite 500, West Tower, Washington, D.C. 20005. Plaintiffs' Co-Lead Counsel have established a toll-free phone number, (800) 255-0894, if you have questions or comments. Plaintiffs' Co-Lead Counsel may also be contacted via email (info@merrilllynchERISAsettlement.com). Please do not contact the Court. They will not be able to answer your questions.

EXH. A

**PLEASE READ THIS NOTICE CAREFULLY AND COMPLETELY. IF YOU ARE A MEMBER OF THE SETTLEMENT CLASS TO WHOM THIS NOTICE IS ADDRESSED, THE SETTLEMENT WILL AFFECT YOUR RIGHTS. YOU ARE NOT BEING SUED IN THIS MATTER. YOU DO NOT HAVE TO APPEAR IN COURT AND YOU DO NOT HAVE TO HIRE AN ATTORNEY IN THIS CASE. IF YOU ARE IN FAVOR OF THE SETTLEMENT, YOU NEED NOT DO ANYTHING. IF YOU DISAPPROVE, YOU MAY OBJECT TO THE SETTLEMENT PURSUANT TO THE PROCEDURES DESCRIBED BELOW.**

| ACTIONS YOU MAY TAKE IN THE SETTLEMENT | |
|---|---|
| NO ACTION IS NECESSARY TO RECEIVE PAYMENT. | If the Settlement is approved by the Court and you are a member of the Settlement Class, you do not need to do anything in order to receive a payment. The portion, if any, of the Net Settlement Fund to be allocated to your Plan account or otherwise for your benefit will be calculated as part of the implementation of the Settlement.<br>If you are a current participant in the Plans, any share of the Net Settlement Fund to which you are entitled will be deposited into your Plan accounts. If you are no longer a Plan participant and are entitled to share in the Net Settlement Fund, a Plan account will be established for you, if necessary, and you will be notified of such account. |
| YOU CAN OBJECT (NO LATER THAN JULY 6, 2009). | If you wish to object to any part of the Settlement, you can write to the Court and counsel and explain why you do not like the Settlement. |
| YOU CAN GO TO THE HEARING ON JULY 27, 2009. | If you have submitted a written objection to the Court and counsel, as explained below, you can ask to speak in Court about the fairness of the Settlement. |

## WHAT THIS NOTICE CONTAINS

**SUMMARY OF SETTLEMENT** ..... 3
**BASIC INFORMATION** ..... 4
1. Why did I get this Notice package? ..... 4
2. What is the lawsuit about? What has happened so far? ..... 5
3. Why is this case a class action? ..... 6
4. Why is there a Settlement? ..... 6
5. How do I know whether I am part of the Settlement Class? ..... 6
6. What does the Settlement provide? ..... 6
7. What will be my share of the Settlement Fund? ..... 7
8. How can I get my portion of the recovery? ..... 8
9. When would I receive my payment? ..... 8
10. Can I exclude myself from the Settlement? ..... 8

**THE LAWYERS REPRESENTING YOU** ..... 8
11. Do I have a lawyer in the case? ..... 8
12. How will the lawyers be paid? ..... 9

**OBJECTIONS** ..... 9
13. How do I tell the Court if I don't like the Settlement? ..... 9

**THE COURT'S FAIRNESS HEARING** ..... 10
14. When and where will the Court decide whether to approve the Settlement? ..... 10
15. Do I have to come to the hearing? ..... 10
16. May I speak at the hearing? ..... 11

**IF YOU DO NOTHING** ..... 11
17. What happens if I do nothing at all? ..... 11

**GETTING MORE INFORMATION** ..... 11
18. How do I get more information? ..... 11

EXHIBIT A

EXH. A

This litigation (the "Action") is a consolidation of a series of cases filed in federal district court. As described in more detail below and in the complaints themselves, the cases concern allegations that Defendants breached fiduciary duties they owed to participants in the Plans. Copies of the Consolidated Supplemental Complaint for Violations of the Employment Retirement Income Security Act ("Complaint") and other documents filed in this Action are available at www.merrilllynchERISAsettlement.com.

**SUMMARY OF SETTLEMENT**

A Gross Settlement Fund has been established consisting of a deposit of $75,000,000.00 in cash paid by Merrill Lynch, plus interest earned thereon from and after March 20, 2009. The Net Settlement Fund, which will consist of the Gross Settlement Fund less certain amounts described in the Settlement Agreement, including expenses associated with Class Notice, Court-approved attorneys' fees and expenses and case contribution awards, taxes and other costs related to the administration of the Gross Settlement Fund and implementation of the Plan of Allocation, will be allocated among the Settlement Class in accordance with the Plan of Allocation to be approved by the Court. (See Question 7 below for details of the Plan of Allocation).

The Settlement Class consists of the following persons: (a) all current and former participants and beneficiaries of any of the Plans whose individual Plan account(s) included investments in Merrill Lynch stock at any time during the Class Period (i.e., September 30, 2006 through December 31, 2008, inclusive), and (b) as to each Person within the scope of subsection (a) of this paragraph, his, her or its beneficiaries, alternate payees (including spouses of deceased Persons who were participants of one or more of the Plans), Representatives and Successors-In-Interest, provided, however, that the Class shall not include any Defendant or any of their Immediate Family, beneficiaries, alternate payees (including spouses of deceased Persons who were Plan participants), Representatives or Successors-In-Interest, except for spouses and immediate family members who themselves are or were participants in any of the Plans, who shall be considered members of the Settlement Class with respect to their own Plan accounts.

As with any litigation, the Parties would face an uncertain outcome if this Action were to continue against the Defendants. Continued litigation of this Action against the Defendants could result in a judgment or verdict greater or less than the recovery under the Settlement Agreement, or in no recovery at all. This litigation has been hotly contested from the outset. Throughout this litigation, the Named Plaintiffs and the Defendants have disagreed on both liability and damages, and they do not agree on the amount that would be recoverable even if the Plaintiffs were to prevail at trial. The Defendants, among other things: (1) have denied, and continue to deny, the material allegations of the Complaint; (2) have denied, and continue to deny, any wrongdoing or liability whatsoever; (3) believe that they acted at all times reasonably and prudently and in accordance with applicable law with respect to the Plans, their participants and beneficiaries, and the Settlement Class; (4) would assert certain other defenses if this Settlement is not consummated; and (5) are entering into the Settlement solely to avoid the cost, disruption, and uncertainty of litigation. Nevertheless, the Parties have taken into account the uncertainty and risks inherent in this litigation, particularly its complex nature, and have concluded that it is desirable that this Action be fully and finally settled on the terms and conditions set forth in the Settlement Agreement.

Plaintiffs' Counsel in this Action will apply to the Court for an order awarding Plaintiffs' Counsel attorneys' fees not in excess of $20,625,000 (27.5% of the amount recovered in the Settlement), plus reimbursement of expenses. The Named Plaintiffs in this Action will share in the allocation of the money paid to the Plans on the same basis and to the same extent as all other members of the Settlement Class, except that, in addition, the Named Plaintiffs may apply to the Court for a case contribution award of up to $5,000 each. Any case contribution award granted to the Named Plaintiffs by the Court will be payable from the proceeds of the Settlement.

EXHIBIT A

## BASIC INFORMATION

### 1. Why did I get this Notice package?

Either you or someone in your family may have been a participant in or beneficiary of one of the Plans and may have had a portion of your, his, or her Plan account(s) invested in Merrill Lynch stock during the Class Period. The Court has directed that this Notice be sent to you because, as a potential member of the Settlement Class, you have a right to know about the proposed Settlement with the Defendants before the Court decides whether to approve the Settlement. If the Court approves the Settlement, and all related objections and appeals are favorably resolved, the net amount of the Settlement Fund will be allocated among the Settlement Class according to a court-approved Plan of Allocation and the Released Parties will be released from all Settled Claims, as set forth in the Settlement Agreement.

This Notice explains the Action, the Settlement, your legal rights, what benefits are available, who is eligible for them, and how you will receive your portion of the benefits. The purpose of this Notice is to inform you of a hearing (the "Fairness Hearing") to be held by the Court to consider the fairness, reasonableness and adequacy of the proposed Settlement and to consider the application of Plaintiffs' Counsel for their attorneys' fees and reimbursement of litigation expenses as well as an application for case contribution awards to the Named Plaintiffs.

The Fairness Hearing will be held at 4:00 p.m. on July 27, 2009, before the Honorable Jed S. Rakoff in the United States District Court for the Southern District of New York, Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, NY 10007, to determine:

(a) Whether the Settlement should be approved as fair, reasonable and adequate;

(b) Whether the Complaint should be dismissed with prejudice pursuant to the terms of the Settlement;

(c) Whether the Class Notice and the means of dissemination thereof pursuant to the Settlement Agreement: (i) are appropriate and reasonable and constituted due, adequate, and sufficient notice to all persons entitled to notice; and (ii) met all applicable requirements of the Federal Rules of Civil Procedure, and any other applicable law;

(d) Whether the Settlement Class should be certified pursuant to Fed. R. Civ. P. 23(a) & (b) for purposes of the Settlement and, with respect thereto, whether Plaintiffs' Co-Lead Counsel should be appointed as Class Counsel pursuant to Fed. R. Civ. P. 23(g);

(e) Whether the application for attorneys' fees and expenses filed by Plaintiffs' Co-Lead Counsel should be approved; and

(f) Whether the application for case contribution awards for the Named Plaintiffs should be approved.

The issuance of this Notice is not an expression of the Court's opinion on the merits of any claim in this Action, and the Court still has to decide whether to approve the Settlement. If the Court approves the Settlement, payment to the Settlement Class will be made after all related appeals, if any, are favorably resolved. It is always uncertain whether such appeals can be favorably resolved, and resolving them can take time, perhaps more than a year. Please be patient.

**2. What is the lawsuit about? What has happened so far?**

In this Action, Named Plaintiffs allege, among other things, that the Defendants were fiduciaries of the Plans and violated fiduciary duties under the Employee Retirement Income Security Act of 1974 ("ERISA") by allowing the Plans to invest in Merrill Lynch stock when it was allegedly an unsuitable and imprudent investment for the Plans. Named Plaintiffs further allege that the Defendants violated ERISA by misrepresenting the true financial condition of the Company and, consequently, the true value and riskiness of Merrill Lynch stock, and by failing to discharge fiduciary duties to provide information pertinent to the Plans' investment in Merrill Lynch stock to other fiduciaries, monitor the performance of other fiduciaries, or otherwise prevent or remedy breaches of duty by other fiduciaries. Plaintiffs sought to recover from the Defendants losses to the Plans allegedly caused by the Defendants' alleged misconduct.

Defendants deny that they have any liability to the Plans or their participants or beneficiaries. If the litigation were to continue, Defendants would raise numerous defenses to liability, including the following:

- They were not fiduciaries of the Plans, or, if they were fiduciaries, their fiduciary duties did not extend to the matters at issue in the Action;
- To the extent they were fiduciaries as to the matters at issue in the Action, they fully discharged all fiduciary duties in a manner wholly consistent with ERISA and the applicable body of case law interpreting ERISA;
- Even if they failed to discharge one or more of their ERISA fiduciary duties, any such breach of fiduciary duty did not cause the losses alleged by Named Plaintiffs; and
- The relief sought by the Named Plaintiffs in the Action is not permitted under ERISA.

Plaintiffs' Co-Lead Counsel have conducted an extensive investigation of Merrill Lynch and of the alleged losses suffered by the Plans as a result of the breaches of fiduciary duty alleged in the Action. In addition, through that investigation and through discovery of additional information in the Action, Plaintiffs' Co-Lead Counsel have obtained extensive documents, including documents and materials governing the Plans, communications with Plan participants, internal Merrill Lynch documents regarding the Plans, Merrill Lynch's Securities and Exchange Commission filings, press releases, public statements, news articles and other publications. Plaintiffs' Co-Lead Counsel have conducted a thorough review and analysis of these materials. In addition, because the Settlement was reached before formal discovery commenced in the Action, Plaintiffs' Co-Lead Counsel have sought discovery of additional facts and documentation prior to the Fairness Hearing to enable Plaintiffs' Co-Lead Counsel to confirm that the Settlement is fair, reasonable and adequate and in the best interest of the Settlement Class.

Plaintiffs' Co-Lead Counsel have opposed a motion by Defendants to dismiss the Action for failure to state a claim upon which relief may be granted. This motion is fully briefed, and at the time the Settlement was reached was pending before the Court.

This Settlement is the product of intense, arm's-length negotiations between Plaintiffs' Co-Lead Counsel and Defendants' Counsel, conducted during numerous meetings and conferences in which the terms of the Settlement were extensively debated and negotiated.

**3. Why is this case a class action?**

In a class action, one or more plaintiffs, called "named plaintiffs," sue on behalf of people who have similar claims. All of the individuals on whose behalf the Named Plaintiffs in this Action are suing are members of a "class" referred to in this Notice as members of the Settlement Class. The Court resolves the issues for all members of the Settlement Class. United States District Judge Jed S. Rakoff is presiding over this case.

**4. Why is there a Settlement?**

The Court has not expressed any opinions or reached any decisions whatsoever on the merits of Named Plaintiffs' claims against Defendants. Instead, the Named Plaintiffs and Defendants have agreed to a settlement to resolve the Action. In reaching the Settlement, they have avoided the cost and time of a trial. As with any litigation, the Named Plaintiffs would face an uncertain outcome if this case proceeded, including the risk of dismissal upon pending and future motions as well as the risk of not prevailing at trial. On the one hand, pursuing the case against the Defendants could result in a verdict offering relief greater than this Settlement. On the other hand, continuing the case against the Defendants could result in a verdict for less money than Named Plaintiffs have obtained in this Settlement, or even in no recovery at all. Based on these risks and an evaluation of the particular risks presented by this case, the Named Plaintiffs and Plaintiffs' Co-Lead Counsel believe the Settlement is in the best interests of all Settlement Class members. Additional information concerning the Settlement may be obtained at www.merrilllynchERISAsettlement.com.

This Settlement is the product of extensive arm's-length negotiations between Plaintiffs' Co-Lead Counsel and the Defendants' Counsel, all of whom are very experienced with respect to litigation of this type. Subject to completion of the confirmatory discovery process described above, Plaintiffs' Co-Lead Counsel believe that the proposed Settlement is fair, reasonable and adequate and in the best interest of the Settlement Class.

**5. How do I know whether I am part of the Settlement Class?**

The Court has preliminarily certified this Action as a class action. The Settlement Class consists of the following persons: (a) all current and former participants and beneficiaries of any of the Plans whose individual Plan account(s) included investments in Merrill Lynch stock at any time during the Class Period (i.e., September 30, 2006 through December 31, 2008, inclusive) and (b) as to each Person within the scope of subsection (a) of this paragraph, his, her or its beneficiaries, alternate payees (including spouses of deceased Persons who were participants of one or more of the Plans), Representatives and Successors-In-Interest, provided, however, that the Class shall not include any Defendant or any of their Immediate Family, beneficiaries, alternate payees (including spouses of deceased Persons who were Plan participants), Representatives or Successors-In-Interest, except for spouses and immediate family members who themselves are or were participants in any of the Plans, who shall be considered members of the Class with respect to their own Plan accounts.

If you are a member of the Settlement Class, your share of the Net Settlement Fund, if any, will be determined by the Court-approved Plan of Allocation, described in Question 7 below.

**6. What does the Settlement provide?**

The Settlement Agreement provides for the payment of $75,000,000.00 in cash, which has been deposited into a Gross Settlement Fund. The net amount in the Settlement Fund (including interest, but after payment of, and establishment of reserves for, certain amounts as described in the Settlement Agreement, including expenses associated with Class Notice, Court-approved attorneys' fees and expenses and Named Plaintiff case contribution awards, taxes and other costs related to the administration of the Settlement Fund and implementation of the Plan of Allocation) will be paid to the Plans and allocated among and paid to members of the Settlement Class according to a Plan of Allocation to be approved by the Court. Allocations will be made to

Plan accounts established for members of the Settlement Class. Disbursement of the Settlement Fund to the Settlement Class will occur once the Settlement has become Final – after all appeals relating to the Settlement are favorably decided and all appeal periods have expired.

In exchange for the Settlement payment, all Settlement Class members and anyone claiming through them are deemed to fully release the Released Parties from Settled Claims, and are forever enjoined from bringing any Settled Claim against any Released Party. The Released Parties are defined in the Settlement Agreement; generally they are the Defendants and certain affiliated or otherwise related persons and entities. The Settled Claims, also defined in the Settlement Agreement, generally include, subject to certain limitations set forth in the Settlement Agreement, all claims asserted in the Action, as well as any claims that could have been asserted in any forum by or on behalf of Settlement Class members which arise out of or are based on the allegations, transactions, facts, matters or occurrences, representations or omissions out of which the claims in the Action arise. This means that Settlement Class members will not have the right to sue the Released Parties for any such claims if the Settlement is approved. The Settled Claims do not include the claims asserted in *In re Merrill Lynch Securities Litigation*, Case No. 07-cv-9633 (JSR)(DFE) (the "Securities Action"), and in *In re Merrill Lynch Derivative Litigation*, Case No. 07-cv-9696 (JSR)(DFE) (the "Derivative Action"), and actions consolidated thereunder, both pending in the United States District Court for the Southern District of New York, which are separate lawsuits and which are not affected by this Settlement. A proposed settlement of the Securities Action is currently pending and you may receive a separate notice with respect thereto. The Settlement of this Action is conditioned upon the settlement of the Securities Action being approved by the Court and that approval becoming Final.

**7. What will be my share of the Settlement Fund?**

By June 26, 2009, Plaintiffs' Co-Lead Counsel will submit a detailed Plan of Allocation to the Court for approval at or after the Fairness Hearing. The Plan of Allocation, which, after filing, may be obtained at www.merrilllynchERISAsettlement.com, or by contacting Plaintiffs' Co-Lead Counsel, will describe the manner by which the Settlement proceeds paid into the Plans (the "Net Settlement Fund") will be distributed to Settlement Class members. In general terms, the Plan of Allocation will provide that each Settlement Class member's share of the Net Settlement Fund will be calculated as follows:

The Net Settlement Fund shall be distributed among Settlement Class members in proportion to their "Net Losses." Each Settlement Class member's Net Loss will be the total of the member's "Merrill Lynch Common Stock Fund Net Loss," which will be, for each Settlement Class member, the greater of (a) zero, or (b) the result obtained by (i) taking 84% of the dollar amount of the Settlement Class member's Plan account balance invested in the Merrill Lynch Stock Fund at the beginning of the Class Period; (ii) adding the dollar amount added to the Settlement Class member's Plan account balance invested in the Merrill Lynch Stock Fund during the Class Period (including the value of Merrill Lynch common stock received as a dividend); and (iii) subtracting the dollar amount credited to the Settlement Class member's Plan account balance resulting from dispositions from the Merrill Lynch Stock Fund as well as the balance of any stock held in the Plan on the earlier of either the last day of the Class Period or on the last day the member was a participant in the Plan.

The Net Losses of the Settlement Class members will be aggregated. Each Settlement Class member will be assigned a "Net Loss Percentage," showing the percentage of the Settlement Class member's Net Loss in relation to all Settlement Class members' Net Losses. Each Settlement Class member's share of the Net Proceeds will be equal to the Net Proceeds multiplied by the member's Net Loss Percentage. If data is not available for the beginning date of the Class Period, then data from the nearest available date will be used.

The trustee or record keeper will perform all calculations for you and determine both whether you are entitled to a share of the Net Proceeds and your share amount. The trustee or record keeper will have access to all

available records so you do not need to be concerned if you no longer have your Plan account statements. The Court will be asked to approve a more detailed statement of the Plan of Allocation, a copy of which will be available along with other settlement documents at www.merrilllynchERISAsettlement.com.

**8. How can I get my portion of the recovery?**

You do not need to file a claim for recovery. If you are a Settlement Class member entitled to a share of the Net Settlement Fund, your share will be deposited in your Plan account. If you are a former Plan participant, an account will be established for you in the Plan if necessary, and you will be notified of such account. If you are a former participant and have not provided the Plan with your current address, please contact the Plan administrator at Merrill Lynch immediately, or contact Plaintiffs' Co-Lead Counsel.

**9. When would I receive my payment?**

Payment is conditioned on several matters, including the Court's approval of the Settlement and that approval becoming Final and no longer subject to any appeals. Upon satisfaction of various conditions, the Net Settlement Fund will be allocated to Settlement Class members' Plan accounts or to accounts created for them pursuant to the Plan of Allocation (described above) as soon as possible after Final approval has been obtained for the Settlement, including the exhaustion of any appeals. Any appeal of the Final approval could take several years. Interest accrued on the Settlement Fund from March 20, 2009 forward will be included in the amount allocated and paid to the Settlement Class. The Settlement Agreement may be terminated on several grounds, including if the Court does not approve or otherwise modifies the terms of the Settlement. If the Settlement Agreement is terminated, the Settlement will also be terminated, and the Action will proceed as if the Settlement had not been reached.

**10. Can I exclude myself from the Settlement?**

You do not have the option to exclude yourself from the Settlement. The Settlement Class was preliminarily certified under Federal Rule of Civil Procedure 23(b)(1) and (2) as a non-"opt-out" class because of the way ERISA operates. Breach of fiduciary duty claims under ERISA must be brought by participants on behalf of ERISA plans, and any judgment or resolution of such claims necessarily applies to all plan participants and beneficiaries. Thus, it is not possible for participants or beneficiaries to exclude themselves from the benefits of the Settlement. As a Settlement Class member, you will be bound by any judgments or orders that are entered in the Action for all claims that were asserted in the Action or otherwise included in the release under the Settlement. Although you cannot opt out of the Settlement, you can object to the Settlement and ask the Court not to approve it. See Answer to Question 13 below.

The above description of the operation of the Settlement is only a summary. The governing provisions are set forth in the Settlement Agreement (including its exhibits), which may be obtained at www.merrilllynchERISAsettlement.com.

## THE LAWYERS REPRESENTING YOU

**11. Do I have a lawyer in the case?**

The Court has appointed the law firms of Keller Rohrback L.L.P. and Cohen Milstein Sellers & Toll, PLLC as Co-Lead Counsel for the Named Plaintiffs and the Settlement Class. You will not be charged directly by these lawyers. If you want to be represented by your own lawyer, you may hire one at your own expense.

**12. How will the lawyers be paid?**

Plaintiffs' Co-Lead Counsel will apply for an award of attorneys' fees and expenses on behalf of all Plaintiffs' counsel. The application for attorneys' fees will not exceed $20,625,000 (27.5% of the Gross Settlement Fund), plus reimbursement of expenses. Any award of fees and additional expenses will be paid from the Settlement Fund prior to allocation and payment to the Settlement Class. The written application for fees and expenses, together with the application for case contribution payments to the Named Plaintiffs will be filed by June 26, 2009, and the Court will consider this application at the Fairness Hearing. A copy of the application will be available at www.merrilllynchERISAsettlement.com or by a requesting a copy from Plaintiffs' Co-Lead Counsel.

To date, neither Plaintiffs' Co-Lead Counsel nor any additional Plaintiffs' counsel have received any payment for their services in prosecuting this Action on behalf of the Settlement Class, nor have counsel been reimbursed for their out-of-pocket expenses. The fee requested by Plaintiffs' Counsel would compensate all of Plaintiffs' counsel for their efforts in achieving the Settlement for the benefit of the Settlement Class and for their risk in undertaking this representation on a contingency basis. The Court will determine the actual amount of the award.

**OBJECTIONS**

**13. How do I tell the Court if I don't like the Settlement?**

Any member of the Settlement Class may appear at the Fairness Hearing and explain why they think the Settlement of the Action against the Defendants as embodied in the Settlement Agreement should not be approved as fair, reasonable and adequate and why a judgment should not be entered thereon, why the attorneys' fees and expenses should not be awarded, in whole or in part, or why the Named Plaintiffs should not be awarded a case contribution award, in whole or in part[1] provided, however, that no member of the Settlement Class shall be heard or entitled to contest these matters unless such Settlement Class member has filed with the Court written objections (which state all supporting bases and reasons for the objection, set forth proof of their membership in the Settlement Class, clearly identify any and all witnesses, documents and other evidence of any kind that are to be presented at the Fairness Hearing in connection with such objections, and further describe the substance of any testimony to be given by themselves as well as by any supporting witnesses).

To object, you must send a letter or other written statement saying that you object to the Settlement, the attorneys' fee award, and/or the case contribution awards in *In re Merrill Lynch ERISA Litigation*, Master File No. 07-cv-10268 (JSR)(DFE). Be sure to include your name, address, telephone number, signature, and a full explanation of all reasons you object to the Settlement. **Your written objection must be filed with the Court, and served upon the counsel listed below by no later than July 6, 2009:**

**File with the Clerk of the Court:**

Clerk of the Court
United States District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007-1312
Re: Case No. 07-cv-10268 (JSR)(DFE)

[1] The case contribution award is that amount awarded by the Court in recognition of each of the Named Plaintiffs' assistance in prosecuting this Action. The precise amount of the award, if any, shall be determined by the Court at the Fairness Hearing. However, in no event will Plaintiffs' Counsel request more than $5,000.00 per Named Plaintiff.

**And, by the same date, serve copies of all such papers by mail and fax to each of the following:**

**ERISA PLAINTIFFS' CO-LEAD COUNSEL:**

Lynn Lincoln Sarko
Gary A. Gotto
Derek Loeser
Erin Riley
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Fax: (206) 623-3384

Marc I. Machiz
Michelle C. Yau
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Avenue NW
Suite 500, West Tower
Washington, D.C. 20005
Fax: (202) 408-4699

**COUNSEL FOR DEFENDANTS:**

Jay B. Kasner
Scott D. Musoff
SKADDEN, ARPS, MEAGHER & FLOM LLP
Four Times Square
New York, NY 10036
Fax: (212) 735-2000

Adam S. Hakki
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, NY 10022
Fax: (212) 848-7179

**UNLESS OTHERWISE ORDERED BY THE COURT, ANY SETTLEMENT CLASS MEMBER WHO DOES NOT OBJECT IN THE MANNER DESCRIBED HEREIN WILL BE DEEMED TO HAVE WAIVED ANY OBJECTION AND SHALL BE FOREVER FORECLOSED FROM MAKING ANY OBJECTION TO THE PROPOSED SETTLEMENT AND THE APPLICATION FOR ATTORNEYS' FEES AND EXPENSES AND CASE CONTRIBUTION AWARDS.**

## THE COURT'S FAIRNESS HEARING

### 14. When and where will the Court decide whether to approve the Settlement?

The Court will hold a Fairness Hearing at 4:00 p.m. on July 27, 2009, at the United States District Court for the Southern District of New York, Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, New York 10007-1312.

**IF YOU DO NOT WISH TO OBJECT TO THE PROPOSED SETTLEMENT OR THE APPLICATION FOR ATTORNEYS' FEES AND EXPENSES AND CASE CONTRIBUTION AWARDS, YOU NEED NOT ATTEND THE FAIRNESS HEARING.**

At the hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them. After the Fairness Hearing, the Court will decide whether to approve the Settlement and certify the Settlement Class. The Court will also consider the motions for attorneys' fees and expenses and case contribution awards to the Named Plaintiffs, as well as the proposed Plan of Allocation. We do not know how long these decisions will take.

### 15. Do I have to come to the hearing?

Plaintiffs' Co-Lead Counsel will answer questions Judge Rakoff may have at the Fairness Hearing. You are welcome to come at your own expense. If you send an objection, you do not have to come to Court to talk about it. As long as you mailed your written objection on time, it will be before the Court when the Court considers whether to approve the Settlement as fair, reasonable and adequate. You may also have your own lawyer attend the Fairness Hearing at your expense, but such attendance is not mandatory.

**16. May I speak at the hearing?**

If you are a member of the Settlement Class and you have filed a timely objection, if you wish to speak, present evidence or present testimony at the Fairness Hearing, you must state in your objection your intention to do so, and must identify any witnesses you intend to call or evidence you intend to present.

The Fairness Hearing may be rescheduled by the Court without further notice to the Class. If you wish to attend the Fairness Hearing, you should confirm the date and time with Plaintiffs' Co-Lead Counsel.

## IF YOU DO NOTHING

**17. What happens if I do nothing at all?**

If you do nothing and you are a Settlement Class member, you will participate in the Settlement as described above in this Notice if the Settlement is approved, and you will be deemed to have released all Settled Claims against any of the Released Parties.

## GETTING MORE INFORMATION

**18. How do I get more information?**

This Notice summarizes the proposed Settlement. Full details of the Settlement are set forth in the Settlement Agreement. You may obtain a copy of the Settlement Agreement by making a written request to a member of Plaintiffs' Co-Lead Counsel listed on Page 10. Copies of the Settlement Agreement as well as the the Preliminary Approval Order may also be viewed at www.merrilllynchERISAsettlement.com.

Plaintiffs' Counsel have established a toll-free phone number to receive your comments and questions, (800) 255-0894, and may also be contacted via email at info@merrilllynchERISASettlement.com.

DATED: April 6, 2009                                                    By Order of the Court

EXH. A

# Exhibit B

EXHIBIT A

SEC. B PG. 10
EXH. A

NYT The New York Times
620 8TH AVENUE • NEW YORK, NY 10018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE MERRILL LYNCH & CO., INC. SECURITIES, DERIVATIVE AND ERISA LITIGATION<br>This Document Relates To: ERISA ACTION | Master File No. 07-cv-9633 (JSR)(DFE)<br>Case No. 07-cv-10268 (JSR)(DFE) |

**TO ALL MEMBERS OF THE FOLLOWING CLASS:**
**ALL CURRENT OR FORMER PARTICIPANTS IN OR BENEFICIARIES OF THE MERRILL LYNCH & CO., INC. 401(K) SAVINGS AND INVESTMENT PLAN, THE MERRILL LYNCH & CO., INC. RETIREMENT ACCUMULATION PLAN OR THE MERRILL LYNCH & CO., INC. EMPLOYEE STOCK OWNERSHIP PLAN (WHICH ARE REFERRED TO HEREIN INDIVIDUALLY AS A "PLAN" AND COLLECTIVELY AS THE "PLANS"), WHOSE INDIVIDUAL PLAN ACCOUNT(S) INCLUDED INVESTMENTS IN MERRILL LYNCH & CO., INC. ("MERRILL LYNCH") STOCK AT ANY TIME DURING THE PERIOD SEPTEMBER 30, 2006 AND DECEMBER 31, 2008, INCLUSIVE (THE "CLASS PERIOD") AND ALL BENEFICIARIES, ALTERNATE PAYEES, REPRESENTATIVES, AND SUCCESSORS-IN-INTEREST OF ANY SUCH PERSON (COLLECTIVELY, THE "SETTLEMENT CLASS").**

**PLEASE READ THIS NOTICE CAREFULLY.**
**THIS IS A COURT-ORDERED LEGAL NOTICE.**
**THIS IS NOT A SOLICITATION.**

A proposed Settlement has been preliminarily approved by a federal court in the above-captioned class action lawsuit alleging breaches of fiduciary duties under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), in connection with the three employee benefit Plans listed above. The terms of the Settlement are contained in a Stipulation and Agreement of Settlement – ERISA Action ("Settlement Agreement"), dated February 27, 2009, a copy of which is available at www.merrilllynchERISAsettlement.com or by contacting Plaintiffs'. Co-Lead Counsel identified below. Capitalized terms used in this Publication Notice and not defined herein have the meanings assigned to them in the Settlement Agreement.

The proposed Settlement provides for a payment of $75 million to settle all claims against all Defendants. Under the proposed Settlement, the proceeds, net of expenses described in the Settlement Agreement (which include notice and administrative expenses, Court-approved attorneys' fees and expenses and Named Plaintiff case contribution awards, taxes and other costs related to the Settlement Fund administration) will be paid to the Plans and allocated to the Plan account(s) of members of the Settlement Class whose Plan account(s) suffered losses as the result of investing in Merrill Lynch stock during the Class Period in accordance with a Plan of Allocation as approved by the Court.

If you qualify, you will receive such an allocation. You do not need to submit a claim or take any other action unless you wish to object to the Settlement. The United States District Court for the Southern District of New York (the "Court") authorized this Notice.

**THE COURT WILL HOLD A HEARING AT 4:00 P.M. ON July 27, 2009 TO DECIDE WHETHER TO APPROVE THE SETTLEMENT.**

**ADDITIONAL INFORMATION CONCERNING THE PROPOSED SETTLEMENT, INCLUDING THE NOTICE OF CLASS ACTION SETTLEMENT THAT HAS BEEN MAILED TO SETTLEMENT CLASS MEMBERS THAT EXPLAINS HOW CLASS MEMBERS CAN OBJECT TO THE SETTLEMENT AND THE SETTLEMENT AGREEMENT IS AVAILABLE AT www.merrilllynchERISAsettlement.com. IN ADDITION, CO-LEAD COUNSEL FOR THE PLAINTIFFS HAVE ESTABLISHED A TOLL-FREE NUMBER, (800) 255-0894, AND EMAIL ADDRESS, info@merrilllynchERISAsettlement.com, TO ASSIST IN ANSWERING QUESTIONS REGARDING THE SETTLEMENT. YOU MAY ALSO CONTACT PLAINTIFFS' CO-LEAD COUNSEL AT:**

Lynn Lincoln Sarko
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Fax: (206) 623-3384

Marc I. Machiz
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Avenue NW
Suite 500, West Tower
Washington, D.C. 20005
Fax: (202) 408-4699

Please direct questions to Co-Lead Counsel, and not to the Court.

DATED: April 6, 2009 By Order of the Court

**CERTIFICATION OF PUBLICATION**

April 16 20 09

I, Cathy Zika, in my capacity as a Principal Clerk of the Publisher of The New York Times a daily newspaper of general circulation printed and published in the City, County and State of New York, hereby certify that the advertisement annexed hereto was published in the editions of The New York Times on the following date or dates, to wit on

April 6 20 09

Cathy Zika

Approved: Maria Pannullo

THIS CERTIFICATION NOT VALID WITHOUT NYT RAISED SEAL

EXHIBIT A





EXH. A

until May 29, but expectations, nudged along by the studio, which has been screening footage — are already effusive.

"Sophisticated, mature, poignant," wrote Blue Sky Disney, a blog that chronicles everything Pixar. The Cannes Film Festival is so excited about "Up," which will be released in 3-D, that it slotted the film on its prestigious opening night, a huge promotional platform that has never before gone to an animated film or a 3-D one.

Adjusted for inflation, Pixar's films have generated a combined

**Disney says that Pixar has earned the benefit of the doubt.**

$2.85 billion at North American theaters, a spectacular showing. "Finding Nemo" in 2003 was the high point, selling $405.6 million in tickets.

Pixar's last two films, "Wall-E" and "Ratatouille," have been the studio's two worst performers, delivering sales of $224 million and $216 million respectively, according to Box Office Mojo, a tracking service. Attendance for Pixar films has also dropped sharply over the years, suggesting that ticket price inflation helped prop up overall sales for "Wall-E" and "Ratatouille."

Retailers, meanwhile, see slim merchandising possibilities for "Up." Indeed, the film seems likely to generate less licensing revenue than "Ratatouille," until now the weakest Pixar entry in this area. ("Cars" wears the merchandising crown, with sales of more than $5 billion.)

Target and Wal-Mart say they plan to carry some items, and Disney Stores will offer "Up"-related products, but even that will be on a limited basis, according to analysts.

Disney sees the worry as unfair and tiresome given Pixar's track record.

With "Ratatouille," analysts fretted about whether moviegoers would go to see a movie about a rat in the kitchen. They did. With "Wall-E," people feared the lack of dialogue would bore children. It did not.

So, Disney says, hasn't Pixar earned the benefit of the doubt?

"Once again, trying to go after a premise that is far-fetched," a written response from Disney read in part. The company noted that there is a child character in the film — a portly 8-year-old who stows away on the septuagenarian's porch — and pointed to positive comments on blogs like Pixar Planet and Cinema Is Dope, which called the movie "entertainingly buoyant."

Disney marketers had hoped to curtail the it's-not-commercial reaction to "Up" by breaking with past practice and widely screening unfinished footage of the film. Inside the studio, executives are bullish on it, particularly because focus groups have responded favorably. The company added that it does not expect every Pixar movie to become a franchise.

After "Up," the overtly commercial "Toy Story 3" arrives in 2010 and "Cars 2" in 2011, and there is much talk that a sequel to "Monsters Inc." is in the works.

Perhaps Wall Street would not care so much if Pixar seemed to care a little more. The co-director of "Up," Pete Docter — who also directed "Monsters Inc." — said in a recent question and answer session with reporters that the film's commercial prospects never crossed his mind. "We make these films for ourselves," he said. "We're kind of selfish that way."

John Lasseter, a co-founder of Pixar and now Disney's chief creative officer, routinely says in interviews that marketability is not a factor in decisions about what projects to pursue. Instead of ideas that feel contemporary, he aims for stories that are rooted in the ages.

"Quality is the best business plan" is one of Mr. Lasseter's favorite lines.

A commercial juggernaut or not, "Up" has struck many early viewers as creatively stunning. The story focuses on Carl (voiced by Ed Asner), a prune-popping balloon salesman who, after the death of his wife, sets out to see the wilds of South America.

His young companion, Russell (voiced by Jordan Nagai), is a "Wilderness Explorer" working on his last merit badge, "assisting the elderly." An exotic bird joins the excursion, which encounters a hilarious squad of talking dogs.

The animation is heavily stylized. Carl is not realistic looking, for instance, but has square features: fingertips, face, liver spots. The color palette is notable for its turquoise and magenta.

Nothing involving the picture was rushed — Pixar spent four years on it — and, apparently, no expense was spared. Mr. Docter and some of his colleagues flew to Venezuela for a three-day helicopter and Jeep tour to study jungle scenery; others spent time observing a rare pheasant at the Sacramento Zoo.

"We wanted more 'Dumbo' and less 'Star Wars,'" Mr. Docter said. "In certain parts, it's more of a feeling we're going after than linear storytelling."

PHOTOGRAPHS BY PIXAR ANIMATION STUDIOS AND WALT DISNEY PICTURES

"Finding Nemo," above, a blockbuster for Pixar, sold $405.6 million in tickets. The Oscar-winning "Wall-E" made less money.

---

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| IN RE MERRILL LYNCH & CO., INC. SECURITIES, DERIVATIVE AND ERISA LITIGATION<br>This Document Relates To: ERISA ACTION | Master File No. 07-cv-9633 (JSR)(DFE)<br>Case No. 07-cv-10268 (JSR)(DFE) |
|---|---|

TO ALL MEMBERS OF THE FOLLOWING CLASS: ALL CURRENT OR FORMER PARTICIPANTS IN OR BENEFICIARIES OF THE MERRILL LYNCH & CO., INC. 401(K) SAVINGS AND INVESTMENT PLAN, THE MERRILL LYNCH & CO., INC. RETIREMENT ACCUMULATION PLAN OR THE MERRILL LYNCH & CO., INC. EMPLOYEE STOCK OWNERSHIP PLAN (WHICH ARE REFERRED TO HEREIN INDIVIDUALLY AS A "PLAN" AND COLLECTIVELY AS THE "PLANS"), WHOSE INDIVIDUAL PLAN ACCOUNT(S) INCLUDED INVESTMENTS IN MERRILL LYNCH & CO., INC. ("MERRILL LYNCH") STOCK AT ANY TIME DURING THE PERIOD SEPTEMBER 30, 2006 AND DECEMBER 31, 2008, INCLUSIVE (THE "CLASS PERIOD"), AND ALL BENEFICIARIES, ALTERNATE PAYEES, REPRESENTATIVES, AND SUCCESSORS-IN-INTEREST OF ANY SUCH PERSON (COLLECTIVELY, THE "SETTLEMENT CLASS")

PLEASE READ THIS NOTICE CAREFULLY.
THIS IS A COURT-ORDERED LEGAL NOTICE.
THIS IS NOT A SOLICITATION.

A proposed Settlement has been preliminarily approved by a federal court in the above-captioned class action lawsuit alleging breaches of fiduciary duties under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), in connection with the three employee benefit Plans listed above. The terms of the Settlement are contained in a Stipulation and Agreement of Settlement – ERISA Action ("Settlement Agreement"), dated February 27, 2009, a copy of which is available at www.merrilllynchERISAsettlement.com or by contacting Plaintiffs' Co-Lead Counsel identified below. Capitalized terms used in this Publication Notice and not defined herein have the meanings assigned to them in the Settlement Agreement.

The proposed Settlement provides for a payment of $75 million to settle all claims against all Defendants. Under the proposed Settlement, the proceeds, net of expenses described in the Settlement Agreement (which include notice and administrative expenses, Court-approved attorneys' fees and expenses and Named Plaintiff case contribution awards, taxes and other costs related to the Settlement Fund administration) will be paid to the Plans and allocated to the Plan account(s) of members of the Settlement Class whose Plan account(s) suffered losses as the result of investing in Merrill Lynch stock during the Class Period in accordance with a Plan of Allocation as approved by the Court.

If you qualify, you will receive such an allocation. You do not need to submit a claim or take any other action unless you wish to object to the Settlement. The United States District Court for the Southern District of New York (the "Court") authorized this Notice.

THE COURT WILL HOLD A HEARING AT 4:00 P.M. ON July 27, 2009 TO DECIDE WHETHER TO APPROVE THE SETTLEMENT.

ADDITIONAL INFORMATION CONCERNING THE PROPOSED SETTLEMENT, INCLUDING THE NOTICE OF CLASS ACTION SETTLEMENT THAT HAS BEEN MAILED TO SETTLEMENT CLASS MEMBERS THAT EXPLAINS HOW CLASS MEMBERS CAN OBJECT TO THE SETTLEMENT AND THE SETTLEMENT AGREEMENT, IS AVAILABLE AT www.merrilllynchERISAsettlement.com. IN ADDITION, CO-LEAD COUNSEL FOR THE PLAINTIFFS HAVE ESTABLISHED A TOLL-FREE NUMBER, (800) 254-8894, AND EMAIL ADDRESS info@merrilllynchERISAsettlement.com, TO ASSIST IN ANSWERING QUESTIONS REGARDING THE SETTLEMENT. YOU MAY ALSO CONTACT PLAINTIFFS' CO-LEAD COUNSEL AT:

| | |
|---|---|
| Lynn Lincoln Sarko | Marc I. Machiz |
| KELLER ROHRBACK L.L.P. | COHEN MILSTEIN SELLERS & TOLL PLLC |
| 1201 Third Avenue, Suite 3200 | 1100 New York Avenue NW |
| Seattle, WA 98101 | Suite 500, West Tower |
| Fax: (206) 623-3384 | Washington, D.C. 20005 |
| | Fax: (202) 408-4699 |

Please direct questions to Co-Lead Counsel and not to the Court.

DATED: April 6, 2009 — By Order of the Court

COMMERCIAL REAL ESTATE
BUSINESS OPPORTUNITIES

---

# Some Investors Revile Plan to Limit Short-Selling of Stocks

From First Business Page

was put in place in 1938 in response to the market turbulence of the Great Depression. It was repealed two years ago. The uptick rule was more restrictive for short-sellers trading stocks listed on the New York Stock Exchange than those trading on Nasdaq. But one of the new proposals could change that and make it more onerous for short-sellers on all exchanges.

The S.E.C. also plans to announce that it is considering a proposal by the major exchanges that would impose restrictions on short-selling only after a stock suffers a daily drop by a specified percentage.

Last year the commission imposed a series of temporary and hastily drafted restraints on short-sales after heavy pressure from Wall Street and the Treasury secretary at the time, Henry M. Paulson Jr.

The move this week follows the decision last Thursday by the Financial Accounting Standards Board to give banks greater discretion in putting a value on their sharply declining mortgage securities.

The standards board initially resisted making changes to the so-called mark-to-market rules, but quickly relented after its chairman, Robert H. Herz, came under withering attack by lawmakers.

The slumping financial markets have been recovering steadily in the last month for many reasons, including the regulatory and legislative decisions in Washington. The Dow Jones industrial average closed on Friday above 8,000, a major gain from the 6,500 level of four weeks ago.

Examining short-selling practices has been a high priority for the S.E.C.'s new chairwoman, Mary L. Schapiro. She said in a recent interview that even before she arrived at the commission, she had heard from thousands of investors and others that the elimination of earlier restrictions had led to greater market volatility.

"This is a tough issue and that's why we're going to be very deliberative," she said last Friday. "You won't see emergency orders or midnight proclamations. We want to go through the regular rule-making process and understand whether there is a nexus between removing the earlier restrictions and undermining investor confidence."

There has also been growing political pressure for the commission to act.

A bipartisan group of six senators, led by Senator Edward E. Kaufman, Democrat of Delaware, has demanded tighter restrictions over short-sellers. Mr. Kaufman, who took the seat of Vice President Joseph R. Biden Jr., made short-selling restrictions the first piece of legislation he introduced.

But supporters of unfettered short-sale trading have said that the practice is a convenient scapegoat and that new restrictions are simply punishing traders who have legitimate reasons for believing that some companies have bad or overvalued stock prices.

They have also said that the changes in the accounting rules and the proposals to restrict short-sellers threaten to undermine the independence of the regulators and show their willingness to buckle under heavy political pressure.

"It's unsettling that Washington continues to focus its efforts on issues that have nothing to do with causing the crisis such as short-selling or stricter and more transparent accounting measures," said James Chanos, president and founder of Kynikos Associates, a hedge fund company that specializes in short-selling. "If anything, both practices should be encouraged."

***A disputed move to rein in traders betting a share price will fall.***

Officials said that one of the proposals to be announced on Wednesday would be based on the best bid price of a share of stock and the other on the last price. The different approaches reflect the differences between the Nasdaq trading rules, a dealer's market where stocks are traded electronically, arranged by hundreds of market makers, and the New York Stock Exchange, a modified auction market, where the price is set centrally.

The purpose of the old rule was to prevent short-sellers from accelerating a declining market. Under that rule, short-sellers had to execute their initial trade at or above the last trade as long as that trade was higher than the previous transaction for companies listed on the New York Exchange.

But for Nasdaq companies, short-sellers could sell at any price so long as the trade was executed after the "best bid" price of the share had been raised from the previous best bid. As a result, the uptick rule had a far more limited effect for short-sellers interested in trading the stock of Nasdaq-listed companies.

In recent days, the commission has received comments about the plans to curtail short-selling. In an about-face, the operator of the New York Stock Exchange, NYSE Euronext, joined by several other large and small exchange operators, asked the commission to reinstate a version of the old uptick rule. The exchanges said it was necessary to curb abusive short-selling that has harmed investors and listed companies.

But in proposing to repeal the old rules two years ago, the New York exchange wrote that short-sale price restrictions have become not only unnecessary, but their continued maintenance will serve only to interfere with the mechanisms of an efficient market.

Larry Leibowitz, an executive vice president at the N.Y.S.E., said the exchange's new view was the result of its experience over the last year.

"We have seen conditions that we never saw before," Mr. Leibowitz said. But opponents of the restrictions said that the temporary rules from last year might have briefly halted some stock declines, but that they were counterproductive.

"When you have these sorts of restrictions you may have a little spark in the market," said Eric W. Hess, general counsel of Direct Edge, which claims to be the third-largest stock market in the United States. "But that perception quickly evaporates."

---

# *Treasury Chief Says He's Open To Ousting Heads of Frail Banks*

By Bloomberg News

Treasury Secretary Timothy F. Geithner says he is prepared to ... tional Group, Fannie Mae and Freddie Mac had been removed after it became clear the compa...

Treasury Secretary Timothy F. Geithner appeared Sunday on "Face the Nation" on CBS.

force, Congress's legislation that limits pay at companies receiving government loans, Mr. Geithner said the Obama admi...

EXHIBIT A

EXH. A

# Exhibit C

EXHIBIT A



April 06, 2009 09:00 AM Eastern Daylight Time

**Keller Rohrback L.L.P. and Cohen Milstein Sellers & Toll PLLC Are Issuing the Following Statement Regarding the Merrill Lynch & Co., Inc. Securities, Derivative and ERISA Litigation**

NEW YORK--(BUSINESS WIRE)--Keller Rohrback L.L.P. and Cohen Milstein Sellers & Toll PLLC:

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| IN RE MERRILL LYNCH & CO., INC. SECURITIES, DERIVATIVE AND ERISA LITIGATION, | ) | Master File No. 07-cv-9633 (JSR)(DFE) |
| This Document Relates To: ERISA ACTION | ) | Case No. 07-cv-10268 (JSR)(DFE) |

**TO ALL MEMBERS OF THE FOLLOWING CLASS:**

**ALL CURRENT OR FORMER PARTICIPANTS IN OR BENEFICIARIES OF THE MERRILL LYNCH & CO., INC. 401(K) SAVINGS AND INVESTMENT PLAN, THE MERRILL LYNCH & CO., INC. RETIREMENT ACCUMULATION PLAN OR THE MERRILL LYNCH & CO., INC. EMPLOYEE STOCK OWNERSHIP PLAN (WHICH ARE REFERRED TO HEREIN INDIVIDUALLY AS A "PLAN" AND COLLECTIVELY AS THE "PLANS"), WHOSE INDIVIDUAL PLAN ACCOUNT(S) INCLUDED INVESTMENTS IN MERRILL LYNCH & CO., INC. ("MERRILL LYNCH") STOCK AT ANY TIME DURING THE PERIOD SEPTEMBER 30, 2006 AND DECEMBER 31, 2008, INCLUSIVE (THE "CLASS PERIOD") AND ALL BENEFICIARIES, ALTERNATE PAYEES, REPRESENTATIVES, AND SUCCESSORS-IN-INTEREST OF ANY SUCH PERSON (COLLECTIVELY, THE "SETTLEMENT CLASS").**

**PLEASE READ THIS NOTICE CAREFULLY.
THIS IS A COURT-ORDERED LEGAL NOTICE.
THIS IS NOT A SOLICITATION.**

A proposed Settlement has been preliminarily approved by a federal court in the above-captioned class action lawsuit alleging breaches of fiduciary duties under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), in connection with the three employee benefit Plans listed above. The terms of the Settlement are contained in a Stipulation and Agreement of Settlement – ERISA Action ("Settlement Agreement"), dated February 27, 2009, a copy of which is available at www.merrilllynchERISAsettlement.com or by contacting Plaintiffs' Co-Lead Counsel identified below. Capitalized terms used in this Publication Notice and not defined herein have the meanings assigned to them in the Settlement Agreement.

The proposed Settlement provides for a payment of $75 million to settle all claims against all Defendants. Under the proposed Settlement, the proceeds, net of expenses described in the Settlement Agreement (which include notice and administrative expenses, Court-approved attorneys' fees and expenses and Named Plaintiff case contribution awards, taxes and other costs related to the Settlement Fund administration) will be paid to the Plans and allocated to the Plan account(s) of members of the Settlement

Keller Rohrback L.L.P. and Cohen Milstein Sellers & Toll PLLC A... http://www.businesswire.com/portal/site/home/permalink/?ndmVie... EXH. A

Class whose Plan account(s) suffered losses as the result of investing in Merrill Lynch stock during the Class Period in accordance with a Plan of Allocation as approved by the Court.

If you qualify, you will receive such an allocation. You do not need to submit a claim or take any other action unless you wish to object to the Settlement. The United States District Court for the Southern District of New York (the "Court") authorized this Notice.

**THE COURT WILL HOLD A HEARING AT 4:00 P.M. ON July 27, 2009 TO DECIDE WHETHER TO APPROVE THE SETTLEMENT.**

**ADDITIONAL INFORMATION CONCERNING THE PROPOSED SETTLEMENT, INCLUDING THE NOTICE OF CLASS ACTION SETTLEMENT THAT HAS BEEN MAILED TO SETTLEMENT CLASS MEMBERS THAT EXPLAINS HOW CLASS MEMBERS CAN OBJECT TO THE SETTLEMENT AND THE SETTLEMENT AGREEMENT IS AVAILABLE AT www.merrilllynchERISAsettlement.com. IN ADDITION, CO-LEAD COUNSEL FOR THE PLAINTIFFS HAVE ESTABLISHED A TOLL-FREE NUMBER, (800) 255-0894, AND EMAIL ADDRESS, info@merrilllynchERISAsettlement.com, TO ASSIST IN ANSWERING QUESTIONS REGARDING THE SETTLEMENT. YOU MAY ALSO CONTACT PLAINTIFFS' CO-LEAD COUNSEL AT:**

Lynn Lincoln Sarko
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Fax: (206) 623-3384

Marc I. Machiz
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Avenue NW
Suite 500, West Tower
Washington, D.C. 20005
Fax: (202) 408-4699

Please direct questions to Co-Lead Counsel, and not to the Court.
DATED: April 6, 2009
By Order of the Court

**Contacts**

Attorneys:
Keller Rohrback L.L.P.
Lynn L. Sarko
206-623-1900
www.erisafraud.com
or
Cohen Milstein Sellers & Toll PLLC
Marc I. Machiz
267-773-4680
www.cohenmilstein.com

**Permalink:** http://www.businesswire.com/news/home/20090406005192/en

Business Wire

2 of 2 4/6/09 9:08 AM
EXHIBIT A