1  JAMES F. CLAPP (145814)
   jclapp@sdlaw.com
2  MARITA MURPHY LAUINGER (199242)
   mlauinger@sdlaw.com
3  DOSTART CLAPP GORDON & COVENEY, LLP
   4370 La Jolla Village Drive, Suite 970
4  San Diego, California  92122-1253
   Tel:  858-623-4200
5  Fax: 858-623-4299

6  JEFFREY G. SMITH (133113)
   smith@whafh.com
7  WOLF HALDENSTEIN ADLER FREEMAN & HERZ, LLP
   270 Madison Avenue
8  New York, New York 10016
   Tel:  212-545-4600
9  Fax: 212-545-4653

10 Attorneys for Plaintiffs

11              UNITED STATES DISTRICT COURT

12            SOUTHERN DISTRICT OF CALIFORNIA

13

14 TREVOR CALLAN, TIMOTHY CALLAN,        CASE NO. 3:09-cv-00566-BEN (BGS)
   and RYAN CALLAN, individually and on
15 behalf of all others similarly situated,   **PLAINTIFFS' OPPOSITION TO
                                          DEFENDANTS' MOTION FOR
16            Plaintiffs,                  JUDGMENT ON THE PLEADINGS OR,
                                          IN THE ALTERNATIVE, FOR
17 vs.                                    SUMMARY JUDGMENT OR PARTIAL
                                          SUMMARY JUDGMENT**
18 MERRILL LYNCH & CO., INC.; MERRILL
   LYNCH, PIERCE, FENNER & SMITH INC.;   DATE:   July 26, 2010
19 CAROL T. CHRIST; ARMANDO M.           TIME:   10:30 a.m.
   CODINA; VIRGIS W. COLBERT; JILL K.    CTRM.: 3
20 CONWAY; ALBERTO CRIBIORE; JOHN D.
   FINNEGAN; JUDITH MAYHEW JONAS;        Hon. Roger T. Benitez
21 HEINZ-JOACHIM NEUBÜRGER; DAVID
   K. NEWBIGGING; E. STANLEY O'NEAL;
22 AULANA L. PETERS; JOSEPH W.
   PRUEHER; ANN N. REESE; CHARLES O.
23 ROSSOTTI; and JOHN A. THAIN,

24            Defendants.

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION........................................................................................ 1

II.     BACKGROUND......................................................................................... 3

        A.      Factual Background.................................................................... 3

        B.      Procedural Background .............................................................. 4

III.    THE RELEASE IN THE NEW YORK ERISA ACTION DOES NOT BAR
        PLAINTIFFS' WEALTHBUILDER VESTING CLAIM ................................ 6

IV.     MERRILL LYNCH IS NOT ENTITLED TO SUMMARY JUDGMENT AS TO
        PLAINTIFFS' WEALTHBUILDER VESTING CLAIM ................................ 8

        A.      Based on the Record Before the Court, There Are Triable Issues of Fact. ............... 8

        B.      Alternatively, Plaintiffs Request a Brief Continuance of Merrill Lynch's
                Motion Under Rule 56(f) to Permit Plaintiffs to Complete Discovery as to
                the WealthBuilder Vesting Claim. ................................................ 12

V.      MERRILL LYNCH'S MOTION AS TO PLAINTIFFS' FIRST AND SECOND
        CAUSES OF ACTION SHOULD ALSO BE DENIED.................................... 14

        A.      The Forfeiture Provisions in the FACAAP, WealthBuilder, and Growth
                Awards Plans Violate California Business & Professions Code section
                16600. ........................................................................................ 14

        B.      Despite *Schachter*, Plaintiffs Have Stated a Claim for Unpaid Wages................. 17

VI.     CONCLUSION ....................................................................................... 19

i

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT          3:09-cv-00566-BEN (BGS)
ON THE PLEADINGS OR FOR SUMMARY JUDGMENT

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page</u>

3

<u>CASES</u>

4

<u>Alexander v. Brigham & Women's Physicians Org., Inc.</u>,
467 F.Supp.2d 136 (D. Mass. 2006) ...................................................................... 8, 12

5

<u>Alliance Payment Systems, Inc. v. Walczer</u>
6
152 Cal. App. 4th 620 (2007)................................................................................ 15

7
<u>Anderson v. Liberty Lobby, Inc.</u>
477 U.S. 242 (1986) ................................................................................................ 13

8
<u>Bakri v. Venture Mfg. Co.</u>
9
473 F.3d 677 (6th Cir. 2007)................................................................................... 9

10
<u>Brecher v. Citigroup Global Markets, Inc.</u>
2010 U.S. Dist. Lexis 31458 (S.D. Cal. March 29, 2010) ..................................... 17

11

<u>Carrabba v. Randalls Food Markets, Inc.</u>
12
38 F.Supp.2d 468 (N.D. Tex. 1999) ....................................................................... 8

13
<u>Chamberlain v. Augustine</u>
172 Cal. 285 (1916).............................................................................................. 14,16

14
<u>Class Plaintiffs v. City of Seattle</u>
15
 955 F.2d 1268 (9th Cir. 1992)................................................................................ 7

16
<u>Cogan v. Phoenix Life Ins. Co.</u>
310 F.3d 238 (1st Cir. 2002) .................................................................................. 11

17

<u>Cortez v. Purolator Air Filtration Prods. Co.</u>
18
23 Cal. 4th 163 (2000)............................................................................................. 17

19
<u>Daft v. Advest, Inc.</u>
2007 U.S. Dist. Lexis 99133 (N.D. Ohio Nov. 13, 2007)...................................... 8, 10, 12

20

<u>Darden v. National Mutual Insurance Co.</u>
21
717 F.Supp. 388 (E.D.N.C. 1989) .......................................................................... 9, 11

22
<u>Davis v. Jointless Fire Brick Co.</u>
300 F. 1 (9th Cir. Cal. 1924) .................................................................................. 16

23

<u>Duggan v. Hobbs</u>
24
99 F.3d 307 (9th Cir. 1996).................................................................................... 8, 10

25
<u>Ellis v. McKinnon Broadcasting Co.</u>
18 Cal.App.4th 1796 (1993)................................................................................... 18

26
<u>Frame v. Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>
27
20 Cal. App. 3d 668 ............................................................................................... 3, 14, 16

28

ii

*Frazer Exton Dev., LP v. Kemper Envtl., Ltd.*
2004 U.S. Dist. LEXIS 14602 (S.D.N.Y. July 29, 2004)..................... 7

*Gilliam v. Nevada Power Co.*
488 F.3d 1189 (9th Cir. 2007) ........................................................ 8

*Gordon Termite Control v. Terrones*
84 Cal. App. 3d 176 (1978)........................................................... 15

*Guiragoss v. Khoury*
444 F. Supp. 2d 649 (E.D. Va. 2006) ............................................ 11

*Hollingshead v. Burford Equip. Co.*
747 F. Supp. 1421 (M.D. Ala. 1990)............................................. 11

*In Re Merrill Lynch & Co., Inc. Securities, Derivative & ERISA Litigation*
Master File No. 07-cv-9633 ............................................................. 2

*In re New Valley Corporation*
89 F.3d 143 (3d Cir. 1996)............................................................ 10

*In Re: IT Group, Inc.*
305 B.R. 402 (D. Del. 2004) ......................................................... 12

*Metabolife Intn'l, Inc. v. Wornick*
264 F.3d 832 (9th Cir. 2001) ........................................................ 13

*Morris v. Harris*
127 Cal. App. 2d 476 (Cal. App. 1954) ........................................ 16

*Muggill v. Reuben H. Donnelley Corp.*
62 Cal.2d 239 (1965)............................................................. 14, 16

*Neisendorf v. Levi Strauss & Co.*
143 Cal. App. 4th 509 (2006) ....................................................... 18

*Nycal Corp. v. Inoco PLC*
949 F. Supp. 1115 (S.D.N.Y. 1997) ............................................... 7

*Pane v. RCA Corp.*
868 F.2d 631 (3d Cir. 1989) .......................................................... 9

*Prachasaisoradej v. Ralphs Grocery Co., Inc.*
42 Cal. 4th 217 (2008).................................................................. 18

*Schachter v. Citigroup, Inc.*
47 Cal. 4th 610 (2009) ............................................... 2, 3, 17, 18

*TBK Partners, Ltd. v. Western Union Corp.*
675 F.3d  456 (2nd Cir. 1982) ....................................................... 7

*Ware v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*
24 Cal. App. 3d 35 (1972)....................................................... 3, 14

iii

**<u>STATUTES</u>**

Bus. & Prof. Code section 16600 ............................................................................. 1, 2, 3

Bus. & Prof. Code section 17200 <u>et seq.</u> ................................................................... 1

Fed. R. Civ. P. 56(f) ............................................................................................... 2

I.        <u>INTRODUCTION</u>

Plaintiffs Trevor Callan, Timothy Callan and Ryan Callan allege that defendants Merrill Lynch & Co., Inc. and Merrill Lynch, Pierce, Fenner & Smith, Inc. (collectively "Merrill Lynch") unlawfully caused them to forfeit benefits under three Merrill Lynch deferred compensation plans, known as the Financial Advisor Capital Accumulation Award Plan ("FACAAP"), the Growth Award Plan, and the WealthBuilder Account Plan (collectively referred to as the "Plans"). Complaint, paras. 6-8, Docket 1.

Plaintiffs have brought five claims against Merrill Lynch: (1) recovery of unpaid wages; (2) violation of Bus. & Prof. Code sections 16600 and 17200 <u>et seq.</u>; (3) conversion; (4) breach of fiduciary duty; and (5) violation of the Employee Retirement Income Security Act ("ERISA"). Complaint, Docket 1. The fifth claim for violation of ERISA is premised on two separate violations: (a) violation of the minimum vesting standards set forth in 29 U.S.C. section 1053 (Complaint, para. 37); and (b) breach of defendants' fiduciary duties under the Plans (Complaint, paras. 38-42).

On May 26, 2010, two days <u>before</u> Merrill Lynch filed this motion, Plaintiffs offered to dismiss with prejudice their third cause of action for conversion, their fourth cause of action for breach of fiduciary duty, and their fifth cause of action for violation of ERISA – except for that portion of the ERISA claim that is premised on the WealthBuilder Plan's violation of the minimum vesting standards in 29 U.S.C. section 1053.  Plaintiffs hereby renew that offer and consent to dismissal with prejudice of those claims.

What remains in dispute in this motion are plaintiffs' first claim for recovery of unpaid wages (<u>i.e.</u>, their unpaid Plan awards); their second claim for violation of Bus. & Prof. Code sections 16600 and 17200 <u>et seq.</u> based on the unlawful forfeiture of their Plan awards; and that portion of the fifth cause of action that alleges that the WealthBuilder Plan violates the minimum vesting standards of 29 U.S.C. section 1053.  (For ease of reference, plaintiffs will refer to the remaining ERISA claim as the "WealthBuilder vesting claim.")

As discussed below, Merrill Lynch is not entitled to dismissal or summary judgment on any of these remaining claims.  <u>First</u>, the WealthBuilder vesting claim is not barred by the

1

1   settlement agreement in <u>In Re Merrill Lynch & Co., Inc. Securities, Derivative & ERISA</u>

2   <u>Litigation</u>, Master File No. 07-cv-9633 (the "New York ERISA Action").  Instead, the release

3   agreement in the New York ERISA Action only settled claims that were based on facts that were

4   alleged in that action: <u>i.e.</u>, those that were premised on the subprime mortgage meltdown.

5   Plaintiffs' WealthBuilder vesting claim was not at issue in, or settled by, the New York ERISA

6   Action.

7       <u>Second</u>, based on the evidence Merrill Lynch has presented to the Court, there are triable

8   issues of fact as to whether the WealthBuilder Plan is a "top hat" plan that is exempt from the

9   minimum vesting standards set forth in 29 U.S.C. section 1053.  These triable issues preclude

10  entry of summary judgment as to the WealthBuilder vesting claim.

11      <u>Third</u>, in the event that the Court does not find a triable issue of fact with respect to the

12  WealthBuilder vesting claim, plaintiffs respectfully request a continuance of this motion pursuant

13  to Fed. R. Civ. P. 56(f) to permit plaintiffs to complete discovery with respect to this claim.  As

14  described in detail below, 14 weeks ago, on April 5, 2010, plaintiffs served interrogatories and

15  requests for production requesting information that would allow plaintiffs to determine whether

16  the WealthBuilder Plan is a top hat plan.  Despite plaintiffs' good faith efforts to meet and confer

17  with Merrill Lynch over the past 14 weeks, Merrill Lynch has been uncooperative in responding to

18  that discovery and instead filed this motion in an effort to force plaintiffs to dismiss what appears

19  to be a meritorious WealthBuilder vesting claim.  Plaintiffs expect that they will need to file a

20  discovery motion and take at least one 30(b)(6) deposition in order to determine whether the

21  WealthBuilder Plan is a top hat plan.  Plaintiffs respectfully request a short continuance (of at

22  most 60 days) to allow them to complete the required discovery on this limited topic.

23      <u>Fourth</u>, despite the decision of the California Supreme Court in <u>Schachter v. Citigroup,</u>

24  <u>Inc.</u>, 47 Cal. 4th 610 (2009), plaintiffs' first and second claims remain viable.  There are two

25  important differences between this case and <u>Schachter</u>.  The first distinction is that plaintiffs have

26  alleged that the forfeiture of wages (<u>i.e.</u>, Plan benefits) was illegal under Bus. & Prof. Code

27  section 16600 because it was triggered by plaintiffs' act of competing against Merrill Lynch.

28  Complaint, para. 21. The plaintiffs in <u>Schachter</u> did not argue, nor did the <u>Schachter</u> court

2

1   consider, the effect of an illegal restrictive covenant on the vesting of wages or deferred

2   compensation benefits.  Second, the plaintiffs in <u>Schachter</u> voluntarily enrolled in the deferred

3   compensation plan in that case (<u>Schachter</u> at 620-21), whereas the plaintiffs in this case had no

4   choice about whether a portion of their wages would be diverted into the Plans.  <u>See</u> Complaint,

5   para. 6; Declaration of Timothy Callan, filed herewith, para. 3.  Unlike the plaintiffs in <u>Schachter</u>,

6   the plaintiffs here were forced to accept an illegal restrictive covenant in order to receive their

7   benefits under the Plans and were not given the option to receive their benefits in the form of

8   additional commissions or cash.  Because of these factual differences, <u>Schachter</u> is not controlling.

9   Instead, the Court should follow such cases as <u>Frame v. Merrill Lynch, Pierce, Fenner & Smith,</u>

10  <u>Inc.</u>, 20 Cal. App. 3d 668, 673 (1971) and <u>Ware v. Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>, 24

11  Cal. App. 3d 35, 43, 45 (1972), which hold that forfeiture provisions such as those at issue here

12  are unenforceable under Bus. & Prof. Code section 16600.

13  II.      <u>BACKGROUND</u>

14          A.      <u>Factual Background</u>

15          Plaintiffs were employed by Merrill Lynch as Financial Advisors in San Diego County,

16  California.  Plaintiffs were required to accept part of their wages in the form of "awards" under the

17  FACAAP, WealthBuilder, and Growth Award Plans. Merrill Lynch represented to plaintiffs that

18  these Plans were components of plaintiffs' overall compensation package. Merrill Lynch did not

19  give plaintiffs the option of refusing to participate in the Plans and instead receive all of their

20  wages in cash. Complaint, para. 6; Trevor Callan declaration, para. 3.  Awards under the FACAAP

21  were subject to an 8-year cliff vesting schedule. (Before 2003, FACAAP awards were subject to a

22  10-year cliff vesting schedule.) Awards under the Growth Award plan were subject to a 4-year

23  cliff vesting schedule. Awards under the WealthBuilder Account Plan did not vest until the

24  participant retired from Merrill Lynch. Under each Plan, if the participant left his or her

25  employment at Merrill Lynch to work for a competitor, the participant forfeited any unvested

26  awards. Complaint, para. 7.

27          In January 2007, plaintiffs left their employment at Merrill Lynch to set up their own

28  financial advisory firm. Subsequently, plaintiffs demanded that Merrill Lynch pay plaintiffs the

3

amounts they were due under the Plans.  Merrill Lynch rejected plaintiffs' demand, claiming that plaintiffs had forfeited their awards by terminating their employment and setting up a competing firm.  Complaint, paras. 8, 21.   Plaintiffs have specifically alleged that "[t]he purpose and effect of the forfeiture provisions in the Plans is to restrain Plaintiffs and the California Class members from working for Merrill Lynch's competitors, which is a violation of Section 16600." Complaint, para. 21; Trevor Callan declaration, para. 4.  Significantly, Merrill Lynch has failed to present any admissible evidence in its motion to dispute this allegation.[1]

B.   Procedural Background

Plaintiffs filed their complaint on March 18, 2009.  Defendants Merrill Lynch, Pierce, Fenner & Smith Inc. and Merrill Lynch & Co., Inc. filed their answer to the complaint on May 4, 2009.   Plaintiffs' complaint also named eleven individual defendants referred to as the Independent Director Defendants ("Directors").  On September 29, 2009, the Court granted a joint motion to dismiss four of the Directors.  Docket 65.  The remaining Directors filed a motion to dismiss, which the Court granted in part and denied in part on January 22, 2010. Docket 79. On February 22, 2010, the Court granted a joint motion to dismiss without prejudice the remaining Directors.  Docket 86. Defendants Merrill Lynch, Pierce, Fenner & Smith, Inc. and Merrill Lynch & Co., Inc. are currently the only defendants.

Between March 19, 2009 and June 3, 2010, the Hon. William McCurine, Jr. served as the Magistrate Judge for this case.   Judge McCurine conducted several status and discovery conferences and was involved in the parties' attempts to settle this case.  Because those settlement discussions were lagging, on April 5, 2010, plaintiffs served interrogatories and requests for

---

[1]   The only "evidence" offered by Merrill Lynch on this issue is a single phrase in the Declaration of Diane Waller, paragraph 12, Docket 95-6, wherein she states: "None of the Plaintiffs were denied payments of any awards they received under the Plans on the basis of their working for a competitor of Merrill Lynch after their respective resignations ...."  Merrill Lynch has failed to prove that Ms. Waller has personal knowledge to testify about the reason why Merrill Lynch caused plaintiffs to forfeit their awards.  She does not state in her declaration that she was involved in the decision to forfeit plaintiffs' awards, nor does she describe any personal interaction with the plaintiffs.  The Court should strike paragraph 12 as lacking foundation and based on speculation.

1  production on Merrill Lynch.  Merrill Lynch failed to provide complete responses, so plaintiffs

2  scheduled a discovery motion before Judge McCurine on June 3, 2010. Docket 93. In that motion,

3  plaintiffs requested that the Court order Merrill Lynch to provide information that is directly

4  relevant to this motion: specifically, information related to the question whether defendant's

5  WealthBuilder Plan is a "top hat" plan under ERISA.  Unfortunately, just a few hours before the

6  scheduled hearing, Judge McCurine recused himself.  See Declaration of Marita M. Lauinger,

7  filed herewith, para. 2; Docket 97.

8      The case was then assigned to Magistrate Judge Bernard Skomal. On June 7, 2010, Judge

9  Skomal also recused himself, and the case was assigned to Magistrate Judge Jan M. Adler.

10  Docket No. 98.  On June 10, 2010, the case was returned to Judge Skomal.  Docket 102.

11      On June 10, 2010, this Court continued Merrill Lynch's motion for 28 days from June 24,

12  2010 to July 26, 2010 so that plaintiffs would have enough time to schedule a hearing on the

13  discovery motion before responding to the motion.  Docket 101.  On June 11, 2010 Judge Skomal

14  ordered the parties to file a joint motion by June 18, 2010 if they were unable to resolve the

15  dispute.  On June 15, 2010, defendants provided further responses to plaintiffs' discovery requests.

16  Believing in good faith that any further questions or issues could be resolved through a simple

17  telephone call, on June 17, 2010, plaintiffs' counsel informed Judge Skomal's chambers that the

18  discovery hearing would not be necessary.  Lauinger declaration, para. 3.

19      Unfortunately, between June 18, 2010 and July 6, 2010, Merrill Lynch's counsel was not

20  available to speak with plaintiffs' counsel, despite plaintiffs' counsel's repeated attempts.

21  Lauinger declaration, para. 4.  Finally, on July 6, 2010, counsel for the parties met and conferred

22  regarding the additional information plaintiffs need to be able to interpret the documents produced.

23  Id.  During that telephone conference, Merrill Lynch's counsel promised to obtain additional

24  information from his clients that would allow plaintiffs to determine whether the WealthBuilder

25  Plan is or is not a top hat plan.  Id.  As of this writing, Merrill Lynch still has not produced the

26  promised information, despite plaintiffs' counsel's repeated requests.  Id.

27  /////

28  /////

III.     THE RELEASE IN THE NEW YORK ERISA ACTION DOES NOT BAR PLAINTIFFS'
         WEALTHBUILDER VESTING CLAIM

Merrill Lynch argues that all of plaintiffs' claims, including the WealthBuilder vesting claim, were released in the New York ERISA Action.  Merrill Lynch is mistaken.

Paragraph 1.41 of the "Stipulation and Agreement of Settlement of ERISA Action" (filed herein as Docket 95-3, Exhibit 1, pages 10-11) defines "Settled Claims" as including "all claims … including both known claims and *Unknown Claims* (as defined herein), against any of the *Released Parties* (i) that have been asserted in the *ERISA Action*, or (ii) that could have been asserted in any forum by any *Class Member* or their successors or assigns which arise out of or are based upon the allegations, transactions, facts, matters or occurrences, representations or omissions out of which the claims asserted in the *ERISA Action* arise." Id. (emphasis added).

As described in the "Consolidated Supplemental Complaint for Violations of the Employee Retirement Income Security Act" (filed herein as Docket 95-4), the New York ERISA Action was premised on the events surrounding the subprime mortgage meltdown.   Paragraph 5 of the consolidated complaint alleges in relevant part:

> Defendants allowed the imprudent investment of the Plans' assets in Merrill Lynch stock … even though they knew or should have known that such investment was unduly risky and imprudent due to the fact that, by June 29, 2007, the Company had accumulated at least $43 billion of net exposure to risky and illiquid collateralized debt obligation securities ("CDO securities") and subprime mortgages, which was greater than the Company's total equity value of $42 billion at that time (also referred to as "book value"). Id.

The consolidated complaint in the New York ERISA Action does not allege a claim for failure to vest benefits according to the minimum vesting schedule in 29 U.S.C. section 1053, nor does it allege any facts that would support such a claim.  Accordingly, the definition of "Settled Claims" does not include the WealthBuilder vesting claim that remains at issue in this case.[2]

_____

[2]    As a general matter, a class action judgment may release the claims alleged in the complaint as well as claims "based on the identical factual predicate as that underlying the claims in the settled class action even though the claim was not presented *and might not have been presentable in the* (footnote continued)

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT                    3:09-cv-00566-BEN (BGS)
ON THE PLEADINGS OR FOR SUMMARY JUDGMENT

1   Furthermore, the use of the phrase "arising out of" in the definition of "Settled Claims"

2   does not expand the scope of the release beyond those claims that were premised on the

3   "allegations, transactions, facts, matters or occurrences, representations or omissions" alleged in

4   the New York ERISA Action.  See Frazer Exton Dev., LP v. Kemper Envtl., Ltd., 2004 U.S. Dist.

5   LEXIS 14602, *35 (S.D.N.Y. July 29, 2004) (the phrase "arising out of" is not sufficiently broad

6   to encompass the entire relationship between the parties).  Furthermore, Merrill Lynch has failed

7   to offer any evidence as to the intended scope of the release.  See Declaration of Brian Burke,

8   Merrill Lynch's attorney in the New York ERISA Action, Docket 95-16 (failing to discuss

9   intended scope of release); Nycal Corp. v. Inoco PLC, 949 F. Supp. 1115, 1121 (S.D.N.Y. 1997)

10  (refusing to rule on summary judgment that the phrase "arising out of" broadened the scope of the

11  release).  Accordingly, Merrill Lynch has failed to carry its burden of showing that the release in

12  the New York ERISA Action bars the WealthBuilder vesting claim.

13  Similarly, the term "Unknown Claims" (Docket 95-3, Exhibit 1, para. 1.49, page 13) does not

14  expand the scope of the release to encompass the WealthBuilder vesting claim.  Paragraph 1.49

15  defines "Unknown Claims" in relevant part as "all *Settled Claims* which any of the *Named*

16  *Plaintiffs* or *Class Members* does not know or suspect to exist in his, her or its favor as of the

17  *Effective Date* …."  Id.  Thus, "Unknown Claims" is tied to the definition of "Settled Claims,"

18  which is, in turn, limited to those claims that are premised on the facts alleged in the New York

19  ERISA Action.  The WealthBuilder vesting claim is not an "Unknown Claim" as defined under

20  paragraph 1.49.

21  /////

22  /////

23  /////

24  /////

25

26  *class action.*"  Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1287 (9th Cir. 1992) quoting
    TBK Partners, Ltd. v. Western Union Corp., 675 F.3d 456, 460 (2nd Cir. 1982).  As noted above,

27  plaintiffs' WealthBuilding vesting claim is not based on the "identical factual predicate" as the
    New York ERISA Action.

28

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT                    3:09-cv-00566-BEN (BGS)
ON THE PLEADINGS OR FOR SUMMARY JUDGMENT

IV.   MERRILL LYNCH IS NOT ENTITLED TO SUMMARY JUDGMENT AS TO PLAINTIFFS' WEALTHBUILDER VESTING CLAIM

A.   Based on the Record Before the Court, There Are Triable Issues of Fact.

A "top hat" plan is an ERISA plan that is "maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees." 29 U.S.C. section 1051(2); Gilliam v. Nevada Power Co., 488 F.3d 1189, 1192-93 (9th Cir. 2007). Top hat plans are exempt from the minimum vesting requirements set forth in 29 U.S.C. section 1053. Duggan v. Hobbs, 99 F.3d 307, 310 (9th Cir. 1996).

The legislative history leading to the enactment of the top hat exemption indicates that Congress believed that companies typically employ a few very high-level executives who are not in need of the broad remedial protections of ERISA. Specifically, "Congress recognized that certain individuals, by virtue of their position or compensation level, have the ability to affect or substantially influence, through negotiation or otherwise, the design and operation of their deferred compensation plan, taking into consideration any risks attendant thereto, and, therefore, would not need the substantive rights and protections of Title I." PWBA Office of Regulations and Interpretations Advisory Opinions 90-14A (May 8, 1990) and 92-13A (May 19, 1992) (attached to the Lauinger declaration as Exhibits 1 and 2). "Therefore, a plan which extends coverage beyond 'a select group of management or highly compensated employees' would not constitute a 'top hat' plan for purposes of Parts 2, 3 and 4 of Title I of ERISA." PWBA Office of Regulations and Interpretations Advisory Opinion 90-14A (April 8, 1990). The Department of Labor has explained that the top hat exception was intended to apply only to employees who "by virtue of their position or compensation level, have the ability to affect or substantially influence, through negotiation or otherwise, the design and operation of their deferred compensation plan …." DOL Opin. Letter 90-14A. The burden of establishing that a plan fits the top hat exemption is on the party asserting that it is a top hat plan. See, e.g., Alexander v. Brigham & Women's Physicians Org., Inc., 467 F.Supp.2d 136, 142 (D. Mass. 2006); Daft v. Advest, Inc., 2007 U.S. Dist. Lexis 99133 at *29-30 (N.D. Ohio Nov. 13, 2007); Carrabba v. Randalls Food Markets, Inc., 38 F.Supp.2d 468, 478 (N.D. Tex. 1999) (after a bench trial, the district court concluded that the

8

1  employer had failed to meet its burden of proving that the subject plan was a top hat plan).  Merrill

2  Lynch has failed to meet its burden, precluding summary judgment as to the WealthBuilder

3  vesting claim.

4        In considering whether an ERISA plan qualifies as a top hat plan, the Court considers: (1)

5  the percentage of total workforce invited to join the plan; (2) the nature of the participants'

6  employment duties; (3) the compensation disparity between top hat plan members and non-

7  members; and (4) the actual language of the plan agreement. <u>Bakri v. Venture Mfg. Co.,</u> 473 F.3d

8  677, 680 (6th Cir. 2007) (plan not a "top hat" plan because covered employees had no supervisory,

9  policy-making, or executive responsibility and little ability to negotiate pension, pay or bonus

10 compensation). The "select group" test asks "whether members of the group have positions with

11 the employer of such influence that they can protect their retirement and deferred compensation

12 expectations by <u>direct</u> <u>negotiations</u>." <u>Id.</u> (quotation omitted) (emphasis added); <u>Carrabba</u>, 38

13 F.Supp.2d at 478 (plan was not a top hat plan because the participants did not have bargaining

14 power to affect their compensation).

15       As to the first factor – the percentage of the total workforce invited to join the plan – there

16 is no bright-line rule.  At the low end of the spectrum, in <u>Pane v. RCA Corp.,</u> 868 F.2d 631, 637

17 (3d Cir. 1989), the court held that the plan was a top hat plan when it covered less than one-tenth

18 of one percent of the workforce.  At the upper end of the spectrum, in <u>Darden v. National Mutual</u>

19 <u>Insurance Co.,</u> 717 F.Supp. 388, 397 (E.D.N.C. 1989) <u>aff'd</u> 922 F.2d 203 (4th Cir. 1991) <u>rev'd on</u>

20 <u>other grounds</u> 503 U.S. 318 (1992), the court held that a plan covering 18.7 percent of the total

21 workforce was not a top hat plan.

22       In this case, Merrill Lynch baldly asserts that "less than 15% of Merrill Lynch's total

23 workforce has been eligible to participate in the WealthBuilder Plan each calendar year" (Waller

24 declaration, para. 6, Docket 95-6).  There are three problems with Merrill Lynch's assertion.  First,

25 despite plaintiffs' repeated requests, as described below, Merrill Lynch has failed to provide

26 complete written discovery responses that back up this claim.  Second, Merrill Lynch has failed to

27 explain whether this figure of "less than 15%" each year includes participants from previous years.

28 For example, if a Financial Advisor received a WealthBuilder award in 2005 based on his

9

1   production that year but did not receive an award in 2006 or 2007, he nevertheless remains a

2   "participant" in the WealthBuilder Plan for 2006 and 2007.  In other words, his awards for 2005

3   do not disappear; they continue to vest according to the WealthBuilder Plan document. Thus, if the

4   size of Merrill Lynch's workforce remained relatively constant, one would expect that the

5   percentage of the workforce who were participants in the WealthBuilder Plan would <u>increase</u> each

6   year.   It is unclear from Ms. Waller's declaration whether her estimate of "less than 15%" each

7   year includes participants from previous years.  <u>See</u> <u>Daft</u>, <u>supra</u>, 2007 U.S. Dist. Lexis 99133 at

8   *32-33 (finding that financial advisors who met the minimum commission threshold for any one

9   year were participants in the plan for all of the subsequent years).  Plaintiffs' counsel have asked

10  Merrill Lynch's counsel to answer this question, but so far, Merrill Lynch's counsel has refused to

11  do so.  Lauinger declaration, para. 5.  Third, a blanket statement as to the percentage of the total

12  workforce that is invited to participate in the plan, while probative, is insufficient to prove as a

13  matter of law that a plan meets the top hat plan exemption.  <u>Duggan</u>, <u>supra</u>, 99 F.3d at 312

14  (holding that "the 'select group' requirement includes more than a mere statistical analysis").  As

15  the court explained in <u>Daft</u>, the percentage of the workforce invited to join the plan is really a

16  proxy for the question of whether the participants comprise a "select group." <u>Id.</u> at *31-32.

17  Quantitatively, no specific number disqualifies a plan from qualifying as a top hat plan, but a top

18  hat plan "must cover relatively few employees." <u>In re New Valley Corporation</u>, 89 F.3d 143, 148

19  (3d Cir. 1996).   In summary, both the Court and plaintiffs need more information about the

20  number of participants in the WealthBuilder Plan before making a determination as to whether it is

21  a top hat plan.

22      As to the second factor – the nature of the participants' employment duties – Merrill Lynch

23  has failed to present any evidence that the participants in the WealthBuilder Plan have any ability

24  to "affect or substantially influence, through negotiation or otherwise, the design and operation of

25  their deferred compensation plan …."   DOL Opin. Letter 90-14A; <u>Duggan</u>, 99 F.3d at 312-313

26  (finding that plaintiff's severance plan was a top hat plan because plaintiff "exerted influence over

27  the design and operation" of the agreement).  In this case, plaintiff Trevor Callan had no ability to

28  affect or influence the design or operation of the WealthBuilder Plan.  <u>See</u> Declaration of Trevor

10

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT          3:09-cv-00566-BEN (BGS)
ON THE PLEADINGS OR FOR SUMMARY JUDGMENT

1   Callan, filed herewith, para. 2.  Instead, he was a rank-and-file Financial Advisor who was

2   responsible for selling financial product to clients and advising them as to their financial needs.

3   His duties were no different from the duties of any other Financial Advisor at Merrill Lynch,

4   including those who did not participate in the WealthBuilder Plan.  Id. at para. 2.

5        As to the third factor – the compensation disparity between participants and non-

6   participants – Merrill Lynch states only that the "average compensation of participants has been

7   more than double that of all Merrill Lynch employees."  Waller declaration, para. 6.  However,

8   Merrill Lynch fails to cite a single case that holds that this amount of compensation disparity is

9   sufficient to meet the third element of the top hat exemption.  In Darden, supra, the court held that

10  a plan was not limited to "highly compensated" employees when participants earned average gross

11  commissions of $49,340 per year and non-participants earned average compensation of $19,121

12  per year, which represented a 2.58 to 1 disparity.  Id. at 397.  The Darden court then deducted the

13  participants' average business expenses from the average gross commissions to arrive at a net

14  income figure of $31,258, which represented a 1.65 to 1 disparity.  In this case, it is unclear

15  whether the phrase "average compensation" in Ms. Waller's declaration refers to a gross

16  commission number of a net income number.  If "average compensation" means gross

17  commissions, then under Darden, the 2 to 1 disparity in income between participants and non-

18  participants in the WealthBuilder Plan fails the third element of the test.

19       Finally, the fourth factor – the language of the plan document – is not dispositive.  See

20  Guiragoss v. Khoury, 444 F. Supp. 2d 649, 659 (E.D. Va. 2006) ("merely inserting the ERISA

21  definition of a top hat plan into a document is insufficient if the actual plan does not satisfy the top

22  hat requirements"); Hollingshead v. Burford Equip. Co., 747 F. Supp. 1421, 1429 (M.D. Ala.

23  1990) ("The mere fact that the employer intends the plan to be a reward to 'key' employees does

24  not satisfy the degree of selectivity contemplated by the statutes.").

25       The cases cited by Merrill Lynch are inapposite.  In Cogan v. Phoenix Life Ins. Co., 310

26  F.3d 238, 241-42 (1st Cir. 2002), the plaintiffs never disputed the defendant's assertion that the

27  plan was a top hat plan, either in the district court or in the appellate court.  Here, plaintiffs dispute

28  Merrill Lynch's assertion.  Merrill Lynch also cites In Re: IT Group, Inc., 305 B.R. 402, 410 (D.

1   Del. 2004).  In that case, the bankruptcy court found that plaintiffs had failed to prove that the plan

2   covered more than a select group of employees.  Id. at 410.  With all due respect to that court, the

3   burden of proving the top hat exemption rests with the defendant, not the plaintiffs.  Alexander,

4   467 F.Supp.2d at 142; Daft, 2007 U.S. Dist. Lexis 99133 at *29-30.

5       In summary, based on the record before the Court, there are triable issues as to each

6   element of the top hat plan exemption that preclude entry of summary judgment on this claim.

7       B.   Alternatively, Plaintiffs Request a Brief Continuance of Merrill Lynch's Motion

8            Under Rule 56(f) to Permit Plaintiffs to Complete Discovery as to the

9            WealthBuilder Vesting Claim.

10      As discussed in the Lauinger declaration, filed herewith, on April 5, 2010, some 14 weeks

11  ago, plaintiffs served written discovery asking for information from which plaintiffs might

12  determine whether the WealthBuilder Plan is a top hat plan.[3]  Plaintiffs met and conferred with

13  Merrill Lynch about its deficient responses, and plaintiffs ultimately filed a discovery motion

14  before Judge McCurine, which was set for hearing on June 3, 2010.  On the date of the hearing,

15  Judge McCurine recused himself, and the case was reassigned to Judge Skomal.  On June 15,

16  2010, Merrill Lynch provided further responses to plaintiffs' discovery requests.  Believing in

17  good faith that the parties could work out any remaining discovery issues, plaintiffs' counsel

18  advised Judge Skomal's chambers that a discovery hearing would not be necessary.  Lauinger

19  declaration, paras. 2 and 3.

20      In retrospect, this was a mistake.  Between June 18, 2010 and July 6, 2010, Merrill

21  Lynch's counsel did not respond to plaintiffs' repeated telephone calls and emails.  This may have

22  been because Merrill Lynch's counsel was busy, or it may have been a tactical ploy to prevent

23  _____

24  [3]   Plaintiffs have requested, inter alia, verified responses that state in clear and unequivocal terms
25  which employees have participated in the WealthBuilder Plan between 2004 and 2007, broken
    down by job title, as well as the total domestic workforce for defendant Merrill Lynch, Pierce
26  Fenner & Smith, Inc.  See Plaintiffs' First Set of Interrogatories, Nos. 14 and 16, Exhibit 3 to
    Lauinger declaration.  As of this writing, Merrill Lynch's responses are incomplete.  Lauinger
27  declaration, para. 2.

28

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT                3:09-cv-00566-BEN (BGS)
ON THE PLEADINGS OR FOR SUMMARY JUDGMENT

1  plaintiffs from obtaining the discovery necessary to oppose this motion.  Either way, the lack of

2  communication prejudiced plaintiffs.  Lauinger declaration, para. 4.

3     Finally, on July 6, 2010, plaintiffs' counsel and Merrill Lynch's counsel spoke.  During

4  that conversation, Merrill Lynch's counsel promised to provide additional information to assist

5  plaintiffs in determining whether the WealthBuilder Plan is or is not a top hat plan.  As of this

6  writing on July 12, 2010, no additional information has been provided, and Merrill Lynch's

7  counsel has again not responded to plaintiffs' counsel's calls or emails.  Again, regardless of its

8  cause, this lack of communication has prejudiced plaintiffs.  <u>See</u> Lauinger declaration, para. 5.

9     Given the difficulties plaintiffs are having with obtaining information through informal

10  exchange, plaintiffs believe they need to take a 30(b)(6) deposition to pin down the facts regarding

11  the WealthBuilder Plan.  Plaintiffs will serve a notice for a 30(b)(6) deposition by Wednesday,

12  July 14, 2010.  Plaintiffs respectfully request a continuance of 60 days to allow them to complete

13  that deposition and, if necessary, schedule a discovery hearing before Judge Skomal.

14     Rule 56(f) permits a brief continuance under these circumstances.  "Although Rule 56(f)

15  facially gives judges discretion to disallow discovery when the non-moving party cannot yet

16  submit evidence supporting its opposition, the Supreme Court has restated the rule as requiring,

17  rather than merely permitting, discovery 'where the non-moving party has not had the opportunity

18  to discover information that is essential to its opposition.'"  <u>Metabolife Intn'l, Inc. v. Wornick</u>, 264

19  F.3d 832, 846 (9th Cir. 2001) <u>citing</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 n.5

20  (1986).  First, there is a strong likelihood that evidence exists that would allow plaintiffs to rebut

21  Merrill Lynch's argument that the WealthBuilder Plan is a top hat plan.  Merrill Lynch has

22  admitted that up to 15% of its employees may have participated in the WealthBuilder Plan each

23  year and that the average income disparity between participants and non-participants may be as

24  low as 2 to 1.  Waller declaration, para. 6.  These ratios just barely satisfy the top hat exemption, if

25  at all, and even a small change in the underlying assumptions (such as including award-recipients

26  from previous years as participants) might tip the ratios in plaintiffs' favor.  Second, plaintiffs

27  have been cooperative with Merrill Lynch – perhaps to a fault – in an effort to obtain complete

28  discovery responses.  If Merrill Lynch had timely responded to plaintiffs' discovery requests,

1    plaintiffs would have had the necessary information 9 weeks ago.   Plaintiffs should not be

2    penalized by Merrill Lynch's failure to comply with discovery.   Third, if given the opportunity,

3    plaintiffs will take the 30(b)(6) deposition immediately and will be in position to submit a

4    complete evidentiary record to the Court within 60 days.

5    V.    MERRILL LYNCH'S MOTION AS TO PLAINTIFFS' FIRST AND SECOND CAUSES

6         OF ACTION SHOULD ALSO BE DENIED

7         A.    The Forfeiture Provisions in the FACAAP, WealthBuilder, and Growth Awards

8              Plans Violate California Business & Professions Code section 16600.

9         The provisions in the Plans that require Financial Advisors to forfeit awards if they work

10   for a competitor violate California Business & Professions Code section 16600 because they

11   restricts plaintiffs from engaging in their lawful profession.   California Business and Professions

12   Code section 16600 states that "…every contract by which anyone is restrained from engaging in a

13   lawful profession, trade, or business of any kind is to that extent void."   Id.   California has a strong

14   public policy that favors open competition and forbids the imposition of penalties as a result of

15   working for a competitor.   Importantly, the California Court of Appeal has already held, twice,

16   that requiring a Merrill Lynch Financial Advisor to forfeit deferred compensation because he or

17   she left to work for a competitor was illegal under Section 16600.   Ware v. Merrill Lynch, Pierce,

18   Fenner & Smith, Inc., 24 Cal. App. 3d 35, 43, 45 (1972) (holding a forfeiture provision similar to

19   the one at issue here is "illegal" under "section 16600" which represents a "strong public policy"

20   of California);   Frame v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 20 Cal. App. 3d 668, 673

21   (Cal. App. 1st Dist. 1971) (holding that applying New York law, which permits such forfeitures,

22   would violate California's strong public policy against forfeitures).   The Ware and Frame

23   decisions are consistent with California Supreme Court decisions on the issue. See Muggill v.

24   Reuben H. Donnelley Corp., 62 Cal.2d 239, 243 (1965) (holding that a forfeiture provision in a

25   pension plan that required the plaintiff to forfeit his pension benefits in the event he went to work

26   for defendant's competitor was illegal under Section 16600); see Chamberlain v. Augustine, 172

27   Cal. 285, 286 (1916) (provision requiring that stock broker pay penalty to go to work for a

28   competitor disallowed).   Other California appellate courts are also in agreement that such

1   provisions violate section 16600.  See Alliance Payment Systems, Inc. v. Walczer, 152 Cal. App.

2   4th 620, 635 (2007) (holding that "provisions like this that impose a cost for competition, no less

3   than those that prohibit competition outright, are considered restraints of trade" in California);

4   Gordon Termite Control v. Terrones, 84 Cal. App. 3d 176, 179 (1978) (agreement to pay a fixed

5   amount of money per account upon leaving employer was deemed an improper restraint of trade).

6       Plaintiffs left their employment at Merrill Lynch to set up an independent financial

7   advisory firm.  Subsequently, plaintiffs demanded that Merrill Lynch pay them their awards under

8   the Plans, but Merrill Lynch refused to pay plaintiffs their awards because plaintiffs worked for a

9   competitor of Merrill Lynch.  Complaint, paras. 8 and 21; Declaration of Timothy Callan, para. 4.

10  Importantly, plaintiffs have alleged that "the purpose and effect of the forfeiture provisions in the

11  Plans are to restrain Plaintiffs and the California Class members from working for Merrill Lynch's

12  competitors, which is a violation of Section 16600."  Complaint para. 21.

13      The FACAAP states:

14      **"(iii)  Employment by Competitor**.  Notwithstanding the foregoing, if, within two years
        of the date of your Retirement, or at any time after such two years of the date of your
15      Retirement, or at any time after such two-year period if amounts are still payable to you as
        provided in subsection (ii) above, you commence employment or become affiliated in any
16      way with a company determined by the Committee (or its designee) to be a retail
        brokerage competitor of the Company or an Affiliate, any amount paid to you under this
17      section shall be forfeited by you and returned to the Company and all amounts that have
        not yet vested under this section shall cease to vest and no longer be payable."

18

19  Docket No. 95, Waller Declaration, Ex. A, FACAAP, pgs. 8-9, (emphasis added).  Both the

20  Growth Award and the WealthBuilder plans contain substantially similar language.  See Docket

21  No. 95, Waller Declaration, Ex. B (Growth Awards Plan, p. 6), Exhibit C (WealthBuilder Plan, p.

22  7.)  For instance, the WealthBuilder Plan contains a "Commonly Asked Questions" section in the

23  first five pages of the plan.  See Waller Declaration, Ex. C.  On page 4, question number 13, the

24  WealthBuilder plan states: "Q.  If I were 'vested' in my Account Balance but leave Merrill Lynch

25  for the competition, do I take a portion of my WealthBuilder Account Balance with me?  A.  No.

26  Under the WealthBuilder Account Plan, participants who compete with [Merrill Lynch] within

27  two years after termination forfeit any remaining balance in their WealthBuilder Account.  This

28  noncompete provision is fully described in the WeathBuilder Account Plan document."  Id.

1     Muggill is on point.  In that case, the employee met all of the requirements for benefits

2  under his former employer's pension plan.  Id. at 240.  Then, the employee quit and began

3  working for a competitor.  Id.  The former employer's plan committee notified the employee that

4  his rights to benefits had terminated because he worked for a competitor.  Id.  The Supreme Court

5  first explained the backdrop of section 16600:  "This section invalidates provisions in employment

6  contracts  prohibiting  an  employee  from  working  for  a  competitor  after  completion  of  his

7  employment or imposing a penalty if he does so."  Id. at 242 citing Chamberlain, 172 Cal. at 288;

8  Morris v. Harris, 127 Cal. App. 2d 476 (Cal. App. 1954); Davis v. Jointless Fire Brick Co., 300 F.

9  1, 5 (9th Cir. Cal. 1924) (disallowing injunction preventing employee from competing with former

10  employer).  The Muggill court then held "in this case, the provision forfeiting plaintiff's pension

11  rights  if  he  works  for  a  competitor  restrains  him  from  engaging  in  a  lawful  business  and  is

12  therefore void."  Id. at 242-43.  Similarly here, plaintiffs had met all requirements for vesting of

13  their awards under the Plans.  However, because plaintiffs went to work for a competitor, they

14  were required to forfeit their awards.  That forfeiture was in violation of section 16600.  As the

15  Frame court held, this type of "unlawful penalty provision" violates a "strong public policy of

16  California."  Frame, 20 Cal. App. 3d at 673-74.

17     A California Supreme Court case cited by the Muggill court, Chamberlain, is also

18  instructive.  Muggill, 62 Cal. 2d at 242 citing Chamberlain, 172 Cal. at 286.  In Chamberlain, a

19  contract between a stock seller and a purchaser stated that if the stock seller worked for any

20  competing business within three years of the sale, he had to pay liquidated damages to the

21  purchasers.  Id. at 286.  The court struck down the liquidated damages provision because "the

22  covenant  in  question  clearly  operates  to  restrain  the  defendant  from  'exercising  a  lawful

23  profession, trade, or business' and as it does not fall within the exceptions given in section 1673

24  [the predecessor to section 16600], it is, therefore, void."  Id.

25     Merrill Lynch's arguments to the contrary are inapposite.   Merrill Lynch offers no

26  admissible evidence to prove they were forfeited for any reason other than working for a

27  competitor of Merrill Lynch.  See fn. 1 above.  Instead, Merrill Lynch only argues that there are no

28  awards to receive because plaintiffs forfeited their awards before they were vested.  This argument

16

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT          3:09-cv-00566-BEN (BGS)
ON THE PLEADINGS OR FOR SUMMARY JUDGMENT

1   is circular.  If Merrill Lynch had not included an illegal restrictive covenant clause in its Plan

2   documents, plaintiffs' awards would have continued to vest.  Under the cases cited above, Merrill

3   Lynch cannot cut off vesting through imposition of a restrictive covenant that violates Section

4   16600.   Furthermore, Merrill Lynch argues that plaintiffs cannot maintain a claim under Bus. &

5   Prof. Code section 17200 because there is no restitutionary relief available to plaintiff.  Docket

6   No. 95, 18:7-16.  Merrill Lynch is incorrect.  Deferred compensation is a form of wages that may

7   be recovered under Section 17200.  Schachter, supra, 47 Cal.4th at 618 (holding that incentive

8   compensation is a form of wages); Cortez v. Purolator Air Filtration Prods. Co., 23 Cal. 4th 163,

9   177-78 (2000) (holding that unpaid wages may be recovered through a Section 17200 action).

10   Finally, a case recently decided by Judge Burns of this Court, Brecher v. Citigroup Global

11   Markets, Inc., 2010 U.S. Dist. Lexis 31458 (S.D. Cal. March 29, 2010), is distinguishable.  In that

12   case, plaintiffs argued that the forfeiture provisions in Citigroup's deferred compensation plans

13   violated Section 16600 because they restrained plaintiffs from competing against Citigroup.  Id. at

14   *7-9.  Judge Burns found that the forfeiture provisions were "not triggered by employment with a

15   competitor, but by leaving employment for any reason; it makes no difference what, if anything,

16   Plaintiffs do after their employment ends."  Id. at *10.  By contrast, in this case, plaintiffs have

17   specifically alleged that "[t]he purpose and effect of the forfeiture provisions in the Plans is to

18   restrain Plaintiffs and the California Class members from working for Merrill Lynch's

19   competitors, which is a violation of Section 16600."  Complaint, para. 21; see also Trevor Callan

20   declaration, para. 4.  In this case, at a minimum, there is a triable issue of fact as to the reason why

21   Merrill Lynch forfeited plaintiffs' Plan awards.

22   B.   Despite Schachter, Plaintiffs Have Stated a Claim for Unpaid Wages

23   Merrill Lynch argues that Schachter forecloses plaintiffs' claim for recovery of unpaid

24   wages due under the Labor Code.  However, Schachter is distinguishable on two grounds.  First,

25   the plaintiffs in Schachter did not argue, nor did the Schachter court consider, the effect of an

26   illegal restrictive covenant on the vesting of wages.  Although plaintiffs concede that the vesting

27   of wages is ordinarily determined by the underlying contract, an employer cannot prevent the

28   vesting of wages by imposing an illegal contract provision on its employees.  See Ellis v.

17

1    McKinnon Broadcasting Co., 18 Cal.App.4th 1796, 180307 (1993) (holding that a clause in a

2    commission agreement that defined advertising commissions as being "earned" only if the

3    employee was employed on the date the advertising fees were paid was illegal and awarding the

4    employee the "unearned" commissions).

5         Second, the plaintiffs in Schachter voluntarily enrolled in the deferred compensation plan

6    in that case (Schachter at 620-21), whereas the plaintiffs in this case had no choice about whether

7    a portion of their wages would be diverted into the Plans.  See Complaint, para. 6; Timothy Callan

8    declaration, para. 3.  Unlike the plaintiffs in Schachter, the plaintiffs here were forced to accept an

9    illegal restrictive covenant in order to receive their benefits under the Plans and were not given the

10   option to receive their benefits in the form of additional commissions or cash.  Thus, Schachter is

11   not controlling.

12        The other two cases cited by Merrill Lynch are also distinguishable.  The first case,

13   Neisendorf v. Levi Strauss & Co., 143 Cal. App. 4th 509 (2006), dealt with a bonus payment

14   contingent on a future event.  The required future event was a lawful provision – namely, that the

15   employee not be fired for cause prior to the bonus payment.  Id. at 521. The employee was fired

16   for cause.  Id.  Accordingly, the refusal to pay the unearned bonus was proper.  Id. at 521.

17   Similarly, in Prachasaisoradej v. Ralphs Grocery Co., Inc., 42 Cal. 4th 217, 228 (2008), the

18   conditions precedent to the deferred compensation payment – the employer's profitability and the

19   attainment of operational goals – were both lawful.  Here, by contrast, the clause that prevented

20   the vesting of plaintiffs' wages (i.e., their Plan awards) was an illegal restrictive covenant.  Merrill

21   Lynch should not be permitted to escape its payment obligations under the Labor Code by

22   imposing illegal restrictive covenants in its Plan documents.

23   /////

24   /////

25   /////

26   /////

27   /////

28   /////

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT          3:09-cv-00566-BEN (BGS)
ON THE PLEADINGS OR FOR SUMMARY JUDGMENT

VI.    <u>CONCLUSION</u>

For the foregoing reasons, plaintiffs respectfully request that the Court deny Merrill Lynch's motion in its entirety, or in the alternative, grant plaintiffs additional time to conduct discovery pursuant to Rule 56(f).


Dated: July 12, 2010                          DOSTART CLAPP GORDON & COVENEY, LLP


                                              s/ James F. Clapp
                                              _____
                                              JAMES F. CLAPP
                                              Attorneys for Plaintiffs

355848.1

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT                3:09-cv-00566-BEN (BGS)
ON THE PLEADINGS OR FOR SUMMARY JUDGMENT