| | |
|---|---|
| 1 | **MCGUIREWOODS LLP** |
| | Matthew C. Kane (SBN 171829) |
| 2 |     Email:  mkane@mcguirewoods.com |
| | Bethany A. Pelliconi (SBN 182920) |
| 3 |     Email:  bpelliconi@mcguirewoods.com |
| | Sylvia J. Kim (SBN 258363) |
| 4 |     Email:  skim@mcguirewoods.com |
| | 1800 Century Park East, 8th Floor |
| 5 | Los Angeles, California 90067 |
| | Telephone: (310) 315-8200 |
| 6 | Facsimile: (310) 315-8210 |
| 7 | Attorneys for Defendants |
| | MERRILL LYNCH & CO., INC. and |
| 8 | MERRILL, LYNCH, PIERCE, FENNER & SMITH, INC. |

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TREVOR CALLAN, TIMOTHY CALLAN and RYAN CALLAN, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>vs.<br><br>MERRILL LYNCH & CO., INC., ET AL.,<br><br>        Defendants. | CASE NO. 09-CV-0566 BEN (WMc)<br><br>**MERRILL LYNCH DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT:**<br><br>**(1) MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**(2) REPLY DECLARATION OF MATTHEW C. KANE**<br><br>**(3) EVIDENTIARY OBJECTIONS TO PLAINTIFFS' OPPOSING DECLARATIONS OF TREVOR CALLAN, TIMOTHY CALLAN, AND MARITA M. LAUINGER,**<br><br>*[FILED UNDER SEPARATE COVER]*<br><br>**Date:**       July 26, 2010<br>**Time:**       10:30 a.m.<br>**Courtroom:** 3<br>**Judge:**      Hon. Roger T. Benitez |

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION.

Plaintiffs' Opposition consists of nothing more than a desperate presentation of red herrings, unsupported pleas for yet another continuance, and *sham declarations* designed to create the *charade* that some of their claims "might" have merit.  A prime example is Plaintiffs' attempt to mislead the Court that they are "renewing" an "***offer and consent to dismissal with prejudice***" of their Third and Fourth Causes of Action, and *part* of their Fifth Cause of Action, while slyly ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

In their declarations, Plaintiffs assert that they "understood" their awards were forfeited because of their competing work post-termination, allegedly because unidentified "other employees" who did not compete post-termination were paid their awards, without stating whether those paid awards were ***unvested*** like theirs.  In fact, Plaintiffs literally put the cart before the horse on this issue, as they ***do not dispute*** the fact that they had ***no unpaid vested awards*** when they resigned.  Instead, they baldly and incorrectly assert that they somehow would have "continued to vest" post-termination, while failing to identify any plan provision that would have allowed them to do so.  It is beyond dispute that the plans provided for forfeiture of ***unvested*** awards upon termination of employment, subject to exceptions not applicable here, regardless of what Plaintiffs did after they resigned, and no provisions of the plans would otherwise have allowed them to continue to vest in their awards.

Also, Plaintiffs do not dispute that they are covered by the Settlement Stipulation in the New York ERISA Action.  That settlement released all of the claims they are pursuing in this action.  Indeed, Plaintiffs' ERISA claim only relates to the WealthBuilder Plan, which they assert (albeit incorrectly) is *not* a top hat plan and thus *not exempt* from ERISA's vesting provisions. Further, their Opposition merely raises *questions* about the interpretation of Defendants' evidence

1  establishing that the WealthBuilder plan is in fact a top hat plan exempt from those requirements.

2  **II.      ARGUMENT.**

3           **A.      Plaintiffs' Claims Are Barred By The New York ERISA Action Settlement.**

Plaintiffs do not deny that they are "Class Members" who received notice of, and participated in, the settlement of the New York ERISA Action. Yet, they attempt to avoid its preclusive effect by arguing that their WealthBuilder Plan vesting claim is excluded from the scope of that settlement because "the New York ERISA Action does not allege a claim for failure to vest benefits . . ."[1] Oppos. at 6:21-22. Their argument is untenable, because the plain language of the Settlement Stipulation bars all claims that "*could have been asserted*" by Plaintiffs in any forum, not just those that *were asserted* in that prior action. *See* Dkt. #95-3 at § 1.41.

Moreover, as Plaintiffs admit in the Introduction of their Opposition, their ERISA claim is based on a "breach of defendants' fiduciary duties under the Plans." Oppos. at 1:11-14. The New York ERISA Action was likewise based on alleged breach of fiduciary duties, and was even based on the ***same "stock drop" allegations*** as Plaintiffs make in Paragraph 39 of their Complaint. Plaintiffs' allegation of improper vesting consists of one mere sentence buried in the *six paragraphs* of their ERISA breach of fiduciary duty allegations in support of their ERISA claim. Plaintiffs' argument that this one factually devoid sentence magically excludes their ERISA claim from the scope of the New York ERISA Action settlement is pure legerdemain, particularly given that all of their allegations "arise out of" the same "transaction" or "occurrence" at issue in that action – Defendants' alleged mishandling of their ERISA benefit plan accounts, regardless of whether stated in terms of breach of fiduciary duty, improper vesting, or otherwise.

Thus, it comes as no surprise that Plaintiffs have failed to cite any authority supporting their tenuous position on this issue. Their cited case of *Frazier Exton Dev., LP v. Kemper Envtl., Ltd.*, 2004 U.S. Dist. LEXIS 14602, * 35 (S.D.N.Y. 2004), is not analogous. In *Frazier*, the court

---

[1] Plaintiffs' Opposition *only* argues that the New York ERISA Action Settlement Stipulation does not bar their "WealthBuilder Vesting Claim" asserted in their Fifth Cause of Action. *They do not dispute that it bars their First and Second Causes of Action for unpaid wages and violation of the UCL.*

1  merely interpreted a *choice of law provision* in a contract to determine whether it was "sufficiently
2  broad" to "encompass the entire relationship between the parties." *Id.* at * 35. Likewise, their
3  cited case of *Nycal Corp. v. Inoco PL*C, 949 F.Supp. 1115, 1121 (S.D.N.Y. 1997), is wholly
4  inapposite. *Nycal* involved an application for leave to supplement a pending motion to dismiss or
5  stay by adding the defense of *lack of jurisdiction*, where the defendant had alleged that a
6  settlement between the parties had discharged all provisions of their stock purchase agreement. *Id.*
7  at 1120-1121. In ruling on the application, the court looked at the intent of the parties in executing
8  the settlement agreement and ultimately concluded that uncertainty as to that issue precluded an
9  early determination as to whether it discharged the consent to jurisdiction contained in their stock
10 purchase agreement. *Id.* at 1122. Thus, *Nycal* could not be further afield of the issue presented by
11 this motion.

12 Yet, relying on the inapposite *Nycal* decision, Plaintiffs argue that this motion should be
13 denied because "Merrill Lynch has failed to offer any evidence as to the intended scope of the
14 release." Oppos. at 7:6-7. This meritless argument ignores that its "intended scope" is *expressly*
15 *stated* in the Settlement Stipulation itself, namely "to be a final and complete resolution of all
16 disputes asserted or which could be asserted by the Class Members against the Released Parties
17 with respect to the Settled Claims." Dkt. #95-3 at § 10.3. Plaintiffs' unreasonably narrow
18 interpretation should be rejected because that broad express language establishes that their
19 remaining claims in this action either were or could have been asserted in the New York ERISA
20 Action, are within the scope of its settlement, and are barred. The terms of that judicially-
21 approved class action settlement are to be viewed in the broadest sense, to "facilitate global
22 finality." *In re: Johns Manville Corp.*, 340 B.R. 49, 60 (S.D.N.Y. 2006). Therefore, Defendants'
23 motion should be granted on this basis.

24     **B.     Plaintiffs' WealthBuilder Plan Vesting Claim Is Without Merit.**

25 Plaintiffs' Opposition proffers nothing more than "questions" about Defendants' evidence
26 and arguments establishing that the WealthBuilder Plan is a "top hat" plan under 29 U.S.C. §
27 1101(a)(1), which exempts from ERISA's vesting requirements plans that are limited to a select
28 group of management or highly-compensated employees. Notably, Plaintiffs do not *dispute* the

1 material fact that participation in the WealthBuilder Plan was limited to *Vice Presidents* and *Advisory Division Managers* who have *at least $250,000* of eligible compensation.

Plaintiffs' arguments principally rely on a tortured interpretation of cases applying a four-part test used by the Sixth Circuit in *Bakri v. Venture Mfg. Co.*, 473 F.3d 677, 680 (6th Cir. 2007). As a threshold matter, their arguments should be rejected because they have not shown that the *Bakri* test is even followed in the Ninth Circuit. Notwithstanding, as we discuss next, the WealthBuilder Plan satisfies every element of the factors considered under that test: (1) the percentage of total workforce invited to join the plan; (2) the nature of the participants' employment duties; (3) the compensation disparity between top hat plan members and non-members; and (4) the actual language of the plan agreement. *Id.*

### 1. Percentage Of Total Workforce Invited To Join The Plan.

Courts have uniformly noted that under the first *Bakri* factor, plans which limit participation to 15% or less of the workforce (as the WealthBuilder Plan does) meet the "select group" requirement for top hat plans. *See, e.g., The IT Group, Inc*., 305 B.R. 402, 410 (Bankr. D. Del. 2004) ("With respect to the quantitative 'select group' restriction, the highest percentage of employees covered by a plan found to have been a 'top hat' plan, while not a bright line test, has been 15%"); *Demery v. Extebank Deferred Comp. Plan (B)*, 216 F.3d 283, 288-289 (2d Cir. 2000) (upholding summary judgment on basis that top hat plan was limited to "select group" because it was only offered to 15.34% of employees); *Alexander v. Brigham & Womens Physicians Org., Inc.*, 513 F.3d 37, 46 (1st Cir. 2008) (holding that 15.34% of workforce is within the "acceptable size" for a "select group" needed for a top hat plan).

In a transparent attempt to create the *charade* of a triable factual issue on this factor, Plaintiffs merely *question* whether Defendants' evidence that not more than 15% of the workforce could participate in the WealthBuilder Plan "includes participants from previous years." Oppos. at 9:26-27. Their raising such a "question" is nothing more than a smokescreen, given that they conveniently fail to disclose to the Court that Defendants have produced to them in discovery both participant and workforce headcount reports which show that, for the years at issue in their claims, ***not more than approximately 5% of the total workforce participated*** in the plan each year.

Further, their *question* is answered by the express participation requirements set forth in the plan document, which specifies that an employee is *not* eligible to participate *unless* he or she has at least $250,000 of eligible compensation in "both the qualification year and the year in which the award is made." Dkt. #95-9 at § 3.1(a). Thus, there is *no* "question" as to whether an individual would be considered eligible to participate in the Plan if he received an award in one year but not the next. Moreover, Plaintiffs' cited case of *Daft v. Advest, Inc.*, 2007 U.S. Dist LEXIS 99133, *29-20 (N.D. Ohio), does not give credence to their "question" on this point. In *Daft*, 30% of the entire workforce was eligible to participate in the plan, and once an employee became eligible to participate, he or she was automatically eligible to participate every year thereafter. *Id.* Here, in contrast, eligibility was limited to those individuals who qualified at two separate points in time. Therefore, the WealthBuilder Plan satisfies the first element of the *Bakri* test.

## 2. Nature Of Participants' Employment Duties.

Plaintiffs' Declaration of Trevor Callan is a transparent attempt to manufacture an issue as to the *Bakri* "employment duties" factor. His declaration states that he had "no ability to affect or influence the design or operation of the WealthBuilder Plan" and had the same duties of any Financial Advisor at Merrill Lynch. Trevor Callan Decl. at ¶ 2. This desperate tactic is unavailing for several reasons.

*First*, under 29 U.S.C. § 1101(a)(1), the plan must be maintained "*primarily*" for a select group of management *or highly compensated* employees – it does not require that *all* of the eligible employees have duties that would enable them to "influence the design or operation" of the plan. *Second*, Plaintiffs have cited no case which found a plan to not be a top hat plan based on such evidence. *Third*, courts have uniformly held that where, as here, a plan is maintained "primarily" for a select group of management or highly-compensated employees, it still qualifies as a top hat plan even if some non-management or non-highly compensated employees are allowed to participate. *See, e.g., Fishman v. Zurich Am. Ins. Co.*, 539 F.Supp.2d 1036, 1043 n. 7 (N.D. Ill. 2008); *Demery v. Extebank, supra*, 216 F.3d at 289; *Belka v. Rowe Furniture Corp.*, 571 F.Supp. 1249, 1253-54 (D. Md. 1983). Indeed, the DOL Opinion Letter cited by Plaintiffs is in accord with these authorities. *See* Dkt. #107-4 at p. 2 ("the term "primarily" refers to the ***purpose***

*of the plan* (i.e., the benefits provided) ***and not the participant composition of the plan***.") (emphasis supplied). Therefore, the second element of the *Bakri* test is satisfied as well.

### 3. Compensation Disparity.

Plaintiffs do not challenge Defendants' evidence that the average compensation of participants in the WealthBuilder Plan has been more than double that of all Merill Lynch employees. They merely contend that this amount of disparity is insufficient to meet the third element of the *Bakri* test. Again, Plaintiffs are wrong. Several courts have concluded that a 2:1 salary disparity is sufficient to satisfy this prong of the test. *See, e.g., Demery, supra*, 216 F.3d at 288-289; *Chellis v. Fleet Capital Corp.*, 2006 U.S. Dist LEXIS 95837 (N.D. Ga. 2006); *Duggan v. Hobbs*, 1995 U.S. Dist. LEXIS 4569, *12-*13 (N.D. Cal. 1995); *Belka,* 571 F.Supp. at 1253-54.

Plaintiffs' reliance on *Darden v. Nationwide Mutual Ins. Co.*, 717 F.Supp. 388, 397 E.D.N.C. 1989), is misplaced. In *Darden*, the court concluded that sales agents were not "highly compensated" because their average net income was only $31,528, as compared to $19,121 for non-sales agents. Here, Plaintiffs had to have at least $250,000 in eligible income in order to participate in the WealthBuilder Plan. That figure, in itself, shows that they were "highly compensated" and this conclusion is further supported by the fact that the participants in the plan had incomes that were more than double that of all Merrill Lynch employees. Therefore, the WealthBuilder Plan also satisfies the third element of the *Bakri* test.

### 4. Language Of The Plan Document.

Plaintiffs concede that the Court should consider the plan document's language in determining whether it is a top hat plan, and their Opposition does not contend that the WealthBuilder Plan's language contradicts its stated purpose of being a top hat plan in any way. Rather, they merely contend that its language is not "dispositive." However, given that the plan document expressly states that it was intended to be unfunded and maintained primarily for the purpose of providing deferred compensation for the members of a select group of management or highly compensated employees, within the meaning of Title 1 of ERISA, the fourth and final element of the *Bakri* test is satisfied as well. *See* Waller Decl., Exh. C, p. 1 at Art. 1. Therefore, the WealthBuilder Plan is a top hat plan and Plaintiffs' ERISA vesting claim is meritless.

### 5. Plaintiffs Are Not Entitled To A Rule 56(f) Continuance.

Wholly ignoring that this motion has been presented in the first instance as a Rule 12(c) motion, Plaintiffs improperly treat it purely as a motion for summary judgment by seeking to rely on evidence obtained through discovery in opposing it. Such discovery could only be considered by the Court if this motion is treated as a motion for summary judgment under Rule 56. Assuming *arguendo* that it is, a continuance may be granted under Rule 56(f) where a party opposing the motion makes "(a) a timely application which (b) specifically identifies (c) relevant information, (d) where there is some basis for believing that the information sought actually exists." *Employers Teamsters Local Nos. 175 and 505 Pension Trust Fund v. Clorox Co.*, 353 F.3d 1125, 1129-30 (9th Cir. 2004). "The burden is on the party seeking additional discovery to proffer sufficient facts to show that the evidence sought exists, and that it would prevent summary judgment." *Chance v. Pac-Tel Teletrac Inc.*, 242 F.3d 1151, 1161 n.6 (9th Cir. 2001). The party seeking additional discovery must adequately explain "why, at that timepoint, it cannot present by affidavit facts needed to defeat the [summary judgment] motion." *Strang v. United States Arms Control & Disarmament Agency*, 864 F.2d 859, 861 (D.C. Cir. 1989), vacated on other grounds, 920 F.2d 30 (1990). It is not enough to state that discovery "would be invaluable in this case" or would present "an opportunity to test and elaborate the affidavit testimony already entered." *Id.* Rather, it must be "stated concretely" why, absent discovery, essential opposing facts cannot be presented. *Id.*

Plaintiffs have failed to comply with the foregoing requirements. Their Declaration of Marita Lauinger does not identify any specific information needed to oppose this motion, does not specify how any outstanding discovery would be relevant, and does not set forth any facts which suggest that the information even exists. Rather, it merely states that "Merrill Lynch's counsel promised to provide additional information to assist plaintiffs in determining whether the WealthBuilder Plan is or is not a top hat plan. As of this writing on July 12, 2010, no additional information has been provided . . ."[2] Dkt. #107-3 at ¶ 5. Moreover, the declaration *admits* that

---

[2] As the email communiqués between counsel reveal, Defendants' counsel merely agreed to inquire whether certain information could be obtained – assuming it even existed – which

Plaintiffs previously advised the Court (after an earlier continuance of this motion hearing) that their discovery needs had been met with respect to this motion.³ *Id.* at ¶ 3. That admission precludes them from showing that they have "not had the opportunity to discover information that is essential to [their] opposition." *See Metabolife Intn'l, Inc. v. Wornick*, 264 F.3d 832, 846 (9th Cir. 2001). Therefore, even if so advising the Court was a "mistake" as they now conveniently claim, it neither explains why they did not previously attempt to take the Rule 30(b)(6) deposition on unspecified topics they now claim to need, nor excuses their failure to comply with the requirements of Rule 56(f). Therefore, their request for a continuance should be denied.

### C. **Plaintiffs' First And Second Causes Of Action For Unpaid Wages And Violation Of The UCL Are Barred And Meritless.**

As a threshold matter, and as brought to the Court's attention in footnote 1, *supra*, Plaintiffs' Opposition does not dispute that their purported First and Second Causes of Action for unpaid wages and violation of the UCL are barred by the New York ERISA Action settlement. Therefore, Defendants are entitled to judgment in their favor on these claims on this basis.

Notwithstanding, as we established in our opening papers, none of the Plaintiffs had any unpaid, *vested* awards in any of the Plans at issue as of the time they resigned their employment at Merrill Lynch. Indeed, ***Plaintiffs' Opposition in no way disputes Defendants' evidence of this,*** which *precludes* their ability to obtain any recovery on their purported First and Second Causes of Action as a matter of law. As we discussed in our opening briefing, ***unvested*** bonus and profit-sharing awards are ***not*** "***wages***" and, therefore, Plaintiffs' purported First Cause of Action for failure to pay wages under *Cal. Labor Code* §§ 201, 202, 204, 221, and 222 fails as a matter of

---

related only to correlations between job titles and entity codes on spreadsheets produced by Defendants which were fully responsive to Plaintiffs' discovery requests, and, significantly, Plaintiffs' counsel failed to respond to Defendants' counsel's inquiries as to how this information even related to the issues presented by this motion. *See* Kane Reply Decl., Exh. B.

³ In fact, it is telling that the Lauinger Declaration attaches a copy of Plaintiffs' First Set of Interrogatories and identifies Interrogatory Nos. 14 and 16 as requesting particular demographic information related to the WealthBuilder Plan, but *does not attach a copy of Defendants' responses thereto and copies of their related responsive documents produced providing all of the information requested.* The Court should not countenance such concealment by Plaintiffs.

1  law. *See Schachter v. Citigroup, Inc.*, 47 Cal.4th 610, 621-22 (2009); *Prachasaisoradej v. Ralphs
2  Grocery Co., Inc.*, 42 Cal.4th 217, 228 (2007); *Neisendorf v. Levi Strauss & Co.*, 143 Cal.App.4th
3  509, 522 (2006). For the same reason, because Plaintiffs' purported Second Cause of Action for
4  violation of the UCL is wholly premised upon the same meritless assertion that such **unvested**
5  awards are "wages" under the California Labor Code, it fails as a matter of law as well.[4] *See, e.g.,*
6  *Prachasaisoradej, supra*, 42 Cal.4th at 244.

7  ████████████████████████████████████████████
8  ████████████████████████████████████████████
9  ████████████████████████████████████████████
10 ████████████████████████████████████████████
11 ████████████████████████████████████████████
12 ████████████████████████████████████████████
13 ████████████████████████████████████████████
14 ████████████████████████████████████████████
15 ████████████████████████████████████████████
16 ████████████████████████████████████████████

17         Further compounding their misdeeds in this respect, Plaintiffs have now submitted, in *bad*
18 *faith* and in violation of Fed. R. Civ. P. 56(g), their Declaration of Timothy Callan which states

---

[4] Any so-called "forfeitures" of Plaintiffs' **unvested** awards were triggered **only** by their **resignations**. It made no difference what, if anything, they did after their employment ended, because the Plans provided for forfeiture of **unvested** awards merely upon termination. Thus, Plaintiffs' primary focus in their Opposition on a non-compete forfeiture provision in the Plans allegedly being unlawful under *Cal. Bus. & Prof. Code* § 16600 literally puts the cart before the horse and does nothing to save their UCL claim. Plaintiffs had **no unpaid, vested awards when they resigned**, and, therefore, no "forfeitures" occurred. *See Brecher v. Citigroup Global Markets, Inc.*, 2010 U.S. Dist. LEXIS 31458, at *9-10 (S.D. Cal. 2010) (**forfeiture provisions that are triggered by termination** do not support UCL claims or wage claims under *Schachter v. Citigroup, Inc.*, 47 Cal.4th 610 (2009), because "[t]he fact that quitting to work for a competitor is one of many ways to fail to render 'faithful services' does not transform an incentive compensation agreement into a noncompetition agreement.") Their attempt to avoid this inevitable conclusion by arguing that "a portion of their wages" were involuntarily "diverted into the plans," and that they would have "continued to vest" in their unvested awards post-termination is *pure nonsense*. They offer no evidence of any of this other than their meaningless *ipse dixits*. Therefore, their purported UCL claim based on so-called non-competition forfeiture of their admittedly **unvested** awards is meritless.

1 that Plaintiffs "understood" that their awards were "forfeited" because they set up a competing
2 firm, and that other unidentified employees who did not go into competition with Merrill Lynch
3 received their awards, although they conveniently omit whether such awards were vested or
4 unvested. Timothy Callan Decl. at ¶ 4. In other words, Plaintiffs do not dispute that they had ***no***
5 ***vested***, unpaid awards when they resigned from Merrill Lynch, or that the Plans provided for
6 forfeiture of any ***unvested*** awards simply upon termination. Rather, they ostensibly take the
7 position that Merrill Lynch would have paid them ***unvested*** awards *which they were not entitled to*
8 *under the Plans* if they had merely resigned, without setting up a competing firm, even though no
9 one at Merrill Lynch ever communicated any such position to them, and the Plans have no such
10 provisions. The absurdity of their position illustrates the disturbing depth of Plaintiffs' bad faith
11 and desperation.[5]

12 Therefore, Defendants are entitled to judgment in their favor on Plaintiffs' meritless First
13 and Second Causes of Action.

14 **III.  CONCLUSION**

15 For all of the foregoing reasons, Defendants respectfully request that this Motion be
16 granted and that judgment be entered in their favor.

17 DATED: July 19, 2010            **MCGUIREWOODS LLP**

19                    By:     /s/ Matthew C. Kane
                                    Matthew C. Kane
20                          Attorneys for Defendants MERRILL LYNCH &
                            CO., INC. and MERRILL, LYNCH, PIERCE,
21                          FENNER & SMITH, INC.

---

[5] The Timothy Callan Declaration was submitted in "bad faith" within the meaning of Rule 56(g) because Plaintiffs essentially admitted that their wage and UCL claims had no merit when they offered to dismiss them with prejudice in exchange for a costs waiver (Kane Decl., Exh. A.), yet the Declaration includes a sham allegation designed to create a false issue of fact on these claims. The Court should strike the Declaration and schedule a hearing to determine the appropriate amount of expenses and fees to be awarded to Defendants pursuant to Rule 56(g) as a result of its bad faith submission in opposition to this motion. Defendants will submit proof of their expenses and attorney's fees upon notice by the Court that such a hearing will be held.

## REPLY DECLARATION OF MATTHEW C. KANE

I, MATTHEW C. KANE, declare as follows:

1. I am a partner in the law firm of McGuireWoods LLP, counsel for Defendants in the above-captioned action. I have personal knowledge of the facts stated in this Declaration, and if called upon to testify regarding same, I could and would testify competently. I am over the age of 18.

2. I make this Declaration in support of Defendants' Reply to Plaintiffs' Opposition To Motion For Judgment On The Pleadings Or, In The Alternative, For Summary Judgment Or Partial Summary Judgment.

3. Attached hereto as Exhibit A are true and correct copies of emails I exchanged with Plaintiffs' attorney, James Clapp.

4. Attached hereto as Exhibit B are true and correct copies of emails which I exchanged with Plaintiffs' attorney, Marita Lauinger.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 19th day of July, 2010, at Los Angeles, California.

                                           /s/ Matthew C. Kane
                                           MATTHEW C. KANE



Callan et al

-v-

Merrill Lynch & Co Inc et al

09cv566-BEN-BGS

**STRICKEN DOCUMENT**

**111-Exhibit A**

**111**

**Kane, Matthew C.**

**From:** Marita Lauinger [MLauinger@sdlaw.com]
**Sent:** Wednesday, July 07, 2010 1:41 PM
**To:** Kane, Matthew C.
**Cc:** James F. Clapp; Pelliconi, Bethany A.; Kim, Sylvia Jihae
**Subject:** RE: Callan v. Merrill Lynch

Matt,
Thank you.
It is important that we have this information so that we can oppose defendants' pending motion and so that we can discuss with our clients whether they want to resolve the entire action rather than just part of it. We have been asking for this information for several weeks. Since you don't have it readlily available for us, are you willing to stipulate to continue the hearing for two weeks so that we can get the information and have the appropriate discussions with our clients? That would make the most sense.
Thank you,
Marita

---

**From:** Kane, Matthew C. [mailto:MKane@mcguirewoods.com]
**Sent:** Tuesday, July 06, 2010 9:14 PM
**To:** Marita Lauinger
**Cc:** James F. Clapp; Pelliconi, Bethany A.; Kim, Sylvia Jihae
**Subject:** RE: Callan v. Merrill Lynch

Marita,

Good speaking with you this afternoon. As to the first two substantive paragraphs of your email below, you are correct. As to the third, and as promised, I have emailed my client contact to find out what type of correlation (if any) can be provided between the position titles and job names on the respective spreadsheets identified. As to the fourth, you are correct about the sum of the counts on the headcount reports; as promised, I have emailed my other client contact about which of the four entity codes are the employer of U.S. Financial Advisors.

Although I have requested this information as soon as possible, at this juncture I am not aware of how the lack of the information you seek would adversely impact plaintiffs' ability to oppose defendants' pending motion, or their decision as to whether they want to resolve this entire action rather than just part of it. Regardless, as soon as I hear back from my client contacts, I will let you know.

Thanks,

Matt


**Matthew C. Kane**
Partner

**MCGUIREWOODS LLP**
*Relationships That Drive Results*

EXHIBIT B

7/19/2010

EXH. B

1800 Century Park East, 8th Floor | Los Angeles, CA 90067

Telephone: 310.315.8295 | Fax: 310.956.3195 | Email: mkane@mcguirewoods.com

Website: www.mcguirewoods.com | Profile: www.matthewkane.net

Atlanta | Baltimore | Charlotte | Charlottesville | Chicago | Jacksonville | Los Angeles | New York | Norfolk | Pittsburgh | Raleigh | Richmond | Tysons Corner | Washington, D.C. | Wilmington || Brussels, Belgium | London, UK

*This e-mail may contain confidential or privileged information. If you are not the intended recipient, please advise by return e-mail and delete immediately without reading or forwarding to others.*

**From:** Marita Lauinger [mailto:MLauinger@sdlaw.com]
**Sent:** Tuesday, July 06, 2010 5:02 PM
**To:** Kane, Matthew C.
**Cc:** James F. Clapp
**Subject:** Callan v. Merrill Lynch

Matt,
I am writing to memorialize our conversation this afternoon regarding Merrill Lynch's discovery responses.

You confirmed for me that if we count the number of lines on the documents entitled "WealthBuilder Eligible Participants By Title," that will give us the number of participants in any given year. In other words, each listed "title" represents one individual.

The "WealthBuilder Eligible Participants By Title" only shows individuals who actually received an award during that year. In other words, if an individual received an award in 2005 and 2007, but not in 2006, that person would not be listed on the 2006 report.

You will ask your client to provide us with a mapping or correlation between the job titles on the "WealthBuilder Eligible Participants By Title" documents and the "Domestic Employee Headcount" report so that we know how the two reports match-up.

You confirmed for me that if we add up all of the "counts" on the "Domestic Employee Headcount" report, that will give us the total domestic workforce of Merrill Lynch Pierce Fenner & Smith, Inc. You believe that each of the different "Entity Legal Company Codes" employ Merrill Lynch Pierce Fenner & Smith, Inc. employees in the U.S. You will ask your client which of those Entity Codes employ Financial Advisors.

As I mentioned on the telephone, we need this information as soon as possible since our opposition to Merrill Lynch's motion for judgment on the pleadings is due in a few days. I understand you will email your client now to obtain this information.

If any of the above is inaccurate, please let me know immediately.

Thank you,
Marita Lauinger

**EXHIBIT B**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

CONFIDENTIAL

Dostart Clapp Gordon & Coveney, LLP

4370 La Jolla Village Drive, Suite 970

San Diego, CA  92122

Tel: (858) 623-4200

Fax: (858) 623-4299

The information contained in this electronic mail transmission is confidential and intended to be sent only to the stated recipient of the transmission.  It may therefore be protected from unauthorized use or dissemination by the attorney-client and/or attorney work-product privileges.  If you are not the intended recipient or the intended recipient's agent, you are hereby notified that any review, use, dissemination, distribution or copying of this communication is strictly prohibited.  You are also asked to notify us immediately by telephone and to return the original document to us immediately by mail at the address above.  Thank you in advance for your cooperation

EXHIBIT B

7/19/2010