FILED

10 AUG 30  AM 8:47

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY _____ ᴺᴮ
                    DEPUTY

1

2

3

4

5

6

7

8          **UNITED STATES DISTRICT COURT**

9          **SOUTHERN DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| TREVOR CALLAN; TIMOTHY CALLAN; and RYAN CALLAN, individually and on behalf of all others similarly situated, | CASE NO. 09 CV 0566 BEN (BGS) |
| Plaintiffs, | ORDER: |
| vs. | (1) GRANTING MERRILL LYNCH DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT; AND |
| MERRILL LYNCH & CO., INC.; et al., | (2) GRANTING PLAINTIFFS' MOTION TO STRIKE |
| Defendants. | [Docket Nos. 95, 96, 113] |

21          Before this Court is a Motion for Judgment on the Pleadings or, in the Alternative, for

22  Summary Judgment or Partial Summary Judgment by Defendants Merrill Lunch & Co., Inc. and

23  Merrill, Lynch, Pierce, Fenner & Smith, Inc. (together, the "Merrill Lynch Defendants"). The Merrill

24  Lynch Defendants are the remaining defendants in this action. The Motion seeks dismissal of all

25  causes of action against the Merrill Lynch Defendants pursuant to Rules 12(c) and 56 of the Federal

26  Rules of Civil Procedure. Also before the Court is Plaintiffs' Motion to Strike Confidential Settlement

27  Communications relating to certain documents filed in connection with Defendants' reply in support

28  of their motion. For the reasons that follow, both motions are **GRANTED**.

**RELEVANT BACKGROUND**

This action is a class action initiated by former employees of the Merrill Lynch Defendants who participated in three of Merrill Lynch's employee compensation packages: the Financial Advisor Capital Accumulation Award Plan ("FACAAP"), the Growth Award Plan, and the WealthBuilder Plan (collectively, the "Plans").   (Compl., ¶¶ 6-8.)  According to Plaintiffs, Plaintiffs were required to accept part of their wages in the form of "awards" under the Plans. (Compl., ¶ 6.)  Plaintiffs voluntarily resigned from Merrill Lynch in January 2007 to start their own financial advisory firm. (Compl., ¶ 8.)

Before 2003, FACAAP awards were subject to a 10-year cliff vesting schedule; after 2003, awards under the FACAAP were subject to an 8-year cliff vesting schedule.  (Compl., ¶ 7.)  The FACAAP also contained a "Rule of 65" provision whereby a long-term employee (with at least 20 years of employment) who decided to take early retirement could continue to have his or her FACAAP awards vest and paid out for up to 10 years after he or she retired.   (Mot., p. 3.)  The Growth Plan contained a 4-year cliff vesting schedule and also contained a Rule of 65 provision. *Id.* Awards under the WealthBuilder plan, on the other hand, vested only when the participant (1) reached age 55 and had at least 10 years of service with Merrill Lynch; (2) reached age 65, regardless of years of service; or (3) completed 20 years of service with Merrill Lynch. *Id.*

Plaintiffs allege the Plans contain forfeiture provisions which constitute unlawful conversion and violate California's Labor Code and Unfair Competition Law. (Compl. ¶¶ 7-8, 14-28.) Plaintiffs further allege the Merrill Lynch Defendants were fiduciaries of the FACAAP and, as such, had a duty to make adjustments to the plan when Merrill Lynch's exposure to subprime mortgage-backed securities and collateralized debt obligations adversely affected the value of Merrill Lynch's common stock. (Compl., ¶¶ 30-31.) In the alternative, Plaintiffs allege the Plans are employee pension benefit plans subject to ERISA restrictions; the Plans violate the minimum vesting standards set forth in ERISA, 29 U.S.C. § 1053(a); and, with respect to the FACAAP, the Merrill Lynch Defendants breached their fiduciary duties under ERISA, 29 U.S.C. § 1104(a). (Compl., ¶¶ 36-38.)

On March 19, 2009, Plaintiffs initiated this action, asserting five causes of action: (1) Recovery of Unpaid Wages (First Cause of Action); (2) Violation of Business & Professions Code §§ 17200 et

1  seq. (Second Cause of Action); (3) Conversion (Third Cause of Action); (4) Breach of Fiduciary Duty

2  (Fourth Cause of Action); and (5) Violation of ERISA, 29 U.S.C. §§ 1053(a) and 1104(a) (Fifth Cause

3  of Action). (Docket No. 1.) All five claims were asserted against the Merrill Lynch Defendants; the

4  Fourth and Fifth Causes of Action were also asserted against certain individual outside directors.

5       On January 22, 2010, the Court entered an order dismissing most of the claims against the

6  individual outside directors. (Docket No. 79.) The remaining claims were later dismissed by

7  stipulation of the parties. (Docket Nos. 85, 86.) Hence, the Merrill Lynch Defendants are the only

8  remaining defendants in this action.

9       On May 28, 2010, as corrected on May 29, 2010, the Merrill Lynch Defendants filed the

10  motion for judgment on the pleadings that is currently before the Court. (Docket Nos. 95, 96.)

11  Plaintiffs filed an opposition, and the Merrill Lynch Defendants filed a reply. (Docket Nos. 107, 111.)

12  Plaintiffs also filed a motion to strike certain documents that the Merrill Lynch Defendants filed with

13  their reply, to which the Merrill Lynch Defendants filed an opposition. (Docket Nos. 113, 118.) Both

14  motions are addressed below.

15       For the reasons set forth below, the motions are **GRANTED**.

16       **MOTION FOR JUDGMENT ON THE PLEADINGS OR, IN THE ALTERNATIVE,**

17       **SUMMARY JUDGMENT OR ADJUDICATION**

18       A motion for judgment on the pleadings is governed by Federal Rule of Civil Procedure 12(c).

19  Fed. R. Civ. P. 12(c). A Rule 12(c) motion is "functionally identical" to a Rule 12(b) motion to

20  dismiss, and the standard of review is the same. *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188,

21  1192 (9th Cir. 1989). Thus, judgment on the pleadings is appropriate if, taking all factual allegations

22  as true, the complaint fails to state a plausible claim for relief on its face. *Bell Atl. Corp. v. Twombly*,

23  550 U.S. 544, 556-57 (2007). The plausibility standard means that the complaint must state enough

24  facts to raise a reasonable expectation that discovery will reveal evidence of the matter complained of.

25  *Id.* at 556.

26       In assessing the merits of a Rule 12(c) motion, a court may consider material such as

27  documents attached to the complaint, incorporated by reference into the complaint, or matters

28  judicially noticeable. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2008). If a court relies on

1  other extrinsic evidence, however, the motion must be treated, instead, as a motion for summary

2  judgment under Rule 56. Fed. R. Civ. P. 12(d). Under Rule 56, summary judgment should be granted

3  when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there

4  is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of

5  law." Fed. R. Civ. P. 56(c)(2); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

6  ## I.   New York Settlement Agreement

7  The Merrill Lynch Defendants first argue all of Plaintiffs' claims were settled and released

8  pursuant to a settlement agreement ("New York Settlement Agreement") approved on a final basis in

9  *In re Merrill Lynch & Co., Inc. Securities Derivative & ERISA Litigation*, United States District Court

10  for the Southern District of New York, Case No. 07-cv-10268 (the "New York Action"). Although

11  this argument requires the Court to analyze outside material such as the New York Settlement

12  Agreement, the material is judicially noticeable as being "capable of accurate and ready determination

13  by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. Therefore,

14  the Rule 12(c) standard for judgment on the pleadings applies. *See United States v. Ritchie*, 342 F.3d

15  903, 908 (9th Cir. 2003) (a court may consider outside material that is judicially noticeable without

16  converting a motion for judgment on the pleadings to a motion for summary judgment per Rule 12(d)).

17  Ordinary contract law applies where, as here, the Court is tasked with construing or enforcing

18  a settlement agreement. *Jeff D. v. Andrus*, 899 F.2d 753, 759 (9th Cir. 1989). The settlement

19  agreement in this case provides "[t]he construction and interpretation of this Stipulation shall be

20  governed by the internal laws of the State of New York without regard to conflicts of law, except to

21  the extent that federal law of the United States requires that federal law governs." (Kane Decl., Ex.

22  1 to Ex. B, ¶ 10.11.) Therefore, the Court applies New York law here.

23  Under New York law, courts must give meaning to the plain language of a contract, if the

24  contract is unambiguous. *See Slamow v. Del Col*, 79 N.Y.2d 1016, 1018 (1992) ("[t]he best evidence

25  of what parties to a written agreement intend is what they say in their writing"). The parties do not

26  dispute that the New York Settlement Agreement is unambiguous. Therefore, the Court analyzes the

27  plain language of the agreement to determine whether Plaintiffs' claims have been released and settled.

28

09cv0566

1    Paragraph 1.41 of the New York Settlement Agreement defines "Settled Claims" as including

2         all claims. . . including both known claims and *Unknown Claims* (as
       defined herein), against any of the *Released Parties* (i) that have been
3         asserted in the [New York Action], or (ii) that could have been asserted
       in any forum by any Class Member or their successors or assigns which
4         arise out of or are based upon the allegations, transactions, facts,
       matters or occurrences, representations or omissions out of which the
5         claims asserted in the [New York Action] arise.

6

7    (Kane Decl., Ex. 1 to Ex. B ¶ 1.41.)  The New York Action asserted claims under Sections 502(a)(2)

8    and 502(a)(3) of ERISA, including claims for breach of the fiduciary duties of prudence and loyalty,

9    and failure to monitor.  These claims were based on three Merrill Lynch retirement plans known as

10   the Merrill Lynch & Co., Inc. 401k Savings and Investment Plan, the Merrill Lynch & Co., Inc.

11   Retirement Accumulation Plan, and the Merrill Lynch & Co., Inc. Employee Stock Ownership Plan.

12   *Id.* p. 2.

13        By contrast, the present action pertains to different compensation plans and at least two of the

14   claims, i.e., the First and Second Causes of Action, are based on alleged unlawful forfeiture, not breach

15   of fiduciary duty. (Compl., ¶¶ 14-24.)  Additionally, to the extent the Fifth Cause of Action asserts

16   a ERISA claim, that claim alleges, at least in part, a violation of ERISA's minimum vesting schedule

17   under 29 U.S.C. § 1053(a) which was not at issue in the New York Action. (Compl., ¶ 37.)  The

18   claims in this action, therefore, are not plainly included within the claims released in the New York

19   Settlement Agreement.  The Court notes that the definition of "Settled Claims" uses the phrase "arising

20   out of."  However, such phrase is limited to the "allegations, transactions, facts, matters or

21   occurrences, representations or omissions" relating to the New York Action. (Kane Decl. Ex. 1 to Ex.

22   B, ¶ 1.41.)  It does not encompass the entire relationship between the Plaintiffs and Merrill Lynch

23   Defendants. *Nycal Corp. v. Inoco PLC*, 949 F. Supp. 1115, 1120-21 (S.D.N.Y. 1997); *Frazer Exton*

24   *Dev., LP v. Kemper Envtl, Ltd.*, 2004 U.S. Dist. LEXIS 14602, * 35 (S.D.N.Y. July 29, 2004).

25        Therefore, judgment on the grounds that Plaintiffs' claims are barred by the New York

26   Settlement Agreement is denied.[1]

27   _____

28       [1] The Court notes the result would be the same if the Rule 56 standard for summary judgment
     applied.

09cv0566

## II.    Plaintiffs' First Cause of Action: Recovery of Unpaid Wages

The Merrill Lynch Defendants next argue Plaintiffs' First Cause of Action is barred as a matter of law because California's Labor Code only prohibits the forfeiture of wages and no wage interest exists here under the Plans. Because no outside material is relied upon, the Court applies the judgment on the pleadings standard set forth in Rule 12(c).

The First Cause of Action alleges the Merrill Lynch Defendants unlawfully refused to pay Plaintiffs their awards under the Plans, in violation of Labor Code sections 201, 202, 204, 221 and 222. Compl. ¶ 16.  Those sections generally require employers to promptly pay any wages earned and unpaid at the time an employee's employment is terminated, and prohibit employers from withholding said wages. Cal. Lab. Code §§ 201, 202, 204, 221 and 222. It is undisputed that the Plans in this case contain a cliff vesting schedule whereunder awards are forfeited if employment terminates before the awards are vested.

To determine whether a forfeiture provision violates the Labor Code, the Court first addresses whether Plaintiffs had "earned and unpaid" wages on the date their employment terminated, i.e., on January 12, 2007. *Schachter v. Citigroup, Inc.*, 47 Cal. 4th 610, 618 (2009). The term "wages" broadly includes "not only the periodic monetary earnings of the employee but also the other benefits to which he is entitled as a part of his compensation." *Id.* Incentive compensation, such as bonuses and profit-sharing plans, generally constitutes wages. *See Neisendorf v. Levi Strauss & Co.*, 143 Cal. App. 4th 509, 522 (2006).  However, this compensation does not constitute  "wages" unless "all conditions agreed to in advance for earning those wages have been satisfied." *Id.*; *see also Lucian v. All States Trucking Co.*, 116 Cal. App. 3d 972, 975-76 (1981).

As one California court has stated,

> California courts have consistently characterized bonus and profit sharing plans as constituting an offer of the stated benefits in exchange for the service of an employee, and upon the employee's completion of the required services *in accordance with the terms of the plan*, a binding contract is formed under which the employer is obligated to deliver the promised benefits.

*Neisendorf*, 143 Cal. App. 4th at 523 (emphasis in the original).  Therefore, the specific terms of the Plans control whether Plaintiffs were entitled to payments under the Plans as "wages."

09cv0566

1    In this case, Plaintiffs do not dispute they received all vested awards to which they were
2    entitled under the Plans.  Rather, Plaintiffs argue the basis of their claim is that the forfeiture
3    provisions for unvested awards were illegal and, therefore, violated California's Labor Laws. (Opp.,
4    p. 17-18.) Plaintiffs do not cite authority for their position that they still have a wage interest in these
5    unvested awards despite failing to meet the conditions therefor, and the Court could find none.  The
6    Court also notes Plaintiffs' argument differs from the allegations set forth under the First Cause of
7    Action which seeks recovery of unpaid wages.  Here, it is clear there were no unpaid wages.  As
8    Plaintiffs have failed to demonstrate a plausible claim for relief under the First Cause of Action or raise
9    a reasonable expectation that discovery will reveal evidence of the matter complained of, the Court
10   finds the Merrill Lynch Defendants are entitled to judgment on the pleadings on the First Cause of
11   Action.

12   **III.    Plaintiffs' Second Cause of Action: Violation of B&P Code §§ 17200 *et seq.***

13   Plaintiffs' Second Cause of Action alleges a violation of California's Unfair Competition Laws
14   ("UCL"), as codified in Business & Professions Code §§ 17200 *et seq.*  Because the Court relies on
15   outside material such as affidavits from the parties that are not incorporated into the Complaint or
16   judicially noticeable, the Court applies the summary judgment standard under Federal Rule of Civil
17   Procedure 56.

18   A UCL claim must be based on an alleged violation of another statute or law.  *Hauk v. JP*
19   *Morgan Chase Bank U.S.*, 552 F.3d 1114, 1122 (9th Cir. 2009).  In this case, Plaintiff's UCL claim
20   is based on an alleged violation of California Business and Professions Code § 16600 which prohibits
21   contractual provisions that restrain an individual from engaging in a lawful profession, trade or
22   business. (Compl. ¶¶ 19-24.)  Cal. Bus. & Prof. Code § 16600.  Specifically, Plaintiffs allege the
23   forfeiture provisions are illegal because they are based on employment with a competitor. (Compl.,
24   ¶¶ 21-22.) Plaintiffs do not dispute, however, that employees also forfeit their awards under the Plans
25   if, as Plaintiffs did, they resign before the awards vest. (Waller Decl., Ex. A at p. 8, Ex. B at p. 5, Ex.
26   C at ML000331 and ML000343.)

27   Although courts have found violations of Section 16600 when employees forfeit some benefit
28   if they later work for a competitor, the forfeiture provisions at issue here were not triggered by

09cv0566

1    employment with a competitor, but rather by leaving employment early. (Waller Decl. ¶¶ 8-12.) That

2    is, the forfeiture provisions were triggered regardless of whether Plaintiffs left the industry entirely or

3    left to work for a competitor. *Id.* Plaintiffs rely on a declaration from Plaintiff Timothy Callan, stating

4    that "We understood that Merrill Lynch rejected our demand because we had forfeited our awards by

5    terminating our employment and setting up a competing firm." (Callan Decl. [Docket No. 107-1], ¶

6    4.) This statement, however, is unsupported, constitutes impermissible hearsay, and does not dispute

7    that the Merrill Lynch Defendants denied Plaintiffs' demands, at least in part, because Plaintiffs

8    terminated their employment prior to vesting. Plaintiffs cite no other evidence or authority disputing

9    Defendants' evidence that Plaintiffs were denied awards because Plaintiffs resigned prior to vesting.

10   Plaintiffs also cite no authority showing that the vesting provisions at issue here constitute an

11   impermissible noncompetition provision under Section 16600. To the extent Plaintiffs' claim is based

12   on the forfeiture of wages, then for the same reason such argument fails above, it fails here as well.

13   *See Schachter*, 47 Cal.4th at 622-23 (if employees are required to fulfill conditions before receiving

14   stock awards and they terminate their employment without doing so, no earned wages are forfeited).

15          In light of the above, the Court finds there is no genuine dispute of material fact under the

16   Second Cause of Action and the Merrill Lynch Defendants are entitled to judgment as a matter of law.

17   **IV.    Plaintiffs' Third Cause of Action: Conversion**

18          Plaintiffs' Third Cause of Action asserts a claim for conversion based on the alleged forfeiture

19   of awards under the Plans. In their opposition, Plaintiffs state they voluntarily dismiss this claim.

20   (Opp., p. 1.)  However, Plaintiffs cannot voluntarily dismiss this claim without a court order, and,

21   despite Local Civil Rule 7.1.f.3, the Court cannot enter judgment on the pleadings or summary

22   judgment based merely on Plaintiffs' failure to oppose the motion. Fed. R. Civ. 41(a); *Henry v. Gill*

23   *Indus. Inc.*, 983 F.2d 943, 950 (9th Cir. 1993) (summary judgment merely on the grounds that no

24   papers opposing the motion were filed, without regard to whether genuine issues of material fact exist,

25   is inconsistent with Rule 56 and, thus, impermissible under Rule 83); *Maggette v. Dalsheim*, 709 F.2d

26   800, 802 (2nd Cir. 1983) (error to grant motion for judgment on pleadings based on failure to oppose

27   the motion where pleadings themselves sufficient to withstand dismissal). Therefore, the Court must

28   still assess the sufficiency of the claim. In assessing the Third Cause of Action here, because the Court

relies on outside material such as affidavits from the parties that are not incorporated into the Complaint or judicially noticeable, the Court applies the summary judgment standard under Federal Rule of Civil Procedure 56.

The elements for conversion are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by wrongful act inconsistent with the property rights of the plaintiff; and (3) damages. *Oakdale Vill. Grp. v. Fong*, 43 Cal. App. 4th 539, 543-44 (1996). The Merrill Lynch Defendants have submitted a declaration from their Compensation Manager Diane Waller, declaring that at the time Plaintiffs resigned, all vested awards under the Plans had been paid to Plaintiffs and all other awards, if any, were unvested. (Waller Decl., ¶¶ 7-11.) The Merrill Lynch Defendants, therefore, contend Plaintiffs cannot establish the requisite "ownership" or "right" to the awards and, thus, cannot satisfy at least one element of their conversion claim. (Mot., p. 18.) Plaintiffs do not dispute they were paid their vested awards at the time of resignation and that any awards that remained were unvested. Therefore, the Court finds Plaintiffs cannot satisfy the elements for conversion as a matter of law and the Merrill Lynch Defendants are entitled to summary judgment on Plaintiffs' Third Cause of Action.

## V.   Plaintiffs' Fourth Cause of Action: Breach of Fiduciary Duty

Similar to the Third Cause of Action, Plaintiffs state they voluntarily dismiss their Fourth Cause of Action for breach of fiduciary duty. (Opp., p. 1.) However, as noted, the Court must still address the sufficiency of the claim. Unlike for the Third Cause of Action, however, the Court need not rely on extrinsic evidence that is not incorporated by reference into the Complaint or judicially noticeable. Therefore, the Court applies the Rule 12(c) standard for judgment on the pleadings.

Plaintiffs' Fourth Cause of Action is based on allegations that "unusual and extraordinary" events occurred including Merrill Lynch's expansion into the subprime and collateralized debt obligations markets, and the subsequent failure of those markets. (Compl., ¶ 31.) Plaintiffs allege that, based on those events, the Merrill Lynch Defendants were required to, at a minimum, increase the awards under the FACAAP to compensate for the decline in value of the common stock; accelerate the vesting of the awards to allow FACAAP recipients to sell their common stock earlier; and give FACAAP recipients the option to receive their awards in cash rather than common stock. (Compl.,

09cv0566

¶ 32.)  Plaintiffs allege the Merrill Lynch Defendants breached their fiduciary duty by failing to take these actions.  (Compl., ¶ 33.)

To adequately allege a breach of fiduciary duty at common law, Plaintiff must allege, among other things, the existence of a fiduciary duty and a breach of such duty.  *Apollo Capital Fund LLC v. Roth Capital Partners LLC*, 158 Cal. App. 4th 226, 244 (2007).  The Court finds Plaintiffs have not sufficiently pled breach of fiduciary duty here.  First, the alleged breach appears to go beyond the adjustments permitted by the Merrill Lynch Defendants because the FACAAP merely permits the Merrill Lynch Defendants to adjust the number of common shares and method of calculating awards. (Waller Decl., Ex. A[2] ¶ 15.)  Second, Plaintiffs fail to plead that a prudent person in the same position as the Merrill Lynch Defendants would have taken the actions suggested by Plaintiffs.  Plaintiffs' allegations instead appear to be based on the losses Plaintiffs suffered to their common stock as a result of the collapse of the subprime market.  However, companies are not required to insure against losses, only to act with care, prudence and diligence under the circumstances; the mere fact that a company takes a risk and suffers loss, without more, is not a basis for imposing liability on the Merrill Lynch Defendants.  *See, e.g., Berg & Berg Enter., LLC v. Boyle*, 178 Cal. App. 4th 1020, 1040-42 (2009); *Gaillard v. Natomas Co.*, 208 Cal. App. 3d 1250, 1263-64 (1989).  Therefore, the Court finds that judgment in favor of the Merrill Lynch Defendants on the Fourth Cause of Action is proper under Rule 12(c) of the Federal Rules of Civil Procedure.  The Court notes this decision is consistent with its prior order entered on January 22, 2010 regarding certain independent directors of Merrill Lynch.  (Docket No. 79.)

**VI.    Plaintiffs' Fifth Cause of Action: Violation of ERISA, 29 U.S.C. §§ 1053(a) and 1104(a)**

**A.    FACAAP and Growth Award Plans**

Similar to the Third and Fourth Causes of Action, Plaintiffs state they voluntarily dismiss the Fifth Cause of Action, but only to the extent the Fifth Cause of Action relates to the FACAAP and

---

[2] Because the FACAAP is incorporated by reference into and forms an integral part of the Complaint, the Court may refer to the FACAPP without converting the motion for judgment on the pleadings to a motion for summary judgment. *Ritchie*, 342 F.3d at 908.

1  Growth Award Plans. (Opp., p. 1.) However, as noted, the Court must still address the sufficiency

2  of the claim.  Because the Court need not rely on extrinsic evidence that is not incorporated by

3  reference into the Complaint or judicially noticeable, the Court applies the Rule 12(c) standard for

4  judgment on the pleadings.

5          The Fifth Cause of Action alleges the FACAAP and Growth Award plan violate ERISA's

6  minimum vesting standards and, with respect to FACAAP, the Merrill Lynch Defendants breached

7  their fiduciary duties owed under ERISA. (Compl., ¶¶ 37-41.) Defendants argue these plans are not

8  employee benefit plans and, therefore, are not subject to these ERISA provisions.

9          Section 1002(2) defines an "employee pension benefit plan" for purposes of ERISA as a plan

10  that expressly or as a result of surrounding circumstances, either "provides retirement income to

11  employees" or " results in a deferral of income by employees for periods extending to the termination

12  of covered employment or beyond." 29 U.S.C. § 1002(2)(A).  The Ninth Circuit has held that a

13  pension plan for purposes of ERISA is established "if a reasonable person could ascertain the intended

14  benefits, beneficiaries, source of financing, and procedure for receiving benefits" *Modzelewshi v.*

15  *Resolution Trust Corp.*, 14 F.3d 1374, 1376 (9th Cir. 1994).  Although the plan need not expressly

16  refer to ERISA, it must possess a retirement purpose and systematically provide for deferred income.

17  *Segovia v. Shoenmann (In re Segovia)*, 404 B.R. 896, 922 (N.D. Cal. 2009).  Courts have consistently

18  held that plans created to incentivize performance and not provide retirement income, such as the

19  FACAAP in this case, are not ERISA plans. *See, e.g., id.; see also Inman v. Klockner-Pentaplast of*

20  *America, Inc.,* 467 F. Supp. 2d 642, 653 (W.D. Va. 2006); *Roderick v. Mazzetti & Ass'ns, Inc.*, Case

21  No. C 04-2436, 2004 WL 2554453 at *9 (N.D Cal. 2004).

22          The FACAAP states,

23          The Merrill Lynch [FACAAP] reflects MLPF&S's commitment to
           reward top producing Private Client Employees.  The purpose of the
24          Award is to establish and retain a strong sales force and professional
           managers by recognizing the benefits of their contributions to
25          MLPF&S.

26  (Waller Decl., Ex. A p. 1.)

27          The FACAAP provides the "criteria for Awards will be established periodically by the

28  Committee. . . An Award will generally be stated as an amount equal to a percentage of achievement

- 11 -

1   against established goals during a Performance Period." (Waller Decl., Ex. A p. 4.) Awards granted

2   under the FACAAP are in the form of common stock or, in specific situations identified therein, in the

3   form of cash. (Waller Decl., Ex. A p. 6.)

4        By its express terms, the FACAAP does not have a retirement purpose or provide a systematic

5   deferral of compensation. Rather, it is clear the FACAAP is intended merely as a bonus program to

6   award top performing employees and provide financial incentive for employees to remain with Merrill

7   Lynch and improve their performance there. There is nothing in the FACAAP that would allow a

8   reasonable person to calculate or determine the benefits of the plan or the procedure for receiving

9   benefits, as those matters are left to the sole discretion of Merrill Lynch. Additionally, no employee

10  is guaranteed awards under the FACAAP; he or she is given awards only according to the company's

11  assessment of his or her contribution to the financial well-being of the company. As such, the

12  FACAAP does not qualify as an "employee pension benefit plan" under ERISA. This decision is

13  consistent with the Court's prior order entered on January 22, 2010 regarding certain independent

14  directors of Merrill Lynch. (Docket No. 79.)

15       Similar to the FACAAP, the Growth Award Plan provides,

16              The Plan, established under the Financial Advisor Compensation
                Program as in effect from time to time is intended to be unfunded and
17              maintained primarily for the purpose of providing long-term incentive
                compensation, subject to certain conditions, to a select group of
18              financial advisors, who remain in the employ of the Company until
                completion of the period of service specified in this Plan.
19

20  (Waller Decl. Ex. B p. 1.)

21       Also similar to the FACAAP, the Growth Award Plan provides that awards "will be established

22  periodically by the Advisory Division," "may vary from Performance Period to Performance Period

23  and according to the type of performance," and "will generally be stated as an amount equal to a

24  percentage of achievement against established goals during the Performance Period." *Id.* at p. 3.

25  Similar to the FACAAP, therefore, the Court finds that the Growth Award plan is intended merely as

26  a bonus program for top performing employees and there is nothing in the plan that would allow a

27  reasonable person to calculate or determine the benefits of the plan or the procedure for receiving

28  benefits. Accordingly, the Court finds the Growth Award Plan does not have a retirement purpose or

1   provide a systematic deferral of compensation, and thus does not qualify as an "employee pension

2   benefit plan" under ERISA.

3        Because neither the FACAAP nor the Growth Award Plan are pension plans subject to ERISA,

4   the Merrill Lynch Defendants are entitled to judgment on Plaintiffs' Fifth Cause of Action as to those

5   plans.

6          **B.**     **WealthBuilder Plan**

7        Plaintiffs did not waive their Fifth Cause of Action as it relates to the WealthBuilder Plan.

8   (Opp., p. 2.) Similar to the above, Plaintiffs allege the WealthBuilder Plan violates ERISA's minimum

9   vesting standards. (Compl., ¶ 37.) The Merrill Lynch Defendants contend this claim is barred as a

10   matter of law because the WealthBuilder Plan is a top hat plan and, therefore, exempt from ERISA's

11   vesting standards.

12        A "top hat" plan is an ERISA plan that is "unfunded and is maintained by an employer

13   primarily for the purpose of providing deferred compensation for a select group of management or

14   highly compensated employees." 29 U.S.C. § 1101(a)(1); *Gilliam v. Nevada Power Co.*, 488 F.3d

15   1189, 1192-93 (9th Cir. 2007). Top hat plans are exempt from the minimum vesting standards and

16   other ERISA provisions because these plans only apply to highly paid executives who are in a strong

17   bargaining position relative to their employer and, therefore, are generally not in need of ERISA

18   protection. 29 U.S.C. §§ 1101(a)(1), 1081(a)(3), 1051(2); *Duggan v. Hobbs*, 99 F.3d 307, 310-11 (9th

19   Cir. 1996) (citing DOL Opin. Letter 90-14A). The burden of establishing that a ERISA plan is a top

20   hat plan is on the party asserting the exemption. *Barrowclough v. Kidder, Peabody & Co., Inc.*, 752

21   F.2d 923, 932 (3rd Cir. 1985), overruled on other grounds, *Pritzker v. Merrill, Lynch, Pierce, Fenner*

22   *& Smith, Inc.*, 7 F.3d 1110 (3rd Cir. 1993).

23        There is no dispute that the WealthBuilder Plan is unfunded and is primarily for the purpose

24   of providing deferred compensation. Rather, the parties here dispute whether, within the meaning of

25   Section 1101(a)(1), Plaintiffs qualify as a "select group of management or highly compensated

26   employees." Plaintiffs argue this determination is made by applying a four-part test set forth by the

27   Sixth Circuit in *Bakri v. Venture Mfg. Co.*, 473 F.3d 677, 680 (6th Cir. 2007). Under *Bakri*'s "select

28   group" test, whether a ERISA plan is a top hat plan depends on (1) the percentage of total workforce

1  invited to join the plan; (2) the nature of the participants' employment duties; (3) the compensation

2  disparity between top hat plan members and non-members; and (4) the actual language of the plan

3  agreement. *Bakri*, 473 F.3d at 680. Neither the Ninth Circuit nor any court sitting in the Ninth Circuit

4  has clarified whether this or another test applies. At least one Ninth Circuit case, however, has used

5  a similar analysis. *See Duggan*, 99 F.3d at 310-11 (recognizing a plan as a top hat plan based, in part,

6  on the participant's corporate position and power to influence his employer, his actual influence of the

7  employer, and the small number of participants in the plan); *see also Leonard v. Sunnyglen Corp. (In*

8  *re Battram*), 314 B.R. 621, 625 (Bankr. C.D. Cal. 1997). Therefore, the Court applies the four-part

9  "select group" test here.

10              *1.       Percentage of total workforce invited to join the WealthBuilder Plan*

11              Although there is no bright-line rule on what constitutes a "select group of management of

12  highly compensated employees," plans that limit participation to 15% or less of the workforce have

13  consistently been treated as top hat plans. *See, e.g., Alexander v. Brigham & Womens Physicians Org.,*

14  *Inc.,*513 F.3d 37, 46 (1st Cir. 2008) (plan limited to 15.34% of workforce was a top hat plan); *Demery*

15  *v. Extebank Deferred Comp. Plan (B)*, 316 F.3d 283, 288-89 (2nd Cir. 2000) (same); *Duggan*, 99 F.3d

16  at 310-11 (plan limited to one participant was a top hat plan). In this case, the Merrill Lynch

17  Defendants submit an affidavit from their Compensation Manager Diane Waller, declaring that, since

18  January 1, 2005, less than 15% of Merrill Lynch's total workforce has been eligible to participate in

19  the WealthBuilder Plan each calendar year.[3] (Waller Decl., ¶ 6.) Plaintiffs argue this evidence cannot

20  support summary judgment because the Merrill Lynch Defendants have failed to provide complete

21  discovery responses and have failed to explain whether the amount of "less than 15%" each year

22  includes participants from previous years. (Opp., p. 9.) Although Plaintiffs submit a declaration from

23  their attorney to support these contentions, that declaration is generic and conclusory and merely states

24  that more discovery is needed; it does not describe how Defendants have failed to provide complete

25  discovery responses or what purported information is missing. Plaintiffs' question regarding the 15%

26

27      [3] On reply, the Merrill Lynch Defendants further assert that, during the time in question, not
28  more than approximately 5% of the total workforce actually participated in the plan. (Reply, p. 4.)
    This statement is not supported by evidence, however, and therefore will not be considered.

1   calculation also does not raise a triable issue of fact.  The WealthBuilder Plan plainly states an

2   employee is not eligible to participate unless he or she has a certain level of eligible compensation in

3   "both the qualification year and the year in which the award is made." (Waller Decl. Ex. C. § 3.1(a).)

4   Therefore, there is no outstanding issue of whether an individual would be considered eligible to

5   participate in the plan if he or she received an award in one year but not the next.

6          Accordingly, the Court finds the WealthBuilder plan satisfies the first element of the "select

7   group" test.

8                          2.      *Nature of participants' employment duties*

9          It is undisputed that only Plaintiff Trevor Callan qualified for the WealthBuilder Plan in this

10   case.  It is likewise undisputed that Mr. Callan "had no ability to affect or influence the design or

11   operation of the WealthBuilder Plan" and that he " was a rank-and-file Financial Advisor. . ." (Callan

12   Decl. [Docket No. 107-2], ¶ 2.)  The Merrill Lynch Defendants, however, argue Mr. Callan was a

13   highly compensated employee and the WealthBuilder Plan was primarily for highly compensated

14   employees; therefore, the WealthBuilder Plan constitutes a top hat plan. (Waller Decl., ¶ 6.)

15          As noted, the purpose of the top hat exemption is to avoid oversight where none is needed, i.e.,

16   when participants are in a relatively strong bargaining position vis-a-vis their employer.  However,

17   the plain language of Section 1101(a) shows that a top hat plan includes plans for select managers *or*

18   plans for highly compensated employees. 29 U.S.C. § 1101(a)(1).  None of the parties here dispute

19   that Trevor Callan was a highly compensated employee or that the WealthBuilder Plan was primarily

20   for highly compensated employees.  Additionally, although the Ninth Circuit has been silent on this

21   issue, other courts have recognized that a plan may still be a top hat plan even if some non-

22   management or non-highly compensated employees are allowed to participate. *See, e.g., Fishman v.*

23   *Zurich Am. Ins. Co.*, 539 F. Supp. 2d 1036, 1043 n. 7 (N.D. Ill. 2008); *Demery*, 216 F.3d at 289; *Belka*

24   *v. Rowe Furniture Corp.*, 571 F. Supp. 1249, 1253-54 (D. Md. 1983).  That Trevor Callan may not

25   have been a member of a "select group of management," therefore, does not preclude the

26   WealthBuilder Plan from constituting a top hat plan. Accordingly, the Court finds the second element

27   of the "select group" test is satisfied.

28

1                         *3.   Compensation disparity between top hat plan members and non-members*

2          It is undisputed that participants in the WealthBuilder Plan have an average compensation of

3   more than double that of all Merrill Lynch employees. (Waller Decl., ¶ 6.) When taking into account

4   that this 2:1 ratio is skewed because it compares the participants' compensation to all employees,

5   rather than to just non-participants who, by virtue of Section 3.1 of the WealthBuilder Plan, have lower

6   compensation than participants, the ratio of participants' compensation to nonparticipants'

7   compensation is most likely higher than 2:1. Regardless, courts have found that a 2:1 disparity is

8   sufficient to satisfy this prong of the test. *See, e.g., Demery*, 216 F.3d at 288-89; *Belka*, 571 F. Supp.

9   at 1253-54; *Duggan v. Hobbs*, 1995 WL 150535, No. C-93-0316, *4 (N.D. Cal. March 28, 1995), aff'd

10  99 F.3d 307 (9th Cir. 1996). Therefore, the third element of the "select group" test is satisfied.

11         Plaintiffs argue a distinction must be made between gross and net compensation because these

12  highly compensated employees most likely have large business expenses, and only the net

13  compensation of participants should be compared vis-a-vis the compensation of nonparticipants.

14  (Opp., p. 11.) Because the WealthBuilder Plan does not make this distinction, the Court finds this

15  distinction irrelevant here.

16                        *4.   Language of the WealthBuilder Plan*

17         The WealthBuilder Plan states "[t]he Plan. . . is intended to be unfunded and maintained

18  primarily for the purpose of providing deferred compensation for the members of a select group of

19  management or highly compensated employees." (Waller Decl., Ex. C, p. 1.) A plan, however, cannot

20  merely state it complies with ERISA's top hat exemptions in order to qualify thereunder. *See, e.g.,*

21  *Alexander v. Bringham and Women's Physicians Org., Inc.*, 513 F.3d 37, 45 (1st Cir. 2008) (citing

22  *Bakri*, 473 F.3d at 678 in noting that a plan's specific language may aid the court in determining

23  whether a plan is a top hat plan, but the scrivener's choice of plan language cannot be allowed to

24  control the analysis); *see also Guiragoss v. Khoury*, 444 F. Supp. 2d 649, 658 (E.D. Va. 2006)

25  ("merely inserting the ERISA definition of a top hat plan into a document is insufficient if the actual

26  plan does not satisfy the top hat requirements"). Rather, the management and administration of the

27  plan must demonstrate that top hat exemption applies. *Id*. Here, even if the Court were to disregard

28  the plain language of the WealthBuilder Plan, the Court finds the above factors still weigh in favor of

09cv0566

1  finding that the WealthBuilder Plan was a top hat plan.

2      In light of the above, the Court finds the WealthBuilder Plan is a top hat plan for purposes of

3  29 U.S.C. §§ 1051(2). As such, the WealthBuilder Plan is exempt from ERISA's minimum vesting

4  requirements and the Merrill Lynch Defendants are entitled to judgment on the Fifth Cause of Action

5  as a matter of law. Also for the reasons stated above, because Plaintiffs have failed to demonstrate the

6  existence of additional, relevant, and necessary information, Plaintiffs' request for a Rule 56(f)

7  continuance is denied.

8                          **EVIDENTIARY OBJECTIONS**

9      The Merrill Lynch Defendants filed evidentiary objections and a motion to strike the

10  declarations of Trevor Callan, Timothy Callan, and Maurita Lauginger. (Docket No. 111-1.) To the

11  extent not inconsistent with the above, these objections are overruled and the request to strike is

12  denied.

13                              **MOTION TO STRIKE**

14      Plaintiffs filed a Motion to Strike Confidential Settlement Communications. The motion seeks

15  to strike an exhibit in the Declaration of Matthew Kane that the Merrill Lynch Defendants filed in

16  support of their reply, as well as strike related references in the reply itself. (Docket No. 111.) The

17  exhibit contains emails between counsel for the Merrill Lynch Defendants and counsel for Plaintiffs

18  relating to settlement communications between the parties. *Id.* The Court did not rely on this exhibit

19  in determining the Merrill Lynch Defendants' motion. Nonetheless, given the protection afforded to

20  settlement communications, the Court finds Plaintiffs' motion to strike is not moot.

21      Federal Rule of Evidence 408 prohibits the use of settlement communications to "prove

22  liability for, invalidity of, or amount of a claim that was disputed as to validity or amount, or to

23  impeach through a prior inconsistent statement or contradiction." Fed. R. Evid. 408(a). The Merrill

24  Lynch Defendants concede the settlement communications were not integral to their motion. (Opp.

25  [Docket No. 118], p. 1.) Nonetheless, they argue inclusion of the emails was proper because Plaintiffs

26  put the communications at issue in their opposition when, in the opposition, Plaintiffs stated they

27  renewed their offer to dismiss certain causes of action. The Merrill Lynch Defendants contend the

28  inclusion of the settlement communications was, therefore, necessary to clarify the scope of the prior

1    settlement offer.  The Court disagrees.

2         The scope of any prior settlement offer was not at issue and was irrelevant to Defendants'

3    motion, the opposition, and the reply.  The opposition also does not reveal any purported

4    misrepresentation by Plaintiffs regarding the prior settlement efforts.  Rather, it is clear from the

5    substance of the opposition that Plaintiffs' statement merely meant Plaintiffs were not opposing

6    Defendants' motion to the extent the motion related to the Third Cause of Action, Fourth Cause of

7    Action, and the FACAAP and Growth Award Plans under the Fifth Cause of Action. No more needed

8    to be said on this issue.  Even if the settlement communications showed that certain counsel incurred

9    litigation costs unnecessarily, the Court notes that the recovery of attorney fees and costs is not the

10   issue currently before the Court and, even if it were, it is doubtful that an attachment of the settlement

11   offers themselves would be appropriate.

12        Accordingly, Plaintiffs' motion to strike is **GRANTED**.

13                                          **CONCLUSION**

14        For the reasons stated above, the Merrill Lynch Defendants' Motion for Judgment on the

15   Pleadings or, in the Alternative, for Summary Judgment or Partial Summary Judgment (Docket Nos.

16   95, 96) is **GRANTED**.  The Clerk of the Court is directed to enter judgment in favor of the Merrill

17   Lynch Defendants on all causes of action.

18        Plaintiffs' Motion to Strike Confidential Settlement Communications is also **GRANTED**. The

19   Clerk of the Court is directed to strike Exhibit A attached to the Declaration of Matthew Kane filed

20   on July 19, 2010 as Docket No. 111 and also strike the following portions of the Reply that was also

21   filed on July 19, 2010 as Docket No. 111: 1:8-12 and 9:7-16.

22   **IT IS SO ORDERED**.

23   Dated: _____, 2010

24                                          Hon. Roger T. Benitez
                                           United States District Court Judge

25

26

27

28

                                    - 18 -                                    09cv0566